FILED

2019 MAR 28  PM 3:30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>SIMON CHU and<br>CHARLEY LOH,<br><br>          Defendants. | CR No. 19CR00193-DSF<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy;<br>15 U.S.C. § 2068(a)(4), 2070:<br>Knowing and Willful Failure to<br>Report Information Regarding<br>Consumer Product Safety Defects,<br>Hazards, and Risks; 18 U.S.C.<br>§ 1343: Wire Fraud; 18 U.S.C. § 2:<br>Aiding and Abetting, and Causing<br>An Act To Be Done; 15 U.S.C.<br>§ 2070(c)(1), 18 U.S.C.<br>§ 981(a)(1)(C), 21 U.S.C. § 853,<br>and 28 U.S.C. § 2461(c): Criminal<br>Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

A.    THE DEFENDANTS, THEIR COMPANIES, AND THEIR DEHUMIDIFIERS

1.    From in or about July 2012 to in or about April 2013, defendant SIMON CHU ("CHU") was the Chief Administrative Officer and part owner of Unindicted Co-Conspirator COMPANY A and Unindicted Co-Conspirator COMPANY B.

2.     From in or about July 2012 to in or about April 2013, defendant CHARLEY LOH ("LOH") was the Chief Executive Officer and part owner of Unindicted Co-Conspirator COMPANY A and Unindicted Co-Conspirator COMPANY B.

3.     From in or about July 2012 to in or about April 2013, Unindicted Co-Conspirator INDIVIDUAL #1 was a part owner and Secretary of Unindicted Co-Conspirator COMPANY A and the Chief Financial Officer and part owner of Unindicted Co-Conspirator COMPANY B.

4.     Unindicted Co-Conspirator COMPANY A and Unindicted Co-Conspirator COMPANY B were corporations organized under the laws of California, were located in City of Industry, California, within the Central District of California, and were in the business of importing, distributing, and selling dehumidifiers to retailers for consumer purchase and use in and around households and residences throughout the United States.  Defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 effectively controlled Unindicted Co-Conspirator COMPANY A and Unindicted Co-Conspirator COMPANY B.

5.     Unindicted Co-Conspirator COMPANY A was partially owned by a Chinese company, Unindicted Co-Conspirator COMPANY C, and was an indirect subsidiary of another, larger Chinese company, Unindicted Co-Conspirator COMPANY D.  Unindicted Co-Conspirator COMPANY A and Unindicted Co-Conspirator COMPANY B imported, distributed, and sold dehumidifiers made in China by Unindicted Co-Conspirator COMPANY D (the "Chinese dehumidifiers").

6.     The Chinese dehumidifiers ultimately were sold to consumers across the United States.  Each Chinese dehumidifier had a

2

certification on it that it met UL (formerly the Underwriter's
Laboratory) safety standards for dehumidifiers.

B.   CONSUMER PRODUCT SAFETY ACT

7.   The United States Consumer Product Safety Commission (the
"CPSC") was an independent federal agency created to protect the
public against unreasonable risks of injury from consumer products.
The CPSC enforces the Consumer Product Safety Act ("CPSA").

8.   Under the CPSA, every manufacturer, importer, or
distributor of a consumer product that was distributed in commerce
was obligated immediately to furnish certain information to the CPSC.
15 U.S.C. § 2064(b).  This duty to furnish information also applied
to the individual directors, officers, and agents of those companies.
15 U.S.C. §§ 2064(b), 2068(a)(4), 2070(b).

9.   First, a manufacturer, importer, or distributor of a
consumer product distributed in commerce "who obtains information
which reasonably supports the conclusion that such product . . .
contains a defect which could create a substantial product hazard"
was required to immediately inform the CPSC unless such manufacturer,
importer, or distributor "has actual knowledge that the Commission
has been adequately informed of such defect . . . ."  15 U.S.C.
§ 2064(b)(3).  The CPSA defined "substantial product hazard" as a
product defect that "creates a substantial risk of injury to the
public."  15 U.S.C. § 2064(a)(2).

