Steven A. Brody (SBN 271616)
*stevebrodylaw@gmail.com*
**LAW OFFICES OF STEVEN BRODY**
155 North Lake Avenue, Suite 800
Pasadena, CA 91101
Los Angeles, California 90017
Telephone:  (213) 290-5294
Facsimile:  (213) 403-5323

Attorney for Simon Chu

Richard M. Steingard (SBN 106*374)*
*rsteingard@SteingardLaw.com*
**LAW OFFICES OF RICHARD M. STEINGARD**
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:  (213) 260-9450

Attorney for Charley Loh

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br><br> vs. <br><br><br> **SIMON CHU** and **CHARLEY LOH**, <br><br> Defendants. | Case No. CR 19-193-DSF <br><br> **DEFENDANTS' MOTION FOR FOREIGN DEPOSITIONS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing date: 8/22/2022 <br> Time: 8:30 a.m. |

Defendants Simon Chu and Charley Loh hereby move, by and through counsel, to permit the taking of foreign depositions pursuant to Rule 15(a)(1) of the Federal Rules of Criminal Procedure, and for permission to issue letters rogatory requesting judicial assistance from the People's Republic of China.

i

This motion is based on the attached memorandum of points and authorities, all files and records in this matter, and any evidence and argument that may be presented at or before a hearing on this matter.

Dated: July 5, 2022

Respectfully submitted,

/s/

STEVEN BRODY
Attorney for Simon Chu

/s/

RICHARD M. STEINGARD
Attorney for Charley Loh

# **TABLE OF CONTENTS**

I. Introduction.................................................................................................1

II. Statement of Facts ....................................................................................3

    A. The Parties ........................................................................................3

    B. The Joint Venture .............................................................................4

    C. Some Dehumidifiers Caught Fire.....................................................4

    D. Notice to the CPSC and the Recall of Dehumidifiers ......................6

    E. The Government's Deferred Prosecution Agreement with Gree
       Zhuhai..................................................................................................8

    F. The Government's Indictment of Messrs. Loh and Chu...................8

    G. The Proposed Depositions.................................................................9

III. Argument .................................................................................................10

    A. The Requested Depositions Are Necessary to Preserve the
       Deponents' Testimony, Ensure the Protection of Defendants'
       Constitutional Right to Present a Defense, and Are Authorized by
       the Rules of Criminal Procedure. ....................................................10

       1. The Authority to Order Depositions Under Rule 15. ......................10

       2. Exceptional Circumstances Warrant the Taking of the
          Proposed Foreign Depositions Because the Witnesses'
          Testimony Is Material and They Are Beyond This Court's
          Subpoena Power. ...........................................................................12

          i. Lam Hou Kong (a.k.a. "Larry Lam") Can Provide
            Material Testimony and Is Beyond the Subpoena Power
            of the United States.................................................................12

          ii. Ju Wenhong Can Provide Material Testimony and Is
            Beyond the Subpoena Power of the United States. .................13

          iii. Huang Hui Can Provide Material Testimony and Is
            Beyond the Subpoena Power of the United States. .................14

          iv. Zhang Guoqiang (a.k.a "Gordon Zhang") Can Provide
            Material Testimony and Is Beyond the Subpoena Power
            of the United States.................................................................15

v. Dong Mingzhu (a.k.a "Madam Dong") Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States. ................................................................16

vi. He Tao and Zhou Yufei Can Provide Material Testimony and Are Beyond the Subpoena Power of the United States. ................................................17

vii. Kevin Tsen Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States. .................18

viii. Wang Bo Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States. .................18

B. Rule 15 and the Letters Rogatory Process Provides the Only Means to Depose Witnesses in China and the Court Is Therefore Requested to Permit Such Letters to Issue. ................................................19

1. Rule 15 and the Letters Rogatory Process Provides the Only Means to Depose Witnesses in China. ................................................19

2. The Court Is Requested to Issue Letters Rogatory to the People's Republic of China to Compel the Witnesses' Attendance at a Deposition. ................................................20

i. Authority for Issuance of Letters Rogatory ............................20

ii. Procedure for Issuance of Letters Rogatory ............................20

IV. Conclusion ................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*DeVillanueve v. Morning Journal Ass'n,* 206 F. 70 (S.D.N.Y 1913) ............................... 20

*In re Request for Judicial Assistance from Seoul*, 555 F.2d 720 (9th Cir. 1977).............. 20

*Jansen v. Belding-Corticelli,* 84 F.2d 577 (3d. Cir. 1936) ........................................... 20

*United States v. Andreen*, 628 F.2d 1236 (9th Cir. 1980) ................................................. 12

*United States v. Kelley*, 36 F.3d 1118 (D.C.Cir.1994) ..................................................... 11

*United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015) ....................................... 12, 15, 16

*United States v. Omene*, 143 F.3d 1167 (9th Cir.1998) .................................................... 11

*United States v. Reagan,* 453 F.2d 165 (6th Cir. 1971) .................................................... 20

*United States v. Sanchez–Lima*, 161 F.3d 545 (9th Cir.1998) ......................................... 11

*United States v. Sines*, 761 F.2d 1434 (9th Cir. 1985) ..................................................... 11

