Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
**LAW OFFICES OF RICHARD M. STEINGARD**
724 South Spring Street, Ninth Floor
Los Angeles, California 90014
Telephone: (213) 260-9449
Facsimile: (213) 260-9450

Attorney for Defendant
CHARLEY LOH

Steven Brody (SBN 271616)
*stevebrodylaw@gmail.com*
**LAW OFFICES OF STEVEN BRODY**
155 North Lake Avenue, Suite 800
Pasadena, CA 91101
Telephone: (213) 290-5294
Facsimile: (213) 403-5323

Attorney for Defendant
SIMON CHU

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**SIMON CHU and CHARLEY LOH,**<br><br>Defendants. | Case No. CR 19-193-DSF<br><br>**DEFENDANTS' REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR FOREIGN DEPOSITIONS; DECLARATION OF JENNIFER NG**<br><br>Hearing. Date: January 23, 2023<br>Hearing Time: 8:30 a.m. |

1

Defendants Charley Loh and Simon Chu, by and through their attorneys of record, hereby submit this Reply to the Government's Opposition to Defendants' Motion for Foreign Depositions.

Dated: December 12, 2022

Respectfully submitted,

/s/

RICHARD M. STEINGARD
Attorney for Charley Loh

/s/

STEVEN BRODY
Attorney for  Simon Chu

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.**

### **INTRODUCTION**

Defendants Simon Chu and Charley Loh ("the defendants") have moved this Court for an order permitting foreign depositions in China, pursuant to Rule 15, Federal Rules of Criminal Procedure, and for permission to issue letters rogatory requesting judicial assistance from the People's Republic of China. To present its case to the jury, the defendants seek to take the deposition of nine individuals, eight of whom work (or worked) for Gree Zhuhai. As outlined in the motion, based on the facts of this case, the proposed deponents' testimony is vital to the defendants' presentation of its defense, and denying defendants this testimony would be tantamount to denying their Sixth Amendment right to present a defense. *See United States v. Sanchez-Lima*, 161 F.3d 545, 547 (9th Cir. 1998).

The government's 37-page page opposition bypasses the factual underpinnings of the case and, instead, stitches together a cross-section of district court rulings from across the country—some published, some unpublished, but none from this district[1]—along with several out-of-circuit decisions and some Ninth Circuit authority. According to the government, this patchwork of judicial orders and opinions provides the Court with a procedural obstacle course that the defendants must traverse to obtain the requested foreign depositions. To the contrary, this is not the law in this Circuit and most of the government's claimed prerequisites are simply case-specific considerations that are largely inapplicable under the current pandemic-caused circumstances.

As in every criminal case, the defendants are entitled under the Sixth Amendment to the testimony of individuals with relevant knowledge of the facts.

---

[1] The government cites to district court cases in Hawaii, Kansas, Florida, Oregon, Washington D.C., Nevada, the state of Washington, and Wisconsin, as well as the Northern, Southern, and Eastern Districts of California, as if these decisions had some precedential value.

All of the proposed deponents were, in some manner, meaningful participants in the underlying conduct.  If the proposed deponents were local, there is no doubt that the defense could subpoena them to testify at trial.  Indeed, most of the proposed deponents sat for depositions and/or testified at the civil trials.  In those proceedings, their testimony touched upon some of the issues in this criminal matter.  But because the civil and criminal matters are different—one alleged a breach of fiduciary duty, the other alleges a failure to timely file—the witnesses did not fully address several key issues in this case.

All the proposed deponents reside in a foreign country; the only way the defendants can secure their possible testimony at trial is through Rule 15 depositions.  Rule 15 is fundamentally about fairness—the right of a party to present his or her case to a finder of fact through the testimony of percipient witnesses.  This is at the heart of defendants' motion.  For the reasons that follow, we ask that the Court permit the defendants to take depositions of the individuals identified in the defendants' motion, and for permission to issue letters rogatory requesting judicial assistance from the People's Republic of China.

## II.

## STATEMENT OF FACTS

The government does not challenge or dispute any of the factual statements in defendants' motion.  Indeed, the government's brief skips from "Intro" to "Argument" without bothering with a "Statement of Facts."  But it is the facts of the case which are the foundation for the defendants' request for deposition.