10.   Second, a manufacturer, importer, or distributor of a
consumer product distributed in commerce "who obtains information
which reasonably supports the conclusion that such product . . .
creates an unreasonable risk of serious injury or death" was required
to immediately inform the CPSC unless such manufacturer, importer, or

3

distributor "has actual knowledge that the Commission has been adequately informed of . . . such risk."  15 U.S.C. § 2064(b)(4).

11.  One purpose of the reporting requirement was to protect the public against unreasonable risks of injury from consumer products. Companies were required to report "immediately" to enable the CPSC to take action to address the hazard or risk by, for example, implementing a product recall.  Under the CPSC's regulations, "immediately" meant "within 24 hours" after a company had obtained the requisite information regarding a defect or unreasonable risk. 16 C.F.R. § 1115.14(e).

12.  Failing to furnish information required by 15 U.S.C. § 2064(b) was a prohibited act under the CPSA.  15 U.S.C. § 2068(a)(4).

13.  A knowing and willful violation of 15 U.S.C. § 2068 was a criminal offense.  15 U.S.C. §§ 2070(a), (b).

C.   DEHUMIDIFIER FIRES

14.  On or about July 26, 2012, defendants CHU and LOH saw a video received from a consumer showing a burning Chinese dehumidifier like the Chinese dehumidifiers imported, distributed, and sold by Unindicted Co-Conspirator COMPANY A and Unindicted Co-Conspirator COMPANY B.

15.  From on or about July 26, 2012, to on or about April 30, 2013, defendants CHU and LOH continued to receive reports of the Chinese dehumidifiers catching on fire.

D.   THE DEFENDANTS AND THEIR CO-CONSPIRATORS LEARN THEIR
     DEHUMIDIFIERS ARE DEFECTIVE, DANGEROUS, AND COULD CATCH FIRE

     16.   In or about August 2012, defendant CHU tested the plastic used in the Chinese dehumidifiers to see if it would burn.   Defendant CHU was able to burn the plastic that he tested.

     17.   On or about September 4, 2012, defendant LOH emailed a manager of Unindicted Co-Conspirator COMPANY C (the "Manager") and told him that they tested the Chinese dehumidifiers, that the dehumidifiers caught fire, and that the material used in the dehumidifiers apparently did not meet the UL safety standards for the dehumidifiers.

     18.   On or about September 19, 2012, the Manager and an engineer from Unindicted Co-Conspirator COMPANY D (the "Engineer") met with defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 to discuss the continuing reported fires related to the Chinese dehumidifiers.   The Manager told defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 that the Chinese dehumidifiers could overheat and catch fire and that the plastic used in the Chinese dehumidifiers did not meet the required UL safety standard for fire resistance.   The Manager told defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 that Unindicted Co-Conspirator COMPANY D could not make improved Chinese dehumidifiers before the end of 2012 or early 2013.   The Manager recommended that defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 delay any recall of the defective Chinese dehumidifiers for six to nine months to avoid losing dehumidifier sales in 2012 and 2013 and to reduce the costs and effect of the recall on Unindicted Co-Conspirator COMPANY A and Unindicted Co-Conspirator COMPANY D.

19.   On or about September 21, 2012, defendant LOH emailed the highest ranking person at Unindicted Co-Conspirator COMPANY D, the chairperson of the board who also served as the President and Chief Executive Officer of Unindicted Co-Conspirator COMPANY D.   Defendant LOH also sent this email to the Senior Vice President and Chief Engineer of Unindicted Co-Conspirator COMPANY D.   In this email, defendant LOH stated that he thought the Chinese dehumidifiers would continue to catch fire and that he would report the dehumidifiers to the "competent authorities."