*United States v. Staples*, 256 F.2d 290 (9th Cir. 1958) .................................................... 20

*United States v. Trumpower*, 546 F.Supp.2d 849 (E.D.Cal.2008) ................................... 11

*United States v. Zabady,* 546 F.Supp. 35 (M.D. Pa. 1982) .............................................. 20

<u>Statutes and Codes</u>

18 U.S.C. § 371 ................................................................................................................ 12

28 U.S.C. § 1781 ........................................................................................................ 20, 21

28 U.S.C. § 1782 .............................................................................................................. 20

<u>Rules</u>

Fed. R. Civ. P. 28(b) ....................................................................................................... 21

Fed. R. Crim. P. 15(a)(1) ........................................................................................... 10, 21

Fed. R. Crim. P. 57 .......................................................................................................... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### Introduction

Defendants Simon Chu and Charley Loh are charged in a three-count indictment arising from the sale and distribution of allegedly defective Chinese-manufactured appliances. According to the indictment, defendants conspired with a multi-billion-dollar Chinese appliance manufacturer based in Shanghai to conceal dangerous defects in dehumidifiers sold in the United States.

The allegations stem from a joint venture formed in 2010 between the defendants' relatively small company, MJC America ("Company A" in the indictment), and a Chinese manufacturer, Gree Zhuhai, one of the world's largest makers of appliances ("Company C" in the indictment). The joint venture, named Gree USA ("Company B" in the indictment), had a successful start but then encountered problems. In mid-2012, the defendants received anecdotal reports that a few dehumidifiers manufactured by Gree Zhuhai were catching fire. Defendants immediately advised senior executives at Gree Zhuhai of the problem, questioned whether the dehumidifiers were defective, and said they believed it may be necessary to report the matter to the Consumer Product Safety Commission ("CPSC"). Gree Zhuhai denied there was a problem with the dehumidifiers and flatly refused to file a report with the CPSC.

A rift then formed between the two parties. The defendants repeatedly urged compliance with the CPSC's reporting requirements, while Gree Zhuhai executives and engineers denied the existence of a defect and continued to refuse to take action. After months of pressure by Messrs. Loh and Chu, including threats to report the issue unilaterally, Gree Zhuhai capitulated. Gree USA reported the possible defect to the CPSC in March of 2013. A product recall was initiated shortly thereafter.

In 2019, the government decided to pursue criminal proceedings against the parties but treated the defendants and the representatives of Gree Zhuhai quite differently. The Department of Justice entered into a Deferred Prosecution Agreement ("DPA") with Gree Zhuhai, foregoing criminal prosecution of all executives and employees and requiring that the company pay a monetary fine which, when considering the vast revenue and financial resources of the company, can only be described as nominal. Gree Zhuhai also agreed to institute a compliance program and, importantly, to cooperate with the government in this matter.

The treatment of Mr. Loh and Mr. Chu has not been so lenient. They were indicted for failing to timely report the defective dehumidifiers to the CPSC. Although the government has pursued scores of companies in civil court for failing to report product defects, the defendants' indictment represents the first and only time anyone has been criminally charged with a "failure to report" violation in the 50-year history of the statute.

Now the defendants face the daunting task of preparing for a trial in which key material witnesses and alleged co-conspirators—all of them likely unwilling to cooperate with the defense, though apparently required to cooperate with the government under the DPA—reside in China, beyond the subpoena power of the United States. The only means by which to preserve the testimony of these critical witnesses for trial is through foreign depositions. Because China does not permit the deposition of witnesses in civil or criminal matters without government approval, such depositions can only be taken pursuant to letters rogatory issued by a competent court.

It bears noting that though the government secured a guarantee of cooperation in its deferred prosecution agreement with Gree Zhuhai, it has declined a request to assist the defense by making prospective witnesses available for trial or deposition and opposes this motion.

Below, defendants provide the factual and legal predicates for this motion and identify several percipient witnesses with substantial knowledge of the underlying facts whose testimony is necessary for the presentation of a defense. These prospective deponents are believed to reside in China. The defense therefore seeks issuance by this Court of letters rogatory requesting the People's Republic of China compel their depositions. Without access to these key witnesses and the ability to preserve their testimony for trial, the defendants will be denied their Sixth Amendment right to present a defense.

## II.

### Statement of Facts

Unless otherwise noted, the following facts are drawn from the indictment, the government's DPA with Gree Zhuhai, and the discovery materials. With limited exceptions, none of the facts are in dispute and virtually all are contained in email correspondence between the parties and audio recordings.

### A. The Parties

In 1998, Charley Loh and his brother, Jimmy Loh, started a relatively small wholesale distribution company, MJC America, which supplied household appliances to retail stores throughout the United States. Jimmy Loh (now deceased) was the Secretary and Charley Loh was the CEO. Simon Chu joined the company as Chief Administrative Officer.  The company started slowly; by 2010, MJC America grossed approximately $50 million annually.

Gree Zhuhai[1] was established in 1985 and grew to be one of the largest appliance makers in the world. It manufactures and distributes household appliances and "[i]ts products are sold in more than 160 countries and regions." (Gree Zhuhai website at https://www.gree.cn/en-us/list/59.html, last visited June 1,

---

[1]     Throughout this motion, we use the name "Gree Zhuhai" to refer to the umbrella organization and its many subsidiaries. *See* https://global.gree.com.