From a factual perspective, there is very little that the parties disagree about. In 2010, the defendants entered into a joint venture with Gree Zhuhai, a large Chinese manufacturer of home appliances.  In July 2012, the defendants alerted Gree Zhuhai's officials about a possible problem with a dehumidifier unit.  Over the next six months, as the defendants learned of additional incidents, they continually kept Gree Zhuhai apprised of each development.  The defendants also

made Gree Zhuhai aware of CPSC's reporting requirements for defective products, including providing Gree Zhuhai with the CPSC Handbook. Gree Zhuhai responded that their engineers examined the problematic dehumidifiers and determined that they were defect-free. Gree Zhuhai continued to make this claim for the next six months. The defendants raised the issue with the top echelons of Gree Zhuhai but were consistently rebuffed. Finally, in or around January 2013, Gree Zhuhai acquiesced and agreed to jointly report the dehumidifiers to the CPSC. Gree Zhuhai then recalled its products, not just the possibly defective dehumidifiers sold under the joint venture with the defendants, but also at least *ten* other dehumidifiers that Gree Zhuhai manufactured and sold under other names through *seven* other distributors dating back to *2005*.

The government's brief and attached exhibits corroborate the above facts and fully support defendants' motion.[2] Because the factual record is undisputed, defendants will not burden the Court with a stack of additional exhibits merely to prove that which is not challenged. The defendants believe the record is more than sufficient for the Court to order the requested foreign depositions. Nonetheless, to the extent the Court would like a more complete account of the facts of the case, including the correspondence detailing the defendants' many contacts with Gree

---

[2]     The government's exhibits are: (1) a few of the many emails between the defendants and Gree Zhuhai representatives showing the defendants' concerns about the dehumidifiers and Gree Zhuhai's pushback that the units were not defective (Exs. 1-3); (2) a partial transcript of a September 2012 meeting between the defendants and Gree Zhuhai's representatives in which, among other things, Gree Zhuhai denied that the dehumidifiers were defective but admitted that an unknown number of dehumidifier units lacked a proper flame-retardant coating (Ex. 4); (3) excerpts from the defendants' testimony at a civil trial in which they expressed their concerns—and noted Gree Zhuhai's lack of concern—about the possibly defective dehumidifiers (Exs. 5, 7-8); and (4) the 2010 Memorandum of Understanding between the defendants' company (MJC America) and Gree Zhuhai which formed the basis for the joint venture (Ex. 6).

Zhuhai's representatives about the possibly defective dehumidifiers, the defendants will promptly provide those to the Court.

## III.

## ARGUMENT

In opposing the depositions, the government claims that the defendants (1) "failed to show that the proposed deponents are unavailable to attend trial" (Govt. Opp, at 9-11); (2) "failed to show good-faith efforts to obtain the proposed deponents' presence at trial" (*id*. at 11-13); (3) "failed to show that the proposed deponents are willing to testify at a deposition abroad" (*id*. at 13-15); (4) "failed to show that the proposed deponents' testimony would be material or favorable" (*id*. at 15-20); (5) "failed to show that it is possible to conduct foreign depositions in China, or that any such depositions would result in admissible testimony" (*id*. at 20-23); (6) "are seeking to depose adverse witnesses for discovery purposes in direct contravention to Rule 15" (*id*. at 23-26); and (7) failed to timely move for Rule 15 depositions (*id*. at 26-28). We wholeheartedly disagree and address each claim below.

A.    The Defendants Need Not Establish that the Deponents are Unavailable for Trial

The government first claims that the defendants "failed to show that the proposed deponents are unavailable to attend trial." (Govt. Opp. at 9.) In fact, the Ninth Circuit has unequivocally stated that a party need not make a showing of unavailability. As one district court stated in granting the government's motion for foreign depositions, "'Rule 15(a) does not require a showing that the witness is unavailable for trial or that the evidence is material or favorable.' The government must establish a witness's unavailability before a party may use the depositions at trial, not before the party may depose a witness. "'Rule 15(a) only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use

6

at trial.'" *United States v. Long Van Nguyen,* 2013 WL 2402957, *2 (W.D. Washington, May 31, 2013), *quoting United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998). *See also United States v. Sanchez–Lima*, 161 F.3d 545, 548 (9th Cir. 1998) ("Rule 15(a) does not require [a] conclusive showing of 'unavailability' or 'material' testimony before a deposition can be taken.").