20.   On or about September 28, 2012, defendant LOH sent another email to the highest ranking person at Unindicted Co-Conspirator COMPANY D stating that he had received fire complaints about the Chinese dehumidifiers.   Defendant LOH also stated that he had found that the Chinese dehumidifiers were defective and would catch fire, and that the plastic used in the dehumidifiers did not meet the required UL safety standard for fire resistance.   Defendant LOH further stated that Unindicted Co-Conspirator COMPANY A had sold millions of Chinese dehumidifiers that did not meet the required standard and warned that consumers using the Chinese dehumidifiers should be told that continued use of the dehumidifiers might cause "personal, life and property damages."   Defendant LOH stated that he and the management of Unindicted Co-Conspirator COMPANY D should report to the CPSC about the Chinese dehumidifiers, and that, if the management of Unindicted Co-Conspirator COMPANY D did not agree to do so, he would report to the CPSC himself.   Defendant LOH concluded his email by stating this issue was "super urgent and important."

E.   THE DEFENDANTS AND THEIR CO-CONSPIRATORS KEEP SELLING THEIR

DANGEROUS DEHUMIDIFIERS WITHOUT DISCLOSING THEIR DEFECTS AND

HAZARDS

21.   After the September 19, 2012 meeting with the Manager and the Engineer, and after defendant LOH's September 21 and 28, 2012 emails, defendants CHU and LOH did not report the Chinese dehumidifiers to the CPSC and did not recall them because they did not want to pay the costs of a recall of the Chinese dehumidifiers.

22.   From on or about September 19, 2012, to on or about April 24, 2013, defendants CHU and LOH and their Unindicted Co-Conspirators continued to sell the defective Chinese dehumidifiers to retail companies in the United States through Unindicted Co-Conspirator COMPANY A without telling the retail companies that the Chinese dehumidifiers were defective and hazardous, did not meet UL safety standards, and could overheat, catch fire, and burn.

23.   From on or about September 19, 2012, to on or about February 5, 2013, defendants CHU and LOH and their Unindicted Co-Conspirators also continued to sell the defective Chinese dehumidifiers to retail companies in the United States through Unindicted Co-Conspirator COMPANY B without telling the retail companies that the Chinese dehumidifiers were defective and hazardous, did not meet UL safety standards, and could overheat, catch fire, and burn.

F.  THE DEFENDANTS AND THEIR CO-CONSPIRATORS FINALLY REPORT THE
DEHUMIDIFIERS TO THE CPSC WITHOUT DISCLOSING THEIR DEFECTS AND
HAZARDS

24.  Defendants CHU and LOH and their Unindicted Co-Conspirators
did not furnish information to the CPSC about the Chinese
dehumidifiers until on or about March 14, 2013.

25.  On or about March 14, 2013, Unindicted Co-Conspirator
COMPANY A, Unindicted Co-Conspirator COMPANY B, and Unindicted Co-
Conspirator COMPANY D sent an email to the CPSC about the Chinese
dehumidifiers.  This email to the CPSC did not mention the defects
and hazards of the Chinese dehumidifiers that defendants CHU and LOH
knew about since their September 19, 2012 meeting with the Manager
and the Engineer.

26.  On or about April 30, 2013, Unindicted Co-Conspirator
INDIVIDUAL #1, Unindicted Co-Conspirator COMPANY A, Unindicted Co-
Conspirator COMPANY B, and Unindicted Co-Conspirator COMPANY D made a
report to the CPSC.  This report stated that the companies had not
concluded that the Chinese dehumidifiers were defective or that a
recall of the dehumidifiers was needed.  This report further stated
that the Chinese dehumidifiers were "safe for use as intended."

27.  On or about September 12, 2013, Unindicted Co-Conspirator
COMPANY D and the CPSC announced a recall of approximately 2.2
million of the Chinese dehumidifiers in the United States, including
Chinese dehumidifiers sold by Unindicted Co-Conspirator COMPANY A and
Unindicted Co-Conspirator COMPANY B between September 19, 2012, and
April 24, 2013.

COUNT ONE

[18 U.S.C. § 371]

28.    The Grand Jury hereby re-alleges and incorporates by reference paragraphs 1 through 27 of this Indictment as though fully set forth herein.