2022.) As an example of its size, Gree Zhuhai's "residential air conditioner production and sales volume has been leading the world for 13 consecutive years." (*Id.*) To place the company's size in perspective, it is listed in Forbes Magazine as the 252nd largest company in the world. *See* Gree Listed in Forbes Global 2000 Again, https://global.gree.com/contents/356/800.html (last visited June 26, 2022). In 2020 alone, Gree Zhuhai's revenue was $168.2 yuan, the equivalent of $26 billion US. *See* https://www.statista.com/statistics/409294/china-revenue-of-gree-electric-appliances (last visited June 1, 2022).

### B.  The Joint Venture

In 2010, the Lohs and Mr. Chu were approached by representatives from Gree Zhuhai which proposed a joint venture with MJC America to distribute Gree Zhuhai-manufactured dehumidifiers to MJC America's clients in the United States. The two companies formed the entity "Gree USA", with Gree Zhuhai as the majority owner. Gree USA began selling Gree Zhuhai dehumidifiers to large retail chains in the United States. The dehumidifiers were sold under the name "Soleus." In 2011, Gree USA sold thousands of Soleus dehumidifiers without incident.

### C. Some Dehumidifiers Caught Fire

On July 26, 2012, a video was posted on *YouTube* of a Soleus dehumidifier on fire and burning. The Lohs and Mr. Chu saw the video and immediately sent a link to Gree Zhuhai, expressing their grave concerns about what was depicted. Gree Zhuhai's representatives claimed to be alarmed by the video and said their engineering team would promptly investigate the cause of the fire. Two weeks later, on August 8, 2012, Gree Zhuhai's representatives advised the defendants that their engineers could find nothing wrong with the dehumidifiers and concluded that the fire depicted in the video was a "man-made fire incident." The Lohs, Mr. Chu, and their staff pressed Gree Zhuhai to perform additional testing to determine the possible cause of the fire.

4

Over time, the Lohs and Chu learned that a few more dehumidifiers had caught fire and kept Gree Zhuhai apprised of each development. Through phone calls, emails, and meetings, the Lohs, Mr. Chu, and/or their staff told Gree Zhuhai officials that they believed the dehumidifiers may be defective and suggested that they jointly report the matter to the CPSC. Gree Zhuhai consistently responded by denying that the dehumidifiers were defective, stating their engineers were still investigating the cause for the fires, and rejecting the defendants' and their staff's suggestions that they file a report with the CPSC.

Although Messrs. Loh and Chu are not engineers, in September 2012, they conducted a crude self-test of a Soleus dehumidifier and found that it too caught fire. Around the same time, they sent a Soleus dehumidifier to a forensic laboratory which concluded that the examined unit was flawed. The defendants forwarded these findings to Gree Zhuhai. They also sent Gree Zhuhai a copy of the CPSC handbook to persuade them that they may need to report the product. Regardless, Gree Zhuhai continued to maintain that its product was not defective and refused the defendants' requests that they file a joint report with the CPSC.

On September 19, 2012, the defendants met with representatives from Gree Zhuhai, including Larry Lam, a director of Gree Zhuhai's Hong Kong subsidiary, and Ju Wehang, a senior Gree engineer. During this meeting, Gree Zhuhai's representatives told the defendants for the first time that some of the dehumidifiers supplied to MJC lacked a flame-retardant coating. The Gree Zhuhai representatives claimed that they did not know which units lacked a flame-retardant exterior, or how many units were so affected. Nevertheless, Gree Zhuhai continued to insist that the absence of this coating was not the cause of the fires and that the dehumidifiers presented no substantial safety hazard. Gree Zhuhai proposed that they wait six months to file a joint report with the CPSC, explaining that another company, General Electric ("GE"), had previously done so after learning of a defective product. The defendants refused this proposal.

Throughout the fall and winter months, the Lohs, Mr. Chu, and their representatives sent emails to senior Gree Zhuhai officials questioning the engineers' claims that the dehumidifiers were not defective and recommending that they file a joint report with the CPSC. In some of the emails the defendants threatened to unilaterally report the dehumidifiers to the CPSC, although they never did so. Gree Zhuhai continued to deflect and stall.

In December 2012, Charley and Jimmy Loh traveled to China, retained an attorney from an international law firm in Hong Kong, and met with top Gree Zhuhai management executives. The defendants repeated their position; as before, Gree Zhuhai said it would look into the matter. In January 2013, the Lohs and Chu traveled to China to meet directly with Gree Zhuhai's senior management and repeated their request to report the matter to the CPSC. Approximately one month later, Gree Zhuhai agreed to jointly report the dehumidifiers to the CPSC, as the Lohs and Mr. Chu had been urging for the prior six months.

Subsequently, MJC America and Gree Zhuhai engaged in protracted lawsuits, each claiming breach of contract and theft from the other. As a result of those lawsuits, numerous individuals from both companies were deposed and/or testified at trial. Although some of the testimony from those civil lawsuits may be relevant to the instant criminal case, the issues were entirely different and, for the most part, did not concern the failure to timely report a defective product to the CPSC.