Rather than cite Ninth Circuit law, the government relies on an Eleventh Circuit case, *United States v. Drogoul,* 1 F.3d 1546 (11th Cir. 1993), but then misquotes the relevant portion of the Court's opinion.  We have highlighted below the difference between the government's purported quote from *Drogoul* and the *Drogoul* Court's actual statement:

| **Govt. Brief quoting *Drogoul*** | ***United States v. Drogoul*** |
|---|---|
| "Exceptional circumstances do not exist when the prospective deponent has declared that he or she is willing to testify at trial."  (Govt. Opp. at 9.) | **"In the ordinary case,** exceptional circumstances do not exist when the prospective deponent has declared that he or she is willing to testify at trial."  1 F.3d at 1557. |

The government's omitted phrase—"in the ordinary case"—qualifies the balance of the Court's statement and is particularly applicable here.  This is anything but "an ordinary case."  The Court and parties are working in a unique pandemic environment—a truly once-in-a-lifetime occurrence—in which defense counsel and their investigators do not have the ability to travel to China to locate and talk to the proposed deponents, much less ascertain whether they are willing to testify at trial.  Moreover, *Drogoul* continued on to note: "[I]f there is very little chance that a deposition will be admissible—if the witnesses are available to testify live, for example—the district court need not engage in the wasteful practice of authorizing useless depositions."  *Id.*  Thus, *Drogoul*'s point was that depositions are unnecessary where there is a high probability that the deponent would ultimately be available at trial.  There is no indication here that this will be the case.

7

Finally, in *Drogoul,* the Court actually *granted* the government's request for foreign depositions of six additional witnesses, even though those witnesses said they would come to the United States for trial.  The Court conclude that "although the [additional] six prospective deponents stated in May 1993 that they were willing to come to the United States, they too are beyond the subpoena power of the United States courts. The possibility remains that they could change their minds, in which case it would be impossible for the government to present their testimony." *Id*.  In short, *Drogoul* undermines, rather than supports the government's opposition to defendants' motion.

Just as *Drogoul* observed, even if a proposed deponent agreed to appear before this Court for trial, that fact does not obviate the need for foreign depositions. As in any trial, a party is  obligated to ensure the appearance of its witnesses. An attorney cannot merely rely on a witness's personal assurance that he or she will appear in court, and in most cases, that requires issuing subpoenas. Exactly the same principle applies here, but the defense has no power to compel Chinese citizens to appear before this Court.  A foreigner's assurance that he or she will come to the United States is judicially unenforceable; the United States Marshals cannot be sent to bring him or her in.  And no court is likely to countenance a party who laments that a witness promised – but failed – to appear for trial when the attorney failed to issue a subpoena.  This is consistent with the Ninth Circuit's observation that "[i]t would be unreasonable and undesirable to require [the proponent] to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition." *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985).

B.   The Defendants Have Made Good Faith Efforts to Ascertain Whether the Proposed Deponents Will Appear for Trial

The government next argues that "a Rule 15 movant must also show that it 'has made a good faith effort to secure that person's attendance' at trial." (Govt. Opp. at 11.)  In fact, there is no such requirement—a party's efforts to obtain a

8

deponent's presence at trial is merely one of many "considerations" that the Court may examine in determining whether to grant a foreign deposition. *United States v. Hayat*, 2017 WL 6539610, *3 (E.D. Cal. Dec. 20, 2017) ("The Ninth Circuit has stressed that Rule 15 does not require a conclusive showing of unavailability, and the deponents unavailability is just one factor to consider.") (citations and internal quotation marks omitted).

As noted above, the Covid pandemic is unlike any other time in this Court or counsels' experience. On top of the many safeguards taken by the U.S. government, China has one of the world's strictest Covid policies. Combined, defense counsel simply cannot make "ordinary" inquiries of prospective witnesses located in other countries. Nonetheless, the defense has made a good faith effort to locate and contact the deponents to determine their possible availability at trial.