A.    OBJECTS OF THE CONSPIRACY

29.    Beginning on or about September 19, 2012, and continuing to in or about June 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants SIMON CHU and CHARLEY LOH, together with their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, knowingly conspired and agreed with each other to:

a.    knowingly and willfully fail to immediately report to the United States Consumer Product Safety Commission upon receiving information that reasonably supported the conclusion that the Chinese dehumidifiers contained a defect that could create a substantial product hazard, and created an unreasonable risk of serious injury and death, as required by Title 15, United States Code, Section 2064(b)(3) and (4), and in violation of Title 15, United States Code, Sections 2068(a)(4) and 2070;

b.    knowingly and intentionally devise and intend to devise, with intent to defraud, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, well knowing that the pretenses, representations, and statements were materially false and fraudulent when made, and by concealing material facts, and transmit and cause to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the

scheme, in violation of Title 18, United States Code, Section 1343; and

c.   knowingly and willfully defraud the United States by using deceitful and dishonest means to frustrate and obstruct the lawful functions and efforts of the United States Consumer Product Safety Commission to enforce the Consumer Product Safety Act and regulations for the purpose of protecting the public against unreasonable risks of injury from consumer products.

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

30.   The objects of the conspiracy were to be accomplished, in substance, as follows:

a.   After identifying defects and hazards in the Chinese dehumidifiers, defendants CHU and LOH and their Unindicted Co-Conspirators would hide and cause others to hide the defects and hazards in the Chinese dehumidifiers from: (1) the retail companies that bought the dehumidifiers; (2) the consumers who bought the dehumidifiers; (3) the insurance companies that paid for damage caused by the fires resulting from the Chinese dehumidifiers; and (4) the CPSC.

b.   After identifying defects and hazards in the Chinese dehumidifiers, defendants CHU and LOH and their Unindicted Co-Conspirators would sell the dehumidifiers with false certifications that they met UL safety standards when defendants CHU and LOH, and their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, knew that the dehumidifiers did not meet those standards.

c.   After identifying defects and hazards in the Chinese dehumidifiers, defendants CHU and LOH and their Unindicted Co-

Conspirators would fail to disclose the defects and hazards to the CPSC and would state and cause others to state falsely that the Chinese dehumidifiers were not defective and hazardous in reports to the CPSC.

C.    OVERT ACTS

31.    On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants CHU and LOH, and their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:  On or about September 19, 2012, the Manager told defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 that the Chinese dehumidifiers were defective and dangerous, and defendants CHU and LOH and their Unindicted Co-Conspirators failed to report this information to the CPSC, the retailers who bought the Chinese dehumidifiers, and Unindicted Co-Conspirator COMPANY A's and Unindicted Co-Conspirator COMPANY B's insurance company.

Overt Act No. 2:  In or around October 2012, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY A.

Overt Act No. 3:  In or around October 2012, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY B.

1    Overt Act No. 4:   In or around November 2012, defendants CHU and
2  LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and
3  dangerous Chinese dehumidifiers to a retailer through Unindicted Co-
4  Conspirator COMPANY A.

5    Overt Act No. 5:   In or around November 2012, defendants CHU and
6  LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and
7  dangerous Chinese dehumidifiers to a retailer through Unindicted Co-
8  Conspirator COMPANY B.

9    Overt Act No. 6:   In or around December 2012, defendants CHU and
10  LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and
11  dangerous Chinese dehumidifiers to a retailer through Unindicted Co-
12  Conspirator COMPANY A.

13    Overt Act No. 7:   In or around December 2012, defendants CHU and
14  LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and
15  dangerous Chinese dehumidifiers to a retailer through Unindicted Co-
16  Conspirator COMPANY B.

17    Overt Act No. 8:   In or around January 2013, defendants CHU and
18  LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and
19  dangerous Chinese dehumidifiers to a retailer through Unindicted Co-
20  Conspirator COMPANY A.