### D. Notice to the CPSC and the Recall of Dehumidifiers

In March 2013, attorneys for Gree USA filed an initial report with the CPSC, followed on April 30, 2013, by a final report. In September 2013, Gree Zhuhai dehumidifiers were recalled. The recall extended far beyond the Soleus dehumidifiers distributed by Gree USA and included units manufactured as far back as 2005 and sold by numerous other entities. *See* 2013 CPSC press release, https://www.cpsc.gov/Recalls/2013/gree-recalls-12-brands-of-dehumidifiers (last

visited June 29, 2022). To counsels' knowledge, none of these other distributors filed a report with the CPSC stating that the dehumidifiers were defective.

The recall was updated in October 2013 and expanded in 2014 to include Gree Zhuhai manufactured dehumidifiers under the GE label. *See* 2014 CPSC press release, https://www.cpsc.gov/Recalls/2014/gree-expands-dehumidifier-recall-to-include-ge-brand-dehumidifiers (last visited June 29, 2022). Again, the defendants did not distribute GE-labeled dehumidifiers. According to CPSC's press release, Gree Zhuhai received 16 reports of incidents with GE-brand dehumidifiers, including 11 reports of overheating with no property damage beyond the units, and 5 reports of fires beyond the units which were associated with about $430,000 reported in property damage. *Id*. These units were sold between April 2008 through December 2011 (*id.*), well before Loh and Chu learned that there were problems with the dehumidifiers. To counsels' knowledge, GE did not file a report with the CPSC stating that the dehumidifiers were defective.

In 2016, CPSC re-announced the recall of Gree Zhuhai dehumidifiers. *See* 2016 CPSC press release, https://www.cpsc.gov/Newsroom/News-Releases/2016/Gree-Agrees-to-Pay-Record-1545-Million-Civil-Penalty-Improve-Internal-Compliance-for-Failure-to-Report-Defective-Dehumidifiers (last visited June 29, 2022). According to the CPSC press release, the number of reported incidents of overheating from the expanded recall increased from 119 in the original recall to 471; the number of reported fires increased from 46 to 121; and property damage reports increased from $2.15 million to nearly $4.5 million. (*Id.*) This recall, like its predecessors, involved numerous products which the defendants did not sell and covered time periods that predated the defendants' alleged misconduct. (*Id.*) At this juncture it is unclear how many reported incidents, fires, and property damage are attributable to Gree Zhuhai's

dehumidifiers that were distributed by Gree USA in 2012 to 2013, and how many concerned other products or distributors.

### E.  The Government's Deferred Prosecution Agreement with Gree Zhuhai

In October 2021, the government entered into a Deferred Prosecution Agreement ("DPA") with Gree Zhuhai, Gree USA (which was now solely owned by Gree Zhuhai), and another subsidiary, Hong Kong Electric. (*See USA v. Gree Electric Appliances, Inc. of Zhuhai et al*, No. 21-cr-00498-DSF (C.D. Cal), at docket no. 9). Under the terms of the DPA, all three companies were named in a single count Information with failing to report the defect, but only one entity, Gree USA, was required to admit any criminal liability. The DPA provided that Gree Zhuhai would pay a monetary penalty of $91 million, which constitutes less than one-half of one percent of Gree Zhuhai's 2020 revenue. Gree Zhuhai also agreed to institute a compliance program[2] and continue to cooperate with the government in its investigation of this matter. The DPA provided that if the companies fulfilled their obligations, the Information would be dismissed.

No employees of Gree Zhuhai—including those with whom Mr. Loh and Mr. Chu are accused of conspiring—face criminal prosecution.

### F.  The Government's Indictment of Messrs. Loh and Chu

In stark contrast to the government's treatment of Gree Zhuhai and its executives, engineers, and employees, in March 2019, the government indicted Messrs. Loh and Chu and charged them with conspiring with Gree Zhuhai to evade reporting defective dehumidifiers to the CPSC (18 U.S.C. § 371), failing to file a

---

[2]    Gree Zhuhai had already agreed to a compliance program in 2016 as part of its civil settlement with the CPSC. *See* https://www.cpsc.gov/Newsroom/News-Releases/2016/Gree-Agrees-to-Pay-Record-1545-Million-Civil-Penalty-Improve-Internal-Compliance-for-Failure-to-Report-Defective-Dehumidifiers (last visited July 1, 2022).

timely report with the CPSC (15 U.S.C. §§ 2068(a)(4) & 2070), and engaging in a fraud scheme to knowingly sell defective dehumidifiers (18 U.S.C. § 1343).

As the government noted in its press release announcing the charges, the Indictment marks the first ever criminal prosecution under the 1972 Consumer Safety Protection Act for failing to timely report a defective product. *See* https://www.justice.gov/opa/pr/two-corporate-executives-indicted-first-ever-criminal-prosecution-failure-report-under (last visited June 1, 2022).