*First*, in May 2022, defense counsel requested that the government exercise its rights under the Deferred Prosecution Agreement ("DPA") with Gree Zhuhai and request that they produce the identified current and former Gree Zhuhai employees for deposition. Under the DPA, Gree Zhuhai specifically agreed to make available their "present and former officers, directors and employees to provide testimony as the government may request, including testimony before a grand jury, a trial court, or other legal or court proceedings…" (*See United States v. Gree Electric Appliances, Inc. of Zhuhai et al*, No. 21-CR-00498-DSF (C.D. Cal), ECF 9 at ¶ 16 (c)). The DPA states, in relevant part:

c.     Gree Zhuhai and Gree Hong Kong shall, using their reasonable best efforts, make available their present and former officers, directors and employees to provide information and/or testimony as the government may request, including testimony before a grand jury, a trial court, or other legal or court proceeding, as well as interviews with law enforcement authorities. Gree Zhuhai's and Gree Hong Kong's cooperation under this paragraph shall include identification of witnesses who have material information relating to the Covered Conduct, including

9

identification of witnesses who have particular types of material information requested by the government.  It is further understood that Gree Zhuhai and Gree Hong Kong must at all times provide complete, truthful, and accurate information.

d.      Gree Zhuhai and Gree Hong Kong (and their directors, officers, employees, agents, and representatives) shall testify truthfully before the grand jury and at any trial or other proceeding with respect to any matters about which they may be questioned. Gree Zhuhai and Gree Hong Kong (and their directors, officers, employees, agents, and representatives) shall at all times give complete, truthful, and accurate information and testimony. Gree Zhuhai and Gree Hong Kong (and their directors, officers, employees, agents, and representatives) shall neither attempt to protect any person who has been involved in criminal activity, nor falsely implicate anyone in criminal activity.  (*Id.* at ¶ 16 (c)-(d).)

Despite the above, the government declined to provide any assistance.  In fact, the government insists that its cooperation agreement does not "require the Government to assist [the defendants] in deposing adverse witnesses to support the defense case." (Govt. Opp. at 25.)  Besides the obvious perverseness of this claim—the government *opposing* the defendants' access to truthful testimony—the government's position is wrong as a matter of law.  "The rule that the government must show that it used reasonable efforts to produce a confidential informant who is unavailable to a defendant was established more than twenty-five years ago … Since then, it has been reaffirmed many times, by this court en banc as well as by other circuits."  *United States v. Montgomery*, 998 F.2d 1468, 1476-77 (9th Cir. 1993) (citations omitted); *United States v. Tornabene*, 687 F.2d 312, 315-316 (9th Cir. 1982) (government must use reasonable efforts to produce a cooperating witness whose presence has been requested by the defense).

*Second*, in addition to requesting the government's assistance, the defense has in fact attempted to locate and contact the proposed deponents.  (*See* Declaration of Jennifer Ng, ¶¶ 2-5.)  Ms. Ng's declaration explains that over the past six months, she scoured the discovery materials and open-source information

to find email addresses, phone numbers, work locations, or other identifying information for the deponents.  (*Id.*)  Using what she was able to acquire, Ms. Ng attempted to contact the deponents, but was unable to locate any of them.  (*Id.*)  Under the circumstances, the defense's actions – albeit unsuccessful – are the type of good faith efforts that courts can consider when deciding Rule 15 motions.

Throughout its brief, the government cites *United States v. Williams*, 548 F. Supp. 2d 1145 (D. Hawaii 2018).  There, the Court considered the defendant's request for a Rule 15 deposition of a cooperating witness.  The Court rightly noted that "[u]nder Ninth Circuit law, the prosecution must make reasonable attempts to produce an informant upon the defense's request."  *(Id.* at 1147.)  Fulfilling its obligation, the government *agreed* that the cooperating witness should sit for a Rule 15 deposition because it "would allow the defense to obtain the information they hoped to obtain during an interview and would prevent any later disputes about what she said during the interview." (*Id*. at 1148).[3]  Despite the government's offer, the trial judge ultimately denied the request because the cooperating witness expressly *refused* to sit for a deposition and was clearly and unambiguously *available* to testify at trial.  (*Id*. at 1150.)

Here, unlike *Williams*, the government will not agree to depositions and has refused to assist the defendants in producing the witnesses.  Instead, the government faults the defendants for not having gone to China to locate the proposed deponents and ascertain their willingness to testimony at trial.  (Govt. Opp. at 9-12.)  Yet, in the next breath the government excuses its own unwillingness to go to China, noting that "[c]ourts also typically consider whether

---

[3]     The government later withdrew its agreement after the proposed deponent made clear she was available for trial, would not submit to a deposition, and argued that the government's position was a breach of the plea agreement.  *Id*.  at 1148.

the safety of United States officials would be compromised by travelling to the foreign country." (*Id*. at 8, n.2 (citations omitted).)