21    Overt Act No. 9:   In or around January 2013, defendants CHU and
22  LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and
23  dangerous Chinese dehumidifiers to a retailer through Unindicted Co-
24  Conspirator COMPANY B.

25    Overt Act No. 10:   In or around February 2013, defendants CHU
26  and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective
27  and dangerous Chinese dehumidifiers to a retailer through Unindicted
28  Co-Conspirator COMPANY A.

1    Overt Act No. 11:  In or around February 2013, defendants CHU
2    and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective
3    and dangerous Chinese dehumidifiers to a retailer through Unindicted
4    Co-Conspirator COMPANY B.

5    Overt Act No. 12:  On or about February 20, 2013, defendants CHU
6    and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sent and caused
7    to be sent an email seeking materials for Unindicted Co-Conspirator
8    COMPANY A's and Unindicted Co-Conspirator COMPANY B's insurance
9    company that would falsely portray the Chinese dehumidifiers as safe
10   and not defective.

11   Overt Act No. 13:  In or around March 2013, defendants CHU and
12   LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and
13   dangerous Chinese dehumidifiers to a retailer through Unindicted Co-
14   Conspirator COMPANY A.

15   Overt Act No. 14:  On or about March 14, 2013, defendants CHU
16   and LOH and their Unindicted Co-Conspirators sent and caused to be
17   sent an email to the CPSC that did not disclose the defects in the
18   Chinese dehumidifiers and that the Chinese dehumidifiers were
19   dangerous to consumers.

20   Overt Act No. 15:  In or around April 2013, defendants CHU and
21   LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and
22   dangerous Chinese dehumidifiers to a retailer through Unindicted Co-
23   Conspirator COMPANY A.

24   Overt Act No. 16:  On or about April 30, 2013, defendants CHU
25   and LOH and their Unindicted Co-Conspirators sent and caused to be
26   sent a report to the CPSC that falsely portrayed the Chinese
27   dehumidifiers as safe and not defective.

28

COUNT TWO

[15 U.S.C. §§ 2068(a)(4), 2070; 18 U.S.C. § 2]

32.   The Grand Jury hereby re-alleges and incorporates by reference paragraphs 1 through 27 of this Indictment as though fully set forth herein.

33.   From on or about September 19, 2012, through at least on or about March 14, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants SIMON CHU and CHARLEY LOH, each aiding and abetting the other, knowingly and willfully failed, and willfully caused others to fail, to immediately report to the United States Consumer Product Safety Commission upon receiving information that reasonably supported the conclusion that the Chinese dehumidifiers contained a defect that could create a substantial product hazard, and created an unreasonable risk of serious injury and death, as required by Title 15, United States Code, Section 2064(b)(3) and (4).

COUNT THREE

[18 U.S.C. §§ 1343, 2(a)]

34.   The Grand Jury hereby re-alleges and incorporates by reference paragraphs 1 through 27 of this Indictment as though fully set forth herein.

A.   THE SCHEME TO DEFRAUD

35.   From on or about September 19, 2012, through at least on or about April 30, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants SIMON CHU ("CHU") and CHARLEY LOH ("LOH"), together with their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme and artifice to defraud as to material matters, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts.

36.   Defendants CHU and LOH, together with their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, carried out the fraudulent scheme in the following manner:

a.   Defendants CHU and LOH, together with their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, would make money by selling defective and hazardous dehumidifiers that retail companies would not have purchased for re-sale to consumers if the companies had known the dehumidifiers were defective and hazardous.

b.   Defendants CHU and LOH, together with their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, would hide and cause others to hide the defects and hazards in the Chinese

dehumidifiers from: (1) the retail companies that bought the dehumidifiers; (2) the consumers who bought the dehumidifiers; (3) the insurance companies that paid for damage caused by the fires resulting from the Chinese dehumidifiers; and (4) the CPSC.

c. Defendants CHU and LOH, together with Unindicted Co-Conspirator COMPANY A and Unindicted Co-Conspirator COMPANY B, would falsely represent to the retail companies who purchased the Chinese dehumidifiers that the dehumidifiers met UL safety standards.

d. Defendants CHU and LOH, together with their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, would avoid, reduce, and delay the costs of recalling the sold dehumidifiers by falsely and fraudulently representing them as meeting UL safety standards and being safe for use by consumers.