Indeed, an examination of CPSC's website—which publicizes its enforcement actions against companies that failed to timely report defective products—reveals numerous occasions in which far more serious incidents of defective products were addressed civilly, not criminally, including some that resulted in death or serious bodily injuries.[3]

### G. The Proposed Depositions

Throughout this prosecution, defense counsel have repeatedly advised the government that they will need to conduct foreign depositions of Gree Zhuhai witnesses in China. Largely due to delays caused by COVID-19, the discussions about these depositions were postponed. At the government's request, on March 21, 2022, Mr. Loh's attorney provided the government with a preliminary list of

---

[3]       In one example from 2015, LG Electronics was civilly charged with failing to report its defective dehumidifier. In that case, the LG Electronics' dehumidifiers caused over 100 fires and resulted in significant property damage.  LG Electronics knew about the defective product but waited approximately 9 years before reporting the defects to the CPSC. According to CPSC's press release, LG's dehumidifiers "overheated, smoked, melted or caught fire, posing fire and burn hazards to consumers . . . . Starting in 2003, LG received dozens of reports of the dehumidifiers catching fire and causing extensive property damage to consumers' homes. By the time the dehumidifiers were recalled in 2012, LG was aware of 107 reports of incidents, with more than $7 million in property damage and three reports of smoke inhalation." See CPSC press release re LG, https://www.cpsc.gov/Newsroom/News-Releases/2015/Appliance-Manufacturer-LG-Agrees-to-Pay-Maximum-1825-Million-Civil-Penalty-for-Failure-to-Report-Defective-Dehumidifiers (last visited June 30, 2022).

potential deponents, noting that it was likely over- and under-inclusive. (ECF 52.) On May 11, 2022, the defense conferred with the government, seeking the government's assistance in requesting that Gree Zhuhai produce the possible deponents for examination in order to preserve such testimony for trial. Even though the DPA contractually requires Gree Zhuhai to cooperate with the government, the government advised it would not request that Gree Zhuhai produce these witnesses or assist the defense in any manner.

Due to COVID restrictions, defense counsel and their investigators have been unable to travel to China to attempt to locate the potential deponents. We attempted to locate the prospective deponents through internet searches but, with one exception, were unable to obtain any contact information for these individuals.

Needless to say, defendants anticipate conducting the depositions through Zoom or some other similar platform, as travel to China is impracticable, if not forbidden, under the current health conditions.

## III.

## Argument

**A.  The Requested Depositions Are Necessary to Preserve the Deponents' Testimony, Ensure the Protection of Defendants' Constitutional Right to Present a Defense, and Are Authorized by the Rules of Criminal Procedure.**

**1.  The Authority to Order Depositions Under Rule 15.**

Rule 15(a)(1) of the Federal Rules of Criminal Procedure specifies that a "party may move that a prospective witness be deposed in order to preserve testimony for trial . . . [in] exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). Generally, district courts retain broad discretion with respect to Rule 15(a)(1) motions and will allow depositions so long as the court

finds that, "due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial." *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998).

The Ninth Circuit has cautioned against confusing the prerequisites for taking a deposition under Rule 15 with the prerequisites for admitting a deposition into evidence. *Omene*, *supra*, 143 F.3d 1167, 1170 (9th Cir. 1998).  Indeed, "Rule 15(a) does not require [a] conclusive showing of 'unavailability' or 'material' testimony before a deposition can be taken." *United States v. Sanchez–Lima*, 161 F.3d 545, 548 (9th Cir. 1998). The proponent need only demonstrate materiality to the extent there must be "some showing beyond unsubstantiated speculation that the evidence exculpates defendant." *United States v. Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994). Similarly, as to unavailability, the Ninth Circuit has observed, "It would be unreasonable and undesirable to require [the proponent] to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition." *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985).

In one illustrative case, *United States v. Trumpower*, 546 F.Supp.2d 849, 854 (E.D.Cal. 2008), the court found that percipient witnesses located in the UAE represented "classic examples of the exceptional circumstances that bring a witness into the scope of Rule 15" in part because "[t]hey are each UAE residents who are not subject to the orders of this Court [and] each percipient witnesses of events that are relevant to the charges in [the] indictment."

A failure to permit foreign depositions of material witnesses may "effectively prevent[] [the defendant] from exercising his Sixth Amendment right to present a defense." *Sanchez-Lima*, *supra*, 161 F.3d at 548.

### 2. Exceptional Circumstances Warrant the Taking of the Proposed Foreign Depositions Because the Witnesses' Testimony Is Material and They Are Beyond This Court's Subpoena Power.

Here, Mr. Loh and Mr. Chu are charged in Count One with conspiring with Gree Zhuhai to evade reporting defective dehumidifiers to the CPSC (18 U.S.C. § 371). The elements of a criminal conspiracy include: (1) an illegal objective; (2) an agreement between two or more persons to accomplish that objective; (3) one or more overt acts in furtherance thereof; and (4) the requisite intent. *United States v. Andreen*, 628 F.2d 1236, 1248 (9th Cir. 1980); *see also United States v. Lapier*, 796 F.3d 1090, 1095 (9th Cir. 2015) ("Conspiracy is a partnership in criminal purposes . . . The government has the obligation to establish not only the opportunity but also the actual meeting of minds. Mere association and activity with a conspirator does not meet the test.")

Any evidence tending to disprove an element of the charged conspiracy is thus material. As set forth below, each proposed deponent can offer such material testimony and is beyond the subpoena power of the United States.