Under the current pandemic-created circumstances, the defendants' attempts to locate and contact the proposed deponents were a good faith effort to ascertain the deponents' willingness to testify at trial.[4]

C.    The Defendants Need Not Establish that the Proposed Deponents are Willing to Testify at a Deposition Abroad

The government also argues that "a Rule 15 movant must show that the witness is willing to be deposed at the proposed foreign location."  (Govt. Opp. at 13.)  As before, the Ninth Circuit has imposed no such requirement and, at best, this is another case-specific consideration that the court can examine, if it so chooses.  *Torre-Sanchez*, 2014 WL 4370538, *4 (N.D. Cal. Sept. 3, 2014).  For the reasons set forth above and in the attached declaration, the defendants attempted to contact the proposed deponents to ascertain their willingness to testify at a deposition.  Further, the defense has requested the government's assistance in obtaining the relevant witnesses for trial, and the government has refused.  The defendants' inability to communicate with the deponents is, under the current circumstances, understandable and is not a basis to deny the motion for depositions.

D.    The Defendants Have Shown that the Proposed Deponents' Testimony Would be Material and Favorable

The government argues that the defendants have "failed to show that the deponents' testimony would be material or favorable."  (Govt. Opp. at 15.)  Once again, the government has taken liberties with a court's opinion.  The government correctly quotes the Ninth Circuit in *United States Omene* as stating, "Rule 15(a)

---

4    Needless to say, if one or more of the proposed deponents states that he or she is unwilling to sit for a deposition and is willing to come to the U.S. for trial, and the defense can be assured that he or she will actually appear for trial, the defendants would reconsider their request for depositions.

does not require [a] *conclusive* showing of [] 'material' testimony before a deposition can be taken," but the government pairs this statement with a different opinion, claiming that "Defendants must show that proposed testimony is 'sufficiently favorable' to the defense to warrant the depositions." (*Id.*, citing *United States v. Taylor*, 693 F.2d 919, 924 (9th Cir. 1982).)

In fact, the full statement from *Omene* is, "Rule 15(a) does not require any conclusive showing of 'unavailability' or 'material testimony' before a deposition can be taken in a criminal case. Rule 15(a) only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial." 143 F.3d at 1170. Moreover, contrary to the government's claim, *Taylor* does not establish a general rule that "[d]efendants must show that proposed testimony is 'sufficiently favorable' to the defense to warrant the depositions." Rather, in *Taylor*, the defendant was charged with participating in a strike against the federal government. The defendant moved to depose then-President Reagan, other members of his administration and union officials. The lower court denied the motion, which was affirmed by the Ninth Circuit because, in part, the defendant failed to show that the proposed deponents would have anything to say about the underlying charges. The lower and appellate courts' rather obvious decision to deny the defendant the opportunity to depose the sitting President was, at best, little more than a case-specific consideration and did not establish a prerequisite to a Rule 15 deposition.

As stated in defendants' motion, the Ninth Circuit has cautioned against confusing the prerequisites for *taking* a deposition under Rule 15 with the prerequisites for *admitting* a deposition into evidence at trial. *Omene,* 143 F.3d at 1170. As noted above, "Rule 15(a) only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial." *Id.*

The defendants' motion clearly exceeds the low bar of showing *some* materiality for the proposed deponents' testimony. The government does not dispute that the proposed deponents each had a meaningful role in the underlying charges. In fact, the government's brief and "supporting" exhibits make this very point, noting that some of the deponents were previously deposed in the civil cases about matters relevant to the instant case: that is, they had *material* information about the underlying charges. This is exemplified in one of the government's exhibits, Govt Ex. 7, the partial trial testimony of Charley Loh:

> Q What did you say when Larry Lam said the factory wanted to delay reporting six to nine months?
> A What I tried to tell them is that this is not acceptable because we are in the U.S. doing U.S. business. We have to follow the way U.S. doing business. If we know that's the problem, we cannot wait. That's what I tried to tell them to understand what we supposed to do.
> Q Was Larry Lam pleased with your suggestion to not delay the reporting?
> A Not at all.