B. EXECUTION OF THE SCHEME TO DEFRAUD

37. To carry out the fraudulent scheme, defendants CHU and LOH, together with their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, engaged in and caused others to engage in the following fraudulent and deceptive acts, practices, and devices, among others:

a. On or about September 19, 2012, the Manager told defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 that the Chinese dehumidifiers were defective and dangerous, and defendants CHU and LOH and their Unindicted Co-Conspirators failed to report this information to the CPSC, the retailers who bought the Chinese dehumidifiers, and Unindicted Co-Conspirator COMPANY A's and Unindicted Co-Conspirator COMPANY B's insurance company.

b. In or around October 2012, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold the defective and

dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY A.

c. In or around October 2012, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY B.

d. In or around November 2012, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY A.

e. In or around November 2012, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY B.

f. In or around December 2012, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY A.

g. In or around December 2012, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY B.

h. In or around January 2013, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY A.

i. In or around January 2013, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous

17

Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY B.

j.   In or around February 2013, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY A.

k.   In or around February 2013, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY B.

l.   In or around March 2013, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY A.

m.   On or about March 14, 2013, defendants CHU and LOH and their Unindicted Co-Conspirators sent and caused to be sent an email to the CPSC that did not mention the defects in the Chinese dehumidifiers and that the Chinese dehumidifiers were dangerous to consumers.

n.   In or around April 2013, defendants CHU and LOH and Unindicted Co-Conspirator INDIVIDUAL #1 sold defective and dangerous Chinese dehumidifiers to a retailer through Unindicted Co-Conspirator COMPANY A.

o.   On or about April 30, 2013, defendants CHU and LOH and their Unindicted Co-Conspirators sent and caused to be sent a report to the CPSC that falsely portrayed the Chinese dehumidifiers as safe and not defective.

C.   USE OF THE WIRES

38.   On or about February 20, 2013, in the Central District of California and elsewhere, defendants CHU and LOH, together with their Unindicted Co-Conspirators and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, caused and aided and abetted the transmission of a wire communication in interstate commerce, namely, an email from an employee of Unindicted Co-Conspirator COMPANY A and Unindicted Co-Conspirator COMPANY B in California to an employee of Unindicted Co-Conspirator COMPANY D in China seeking information and materials needed to hide the defects and hazards in the Chinese dehumidifiers and falsely portray them as safe and not defective and hazardous.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C); 15 U.S.C. § 2070(c)(1); 21 U.S.C. § 853;
28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 15, United States Code, Section 2070(c)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Three of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States the following:

a.   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of one or more violations of 18 U.S.C. § 1343 (wire fraud) or conspiracy to commit wire fraud; and

b.   All right, title, and interest in any and all consumer products involved in the offenses; and

c.   A sum of money equal to the total value of the property described in subparagraphs a. and b.

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been

transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
_____
Foreperson

NICOLA T. HANNA
United States Attorney

Scott Garringer
Deputy Chief, Criminal Division For:

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS
Assistant United States Attorney
Chief, Environmental and
Community Safety Crimes Section

DENNIS MITCHELL
Assistant United States Attorney
Environmental and Community
Safety Crimes Section

JOSEPH H. HUNT
Assistant Attorney General
U.S. Department of Justice
Civil Division

GUSTAV W. EYLER
Acting Director
U.S. Department of Justice
Consumer Protection Branch

JILL P. FURMAN
Deputy Director

ALLAN GORDUS
Senior Litigation Counsel

NATALIE N. SANDERS
Trial Attorney