### i. Lam Hou Kong (a.k.a. "Larry Lam") Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States.

As of 2005, and throughout the alleged conspiracy, Lam was the director of sales and marketing for Gree Hong Kong (identified in the charging document as "unindicted co-conspirator Company C"), the subsidiary of Gree Zhuhai that was used to form the joint venture (Gree USA) with MJC America. Lam was the primary point of contact for the defendants with Gree Zhuhai, and the first person to whom Charlie Loh reported the YouTube video of a Gree dehumidifier catching fire in July 2012. The Lohs and Lam corresponded extensively throughout 2012 and 2013 concerning the possible defect in Gree's products. Lam was present at the September 19, 2012 meeting with the Lohs and Mr. Chu at which Lam

conceded to the defendants that at least some of the Gree-manufactured dehumidifiers were made with substandard heat-resistant materials. At the same meeting, engineer Ju Wenhong told defendants that the overall product was not defective.

In sum, Lam was a key figure in the alleged conspiracy between Gree Zhuhai, its subsidiaries (including Gree Hong Kong) and the defendants. As such, he is a critical percipient witness who can testify to the various tests that Gree engineers were conducting on the equipment that led them to believe it was not a defective product and to the absence of any conspiracy (i.e., that there was no "meeting of the minds" on whether to report the dehumidifiers to the CPSC). Further, Lam can describe and explain emails between the defendants, Gree Zhuhai engineers, and senior executives at Gree Zhuhai, and testify as to statements made to defendants on behalf of Gree Zhuhai concerning the absence of any product defect. Lam can also testify as to the intense economic pressure placed on defendants by Gree Zhuhai to capitulate to its plan to delay reporting of a possible defect to the CPSC.

Lam is believed to reside in China.

### ii. Ju Wenhong Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States.

Ju Wenhong began working for Gree Zhuhai in 1999 and by 2007 was in charge of product development. Beginning in 2010, Ju reported directly to Huang Hui, deputy chief of exports and the company's technical department. In 2012, Huang asked Ju to attend a meeting with the defendants to discuss a possible defect with the Gree-manufactured dehumidifiers being sold in the United States by Gree USA. Ju was advised of a possible short-circuit problem with the appliances. He reviewed the YouTube video of a burning dehumidifier but concluded that it was not authentic. At the September 2012 meeting with defendants and Lam, Ju advised defendants that Gree engineers had tested the dehumidifiers but were

unable to reproduce any malfunction, that the probability of such a malfunction was "very low," and that the problem was likely with the appliance itself rather than a design defect. While Ju agreed with Lam that certain dehumidifiers had been built with non UL-compliant flame retardant materials, those "materials were not the cause" and that any issue with the product was "not life-threatening and . . . not [a] potential safety hazard."

It is apparent from the foregoing that Ju can offer material percipient testimony regarding tests that were performed by Gree Zhuhai, the results of which were conveyed to defendants at the September 2012 meeting, along with Ju's opinion that there was no product defect such as might necessitate a report or a recall. As with Lam, Ju's testimony would speak directly to the absence of a criminal conspiracy and provide evidence of information conveyed to defendants bearing on their state of mind.

Ju is believed to reside in China.

### iii. Huang Hui Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States.

As noted above, Huang Hai was deputy chief of exports and the company's technical department in or around 2012 and 2013. In 2012, Huang asked Ju Wenhong to attend a meeting with the defendants to discuss a possible defect with the Gree-manufactured dehumidifiers being sold in the United States by Gree USA. In July 2012, when defendants sent an urgent email to Lam regarding the YouTube video and possible defects in the Gree-manufactured dehumidifiers, Lam replied that he would be taking the issue directly to Mr. Huang, whom he referred to as a vice president of Gree Zhuhai. It appears Mr. Huang oversaw the testing of Gree dehumidifiers in China and instructed Mr. Ju that the defect defendants suspected could not be reproduced. In a September 21, 2012 email to Mr. Huang (copying CEO Madam Dong), Mr. Loh summarized his understanding of Gree Zhuhai's directive not to report the defect to the CSPC; in the same email, Mr. Loh

14

said MJC America would not comply with that directive. Mr. Huang responded the next day, again urging Mr. Loh to delay reporting.

It is apparent from the foregoing that Huang Hui can offer firsthand knowledge of the tests that were performed by Gree Zhuhai, the results of which were conveyed to defendants at the September 2012 meeting. He can further testify to his communications with the defendants on behalf of Gree Zhuhai as well as communications among senior Gree Zhuhai executives, including CEO Madam Dong, regarding the dispute between Gree Zhuhai and defendants of when and whether to report the suspected product defect. Such testimony would provide important context to the facts surrounding the allegations against defendants and speaks directly to the absence of any "actual meeting of minds" among the alleged co-conspirators. *See Lapier*, *supra*, 796 F.3d at 1095.

Hui is believed to reside in China.

### iv.  Zhang Guoqiang (a.k.a "Gordon Zhang") Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States.

Zhang was a Gree-Zhuhai employee responsible for the sale of Gree-manufactured dehumidifiers in the United States in or around 2012. Zhang communicated extensively with Charley Loh regarding the possible defect in the product throughout 2012, and in October of 2012 traveled to the United States to meet with MJC America's insurance provider to inspect one of the Gree dehumidifiers alleged to have malfunctioned and caught fire. Zhang has previously stated that Charley Loh was the first person to bring to his attention the reporting requirements of the CPSC. Zhang was also present at a December 18, 2012 meeting with members of the board of directors of Gree USA in which senior executives discussed the possible safety hazard posed by the dehumidifiers.