One of the defense's proposed deponents is Larry Lam, and the defendants anticipate ascertaining why he was upset with Mr. Loh's suggestion to not delay the reporting. Similarly, Mr. Lam is the recipient and sender of emails in Govt. Ex. 1 and one of the speakers in Govt. Ex 4; Madam Dong, another proposed deponent, is the recipient of emails in Govt. Exs. 2 and 3 and the signatory on Govt. Ex. 6; and Ju Wenghong, another proposed deponent, is also a speaker in Govt. Ex. 4. Defendants anticipate that these and the other proposed deponents will assist the defendants in (1) refuting the Indictment's *conspiracy* count by establishing that the defendants and Gree Zhuhai officials never had a "meeting of the minds," a prerequisite for a conspiracy charge; (2) refuting the *failure to file* charge by establishing that Gree Zhuhai specifically and repeatedly advised the defendants that the dehumidifiers were not defective and, therefore, need not be reported to the CPSC; and (3) refuting the *fraud* charge by establishing that the defendants never intended to engage in fraudulent conduct, a corrupt intent being

14

required to support a fraud conviction.  Thus, the defendants submit that they have made a sufficient showing of relevance and materiality to warrant the proposed depositions.

E.    The Defendants Have Shown that it is Possible to Take Depositions in China

The government claims that the defendants "failed to show that it is possible to conduct foreign depositions in China, or that any such depositions would result in admissible testimony."  (Govt. Opp. at 20-23.)  First, the government provides no Ninth Circuit authority for claiming that the defendants must make such a showing, and for good reason: the Court has never stated that this was a prerequisite to a Rule 15 deposition, and the statute contains no such requirement.[5] Second, the government has put the proverbial cart before the horse.  Undoubtedly, there are challenges to taking depositions in China, just as there are challenges to taking foreign depositions in many countries.  But, as noted above, there is a difference between the right to *take* a foreign deposition and the *admissibility* of the deposition testimony.  The instant motion only concerns the former; the latter issue is for another day.

Undeterred, the government posits that because Gree Zhuhai is a "China-based, PRC-owned company… [i]t is reasonable to infer that the PRC has a vested

---

[5]    The government cites to a single district court opinion, *United States v. Moalin*, 2012 WL 3637370 (S.D. Cal. Aug. 22, 2012), in which the proposed depositions were to take place in Somalia.  In denying the Rule 15 motion, the court cited a case-specific consideration: Somalia was incapable of providing any due process for the depositions.  The court stated, "due to civil unrest in Somalia, there does not appear to be any significant functioning executive or judicial process in Somalia. As noted on the State Department's website, 'There is no organized system of criminal justice in Somalia, nor is there any recognized or established authority to administer a uniform application of due process. Enforcement of criminal law is, therefore, haphazard to nonexistent.'"  2012 WL 3637370, at *6.  None of these circumstances are applicable to the instant case.

15

interest in depositions pertaining to conduct that occurred at Gree Zhuhai and its subsidiary Gree Hong Kong during the relevant period and – given the right to intervene with impunity – would likely find that inculpatory testimony from Gree witnesses is 'detrimental to the sovereignty, security, or public interest' of the PRC." (*Id*. at 21 (citation omitted).)  In other words, the government claims that the Chinese government may pressure Gree Zhuhai deponents to *lie* about the company's culpability.  But surely the terms of the DPA, which mandate only truthful testimony and impose severe sanctions should the DPA be breached, have some bite to them and would discourage the type of falsehoods that the government fears and predicts.  Of course, should the government's hunch be proven true, the Court will be in a position to address such matters fully and frankly, both in the context of this case and the DPA.

F.    <u>The Defendants are Not Seeking to Depose Adverse Witnesses for Discovery Purposes</u>

The government claims that the defendants "are seeking to depose adverse witnesses for discovery purposes in direct contravention to Rule 15."  (Govt. Opp. at 23.)  This argument is confusing.  Is the government suggesting that the defendants are seeking discovery of adverse witnesses but have no intention of calling the deposed witnesses at trial?  If this is the government's point, it is simply wrong.  For starters, the fact that the government considers the deponents "adverse" to defendants' case is incorrect.  The defendants believe the deponents will provide truthful and forthright testimony establishing that the defendants and Gree Zhuhai officials never had a meeting of the minds, that Gree Zhuhai consistently maintained that the dehumidifiers were defect-free, and that the defendants never intended to commit a fraud.

Alternatively, is the government claiming that it intends to call the proposed deponents at trial and that the deponents are therefore adverse witnesses to the defendants?  If this is the case, the defendants agree that depositions would be

16

unnecessary.  However, the government has never indicated that it intends to call any of the proposed deponents at trial, a point they likely would have raised sometime over the past three years during the parties many discussions about the possibility of foreign depositions, or in their opposition brief.