The anticipated testimony of Zhang thus speaks to defendants' state of mind (including the absence of any fraudulent intent), provides important context to the

15

facts surrounding the allegations against defendants, and speaks directly to the absence of any "actual meeting of minds" among the alleged co-conspirators. *See Lapier*, *supra*, 796 F.3d at 1095. Such testimony therefore casts doubt on the government's allegations and is thus material.

Zhang is believed to reside in China.

### v. Dong Mingzhu (a.k.a "Madam Dong") Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States.

Madam Dong was President and CEO of Gree Zhuhai and the chairperson of Gree Zhuhai's board throughout the alleged conspiracy. She led the formation of Gree USA with defendants' firm. Madam Dong was repeatedly advised directly via email by Charley Loh regarding the possible defect in Gree dehumidifiers. For example, on September 10, 2012, Mr. Loh emailed Madam Dong, advising her that Gree headquarters had told him not to report that the Gree dehumidifiers may be defective and catch on fire and that they might have overheating parts and plastic parts that could burn because the plastic did not meet the UL standard for fire resistance. Mr. Loh warned in his email that any company or individual who withheld from the CPSC information about a dangerous product could face criminal prosecution. Mr. Loh stated that if Gree Zhuhai did not give him clear instructions on how to handle the Gree dehumidifiers within a matter of days, then he would inform the CPSC about the dehumidifiers. No one replied to Mr. Loh's email.

As the highest-ranking person at Gree Zhuhai, and the recipient of Mr. Loh's September 10, 2012 email (among many others on which she was copied), Madam Dong has firsthand knowledge of the rift between defendants and Gree Zhuhai over the possible product defect. Moreover, it is reasonable to believe she has firsthand knowledge of most of the facts surrounding the dehumidifier product recall. Madam Dong can further testify to Mr. Loh's communications, provide

important background information regarding the formation of the joint venture, and testify as to the absence of any conspiracy between defendants and Gree Zhuhai.

Madam Dong is believed to reside in China.

### vi. He Tao and Zhou Yufei Can Provide Material Testimony and Are Beyond the Subpoena Power of the United States.

He Tao and Zhou Yufei were secretaries to Madam Dong in and around 2012 and 2013. In a deposition taken in connection with the civil suit brought by MJC America against Gree Zhuhai, Madam Dong testified that she had limited knowledge of a possible defect in Gree humidifiers, stating that her secretary during the relevant time period (either He Tao or Zhou Yufei), would have intercepted emails addressed to her and forwarded them to "the relevant people." Regarding Mr. Loh's September 10, 2012 email warning of the consequences of failing to report a defect to the CPSC, Madam Dong stated that her secretaries, in the ordinary course of business, would have forwarded such an email to a director and would not have shown it to Madam Dong herself. This, however, contradicted the sworn testimony of the director identified by Madam Dong as the likely recipient of the email. He stated that he rarely received emails forwarded from Madam Dong's secretaries.

The defense believes it may be necessary to depose He Tao and Zhou Yufei if Madam Dong continues to deny receipt of Mr. Loh's emails or maintains that she had little knowledge of the issues surrounding Gree dehumidifiers and their ultimate recall. He Tao and Zhou Yufei may, if necessary, testify to the emails and other communications they received on behalf of Madam Dong and whether these communications were indeed not disclosed to Madam Dong.

He Tao and Zhou Yufei are believed to reside in China.

### vii. Kevin Tsen Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States.

Kevin Tsen was an attorney in or around 2012 and 2013 with the law firm Mayer Brown, based in Hong Kong. Tsen was hired by MJC America to represent the company in its negotiations with Gree Zhuhai concerning the suspected product defect and a possible recall of Gree dehumidifiers. Tsen met with the defendants and senior executives from Gree Zhuhai in Hong Kong on December 8, 2012, to discuss the various issues. Tsen thereafter prepared minutes of the meeting which included a discussion of the possible defect, steps to be taken by Gree to address the defect, MJC America's refusal to continue selling Gree-manufactured dehumidifiers, the quantity of alleged defective dehumidifiers, and other matters central to the facts underlying the government's allegations. Tsen therefore has firsthand knowledge of the existence or lack thereof of any conspiracy or agreement between defendants and their Chinese counterparts, as well steps taken by defendants to pressure Gree to initiate a recall. This prospective testimony is therefore material.

Tsen is believed to reside in Hong Kong.

### viii. Wang Bo Can Provide Material Testimony and Is Beyond the Subpoena Power of the United States.

Wang Bo was an executive at Gree Zhuhai in or around 2012 and 2013. Wang communicated extensively with defendants regarding possible defects in Gree-humidifiers, including a January 23, 2013 email Wang sent to Mr. Loh in which he stated that Gree had tested the dehumidifiers and that the "dehumidifiers exported to the US are not subject to the requirements prescribed by the United States Consumer Product Safety Commission (the 'CPSC') for recalling or declaring unsafe products . . . ." Further, Wang was one recipient of the email from attorney Kevin Tsen summarizing the December 8, 2012 meeting in Hong Kong between the defendants and Gree Zhuhai executives. Wang therefore has material

18

testimony to offer regarding existence or lack thereof of any conspiracy or agreement between defendants and their Chinese counterparts, as well as to assurances given to the defendants that there was in fact no defect in the dehumidifiers which bear directly on the defendants' state of mind.