The government's reliance on *Williams* is surprising.  As noted above, in that the case, the government initially *agreed* that the cooperating witness should sit for a Rule 15 deposition because it "would allow the defense to obtain the information they hoped to obtain during an interview and would prevent any later disputes about what she said during the interview."  (548 F. Supp. 2d at 1148).[6] Regardless, neither Rule 15 nor the *Williams* decision prohibits a defendant from taking depositions of so-called adverse witnesses.

G.     <u>The Defendants' Motion is Timely</u>

Finally, the government argues that the defendants' motion is untimely. (Govt. Opp. at 26-28.)  The government's position is strained, to say the least.  As an initial matter, the charges against the defendants relate to conduct that occurred a *decade* ago, in 2012 and 2013, yet the government waited until March 2019 to charge the defendants.  (ECF 1.)  One questions how the government can advance a timeliness argument having themselves delayed the bringing of charges for such an extended period of time.[7]

Additionally, the pace of the case and the presentation of the instant motion are clearly not the defendants' fault.  The defendants were arraigned in November 2019 (ECF 28 & 29), a few months before the Covid pandemic hit.  The courts essentially closed, and the parties stipulated to continue the trial multiple times due

---

[6]     See n. 3, *infra*.

[7]     The defendants anticipate filing a pretrial motion asserting that the charges are barred by the statute of limitations.

to the pandemic. (ECF 38, 41, 44, 46, 48, & 53).[8]  Further, as the government admits, the parties have been discussing the potential for foreign depositions since the outset of the litigation but agreed that pandemic protocols necessitated that the case—and foreign depositions—be delayed.  Contrary to the government's claim, this is not "[a] delay of Defendants' own making."  (Govt. Opp. at 28.)

As the pandemic slowed and the courts began to reopen, the parties resumed discussing the Rule 15 depositions in earnest.  Well over a year before trial, the government requested—and the defendants' provided—an informal list of potential deponents, which has since been narrowed to just nine individuals.  Thereafter, the defendants sought the government's assistance in producing the deponents under the cooperation provisions of the Gree Zhuhai DPA.  After the government declined to provide any assistance, the parties agreed to a briefing schedule for defendants' motion.  (ECF 52.)  Pursuant to the briefing schedule, the defendants *timely* filed their motion on July 5, 2022 (ECF 56), *nine and one-half months* before the April 25, 2023 trial date.  Thereafter, the government twice requested additional time to file its opposition brief, which the defendants agreed to (ECF 57 & 59), thereby pushing the hearing on the instant motion closer to the trial date.  The government ultimately filed its opposition brief immediately before Mr. Loh's counsel began trial (ECF 66), necessitating yet another extension.  (ECF 67.)

Under these circumstances, the delays in resolving the instant motion were at least partially due to the government and were hardly "of Defendants' own making."  (Govt. Opp. at 28.)  Alternatively, by stipulating to a briefing schedule and then seeking multiple continuances which necessarily extended the date of the hearing, the government waived its right to advance a timeliness argument.  *See*

---

[8]     During the pandemic shutdown, defendant Chu changed attorneys (ECF 50), which also necessitated a continuance.

1   *e.g.*, *SWC Inc v. Elite Promo Inc*, 234 F. Supp. 3d 1018 (N.D. Cal. 2017), quoting
2   *Meadows v. Bicrodyne Corp.*, 559 F. Supp. 57 (N.D. Cal. 1983), *aff'd*, 785 F.2d
3   670 (9th Cir. 1986) (upholding denial of a remand motion because plaintiffs "by
4   appearing repeatedly before the court before raising the timeliness objection,
5   had waived their right to raise that issue").

6                                              ***

7         For the foregoing reasons, defendants ask that the Court authorize Rule 15
8   depositions and permit the defendants to file letters rogatory with the People's
9   Republic of China.

10

11  Dated: December 12, 2022                Respectfully submitted,

12

13                                          /s/
                                            _____
                                            RICHARD M. STEINGARD
14                                          Attorney for Charley Loh

15

16                                          /s/
                                            _____
17                                          STEVEN BRODY
                                            Attorney for  Simon Chu
18

19

20

21

22

23

24

25

26

27

28