Wang is believed to reside in China.

### B. Rule 15 and the Letters Rogatory Process Provides the Only Means to Depose Witnesses in China and the Court Is Therefore Requested to Permit Such Letters to Issue.

#### 1. Rule 15 and the Letters Rogatory Process Provides the Only Means to Depose Witnesses in China.

Taking depositions of Chinese citizens is only possible through the letters rogatory process under Rule 15. China and the United States are signatories of the Hague Convention, including the 1970 Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. *See* https://assets.hcch.net/docs/dfed98c0-6749-42d2-a9be-3d41597734f1.pdf (last visited on June 20, 2022); *see also* Declarations and Reservations to the Hague Convention, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=493&disp=resdn (last visited on June 20, 2022). Although the case at bar is a criminal matter, the Department of State indicates that letters rogatory process is the only means by which to obtain evidence in China. Moreover, under its Declarations and Reservations to the Hague Evidence Convention and subsequent diplomatic communications, China has indicated that taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may only be accomplished through requests to its Central Authority under the Hague Evidence Convention. Depositions require permission from the Central Authority via the letters rogatory process. *See*

https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (last visited on June 6, 2020).

### 2.   The Court Is Requested to Issue Letters Rogatory to the People's Republic of China to Compel the Witnesses' Attendance at a Deposition.

#### i.   Authority for Issuance of Letters Rogatory

Requests for judicial assistance, or "letters rogatory" are formal requests from a court of one nation to the judiciary of a foreign nation, enlisting the assistance of the latter in obtaining evidence which is beyond the jurisdiction of the requesting court. The execution of a request for judicial assistance by the foreign court is based, in the absence of a treaty, on a comity between nations at peace and, as such, is discretionary in nature. *Jansen v. Belding-Corticelli,* 84 F.2d 577, 579 (3d. Cir. 1936), *United States v. Zabady,* 546 F.Supp. 35, 39 (M.D. Pa. 1982).

The power of federal courts to issue such requests derives from 28 U.S.C. § 1781, *et seq, United States v. Reagan,* 453 F.2d 165, 171-73 (6th Cir. 1971), and from the court's "inherent" authority. *United States v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958), *DeVillanueve v. Morning Journal Ass'n,* 206 F. 70 (S.D.N.Y 1913). The federal court also retains the power to execute the requests of foreign tribunals. 28 U.S.C. § 1782; s*ee also In re Request for Judicial Assistance from Seoul*, 555 F.2d 720 (9th Cir. 1977).

#### ii.  Procedure for Issuance of Letters Rogatory

Although the Rules of Criminal Procedure do not provide procedures for the issuance of requests for judicial assistance, Rule 57 of the Federal Rules of Criminal Procedure provides:

> In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those in the district in which they act.

Title 28, United States Code, § 1781 provides, in part:

(a) The Department of State has power directly or through suitable channels . . .

(b) to receive a letter rogatory issued, or request made, by a tribunal in the United States, to transmit it to the foreign or international tribunal officer, or agency to whom it is addressed and to receive its return after execution.

An application for a request for judicial assistance requesting that foreign authority compel the production of a witness is not unlike any other request for international judicial assistance, *e.g.,* for the production of documents, etc. Both Fed R. Crim. P. 15(a) and Fed. R. Civ. P. Rule 28(b) each contemplates the taking of foreign depositions. The request for international judicial assistance merely asks that the foreign government compel a witness' attendance at a deposition.

As described above, China and the United States are signatories of the Hague Evidence Convention, and China requires foreign courts to request assistance through the letters rogatory process. U.S. law, international treaties, and international legal practice therefore provide that the proper vehicle for compelling a witness to appear at a deposition in China for the preservation of testimony for a trial in district court is for Mr. Chu and Mr. Loh to apply to the Court for letters rogatory requesting international judicial assistance from the People's Republic of China to compel the prospective deponent to appear before a court or official for such deposition.

## IV.

## Conclusion

Defendants Simon Chu and Charley Loh cannot prepare and present a defense without access to the critical material witnesses described in this motion. The government has secured access to their witnesses through the cooperation provisions of their Deferred Prosecution Agreement with Gree Zhuhai but has refused to assist the defense in preserving their testimony. The only means,

21

therefore, for Mr. Chu and Mr. Loh to gain access to these witnesses and preserve their testimony for trial is via the letters rogatory requested. The defendants therefore respectfully request that this Court (1) order the foreign depositions of the witnesses named in this motion, and (2) permit the defense to issue the requested letters rogatory attached hereto.

Dated: July 5, 2022

Respectfully submitted,

_____/s/_____

STEVEN BRODY
Attorney for Simon Chu

_____/s/_____

RICHARD M. STEINGARD
Attorney for Charley Loh