Steven A. Brody (SBN 271616)
*stevebrodylaw@gmail.com*
**LAW OFFICES OF STEVEN BRODY**
155 North Lake Avenue, Suite 800
Pasadena, CA 91101
Los Angeles, California 90017
Telephone:  (213) 290-5294
Facsimile:  (213) 403-5323

Attorney for Simon Chu

Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
**LAW OFFICES OF RICHARD M. STEINGARD**
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone:  (213) 260-9449
Facsimile:  (213) 260-9450

Attorney for Charley Loh

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br><br> vs. <br><br><br> **SIMON CHU** and **CHARLEY LOH**, <br><br> Defendants. | Case No. CR 19-193-DSF <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS COUNTS ONE AND TWO ON CONSTITUTIONAL GROUNDS; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBIT A.** <br><br><br> Hearing date: March 6, 2023 <br> Time: 8:30 AM |

Defendants Simon Chu and Charley Loh hereby move, by and through counsel, to dismiss count one of the indictment charging conspiracy to violate 15 U.S.C. §§ 2064(b)(4) and 2068(a)(1), (4), and count two charging a knowing and willful violation of these same statutes. The counts must be dismissed because the

i

statutes are unconstitutionally vague and invite arbitrary enforcement both facially and as applied to the defendants.

This motion is based on the attached memorandum of points and authorities, the attached exhibit, all files and records in this matter, and any evidence and argument that may be presented at or before a hearing on this matter.

Dated: January 30, 2023

Respectfully submitted,

_____
/s/

STEVEN BRODY
Attorney for Simon Chu

_____
/s/

RICHARD M. STEINGARD
Attorney for Charley Loh

1

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 3

III. ARGUMENT: TITLE 15, UNITED STATES CODE SECTION 2064(b)(4) IS
   UNCONSTITUTIONAL BECAUSE ITS TERMS ARE TOO IMPRECISE
   TO GIVE NOTICE OF THE PROSCRIBED CONDUCT AND BECAUSE
   THE STATUTE INVITES ARBITRARY ENFORCEMENT. ...................... 4

   A. A statute so vague that it invites arbitrary enforcement or fails to
      adequately warn the public of the prohibited conduct is unconstitutional
      in all its applications. ................................................................................ 4

   B. The statutory framework of the CPSA and the CPSC's interpretation
      of the law. ................................................................................................. 5

      1. The relevant statutes of CPSA in the United States Code. ................ 5

      2. The Code of Federal Regulations interpreting the CPSA. ................ 6

   C. The statute is unconstitutional in all applications because it invites
      arbitrary enforcement and fails to give proper notice to the public as
      to what conduct is prohibited. ................................................................. 8

      1. The language of the statute is unconstitutionally vague and
         invites arbitrary enforcement. ........................................................... 8

      2. For the purposes of criminal enforcement, the statutes require
         even greater precision to give notice than does a civil statute. ....... 10

      3. The Code of Federal Regulations cannot be used to narrow the
         scope of the statute and render it sufficiently precise to survive a
         constitutional challenge. ................................................................... 12

   D. The reporting statute is unconstitutional as applied to defendants. ....... 15

      1. The statute is being arbitrarily enforced against the defendants. .... 15

      2. The CPSA is indecipherably vague as applied to the defendants
         and their conduct does not fall within its core prohibition. ............. 21

IV. CONCLUSION .......................................................................................... 24

iii

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)............................13

*Baggett v. Bullitt*, 377 U.S. 360 (1964) .......................................................8, 10

*Butcher v. Knudsen*, 38 F.4th 1163 (9th Cir. 2022) ................................4, 20, 21

*Cheek v. United States*, 498 U.S. 192 (1991) ..............................................10, 11

*Cochran v. U.S. Sec. & Exch. C'mm'n*, 20 F.4th 194 (5th Cir. 2021)...........................14

*Connally v. General Constr. Co.*, 269 U.S. 385 (1926) .......................................5

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010)........................................21

*Drake v. Honeywell, Inc.*, 797 F.2d 603 (8th Cir. 1986)................................7, 12

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ..............................1, 4, 5, 8

*INS v. Chadha*, 462 U.S. 919 (1983) ..........................................................13

*Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446 (5th Cir. 2022) ...............................13, 14

*Johnson v. United States*, 576 U.S. 591 (2015)...........................................4, 5

*Kolender v. Lawson*, 461 U.S. 352 (1983) .................................................5, 10

*Mistretta v. United States*, 488 U.S. 361 (1989) ...........................................13

*Skilling v. United States*, 561 U.S. 358, (2010)........................................21, 22

*Smith v. Goguen*, 415 U.S. 566 (1974) ......................................................23

*Speiser v. Randall*, 357 U.S. 513 (1958) .....................................................8

*United States v. Bishop*, 412 U.S. 346 (1973) ..............................................11

*United States v. Mincoff*, 574 F.3d 1186 (9th Cir. 2009) .....................................5

*United States v. Spectrum Brands, Inc.*,

    218 F. Supp. 3d 794 (W.D. Wis. 2016).....................................9, 10, 17

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982).................21

*Whitman v. Am. Trucking Associations*, 531 U.S. 457 (2001). .................................12, 14

**<u>Statutes</u>**

15 U.S.C. § 2064(b)(4) ..................................................................................... passim

15 U.S.C. § 2068(a) .............................................................................................. 1, 6

15 U.S.C. § 2070 ..................................................................................................... 10

15 U.S.C. § 2070(a) ................................................................................................... 6

16 C.F.R. § 1115.1 ............................................................................................... 7, 12

16 C.F.R. § 1115.14 ....................................................................................... passim

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.**

## **INTRODUCTION**

Defendants are charged in Count 2 with knowingly and willfully failing to report a suspected defective product in violation of 15 U.S.C. §§ 2064(b)(4) and 2068(a)(1), (4)—provisions of the Consumer Product Safety Act (CPSA). Defendants are charged in Count 1 with conspiracy to violate these same statutes. Below, the defense argues that these statutes are unconstitutional both facially and as applied to the defendants. Both counts must therefore be dismissed.

Section 2064(b)(4) requires that "[e]very manufacturer of a consumer product . . . distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product . . . creates an unreasonable risk of serious injury or death, shall immediately inform the [Consumer Protection Safety Commission (CPSC)] of such failure to comply, of such defect, or of such risk . . . ." Section 2068(a)(1) and (4) of Title 15 make it unlawful for a product distributor or manufacturer to knowingly and willfully fail to provide this information to the CPSC.

These provisions of the CPSA are unconstitutional on their face because (1) they invite arbitrary enforcement and (2) are too vague to provide adequate notice to the public. In particular, the language of section 2064(b)(4) sweeps so broadly, and its terms are so ill-defined, that the ordinary citizen is not given adequate notice as to the conduct proscribed. Moreover, the statute invites arbitrary enforcement because it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). Each, separately, renders the statutory scheme unconstitutional on its face.

1

Further, these provisions are unconstitutional as applied to the defendants because (1) they are being arbitrarily enforced against the defendants and (2) failed to provide them with adequate notice that their conduct—which falls outside of any "core" prohibition of the CPSA—was proscribed.

The lack of clarity in the statute is evidenced by the existence of interpretive Federal Regulations promulgated by the CPSC—16 C.F.R. § 1115.14(d) and (e)—which attempt to define such terms as "immediately", but which are themselves convoluted and unclear. Even if these regulations were precise, they could not be used to narrow the scope of section 2064(b)(4) and render it constitutional without violating the non-delegation doctrine, according to which only Congress can legislate. The result is unfettered discretion for prosecutors to pick and choose to pursue manufacturers and distributors on a whim.

Indeed, the case at bar—the first criminal prosecution of sections 2064(b)(4) and 2068(a)(4) since the CPSA was enacted in 1972—is the paradigm of arbitrary enforcement. Numerous other manufacturers and distributers—many repeat offenders, many with far longer delays in reporting, and many having caused more grievous damage than those alleged against the defendants—have willfully and knowingly failed to "immediately" file a defective product report with the CPSC, but were never criminally prosecuted. It is clear, therefore, that the statute not only invites arbitrary enforcement, it is in fact being arbitrarily enforced against the defendants. The statute is thus both unconstitutional on its face and unconstitutional as applied to the defendants.

Count 1, charging conspiracy to violate these provisions of the CPSA, and Count 2 charging the substantive violation of the statutes, must therefore be dismissed.

//

//

//

2

# II.

## STATEMENT OF FACTS

In 2010, the defendants entered into a joint venture with Gree Zhuhai, one of the world's largest manufacturers of home appliances. Gree Zhuhai held a 51% share of the joint venture, called "Gree USA." Gree USA's operations began in 2011.

On or about July 26, 2012, the defendants viewed a video posted on *YouTube* of a Gree Zhuhai-manufactured dehumidifier that was on fire. Alarmed by what they saw, the defendants sent an urgent email to Gree Zhuhai's officials that included a link to the video. This email and video triggered an inquiry by the defendants and Gree Zhuhai into whether Gree Zhuhai's dehumidifiers were defective.

For the next six months, Gree Zhuhai represented that its engineering staff examined the dehumidifiers but could find nothing defective. The defendants, who had no engineering experience or engineers on staff, questioned Gree Zhuhai's findings. The defendants also conducted their own rudimentary experiment by lighting the exterior casing of a dehumidifier on fire and sent the results to Gree Zhuhai. Later, the defendants sent a dehumidifier unit to a forensic lab and, again, sent the results to Gree Zhuhai. Despite the defendants' efforts and skepticism about the product, Gree Zhuhai, the majority shareholder in the joint venture, insisted that the dehumidifiers were defect-free and refused to file a report with the CPSC.

All along, Gree Zhuhai repeatedly stated that it needed additional time to conduct its investigation. Finally, in or around January 2013, Gree Zhuhai agreed that the dehumidifiers should be reported to the CPSC. Law firms were retained, and reports were filed with the CPSC in March and June 2013. Following the notice, Gree Zhuhai recalled the dehumidifiers sold through Gree USA, as well as ten other dehumidifiers sold through seven other distributors as far back as 2005.

On March 28, 2019, the defendants were indicted and charged in Count 1 with a conspiracy under 18 U.S.C. § 371 that alleged a violation of 15 U.S.C. § 2068(a)(4), failure to timely report a defective product to the CPSC, and, in Count 2 with a substantive violation of 15 U.S.C. § 2068(a)(4). *The government has not criminally charged any of the other distributors of Gree Zhuhai products that were recalled even though*—unlike the defendants—*none ever reported a defective product to the CPSC.*

## III.

## ARGUMENT

**TITLE 15, UNITED STATES CODE SECTION 2064(b)(4) IS UNCONSTITUTIONAL BECAUSE ITS TERMS ARE TOO IMPRECISE TO GIVE NOTICE OF THE PROSCRIBED CONDUCT AND BECAUSE THE STATUTE INVITES ARBITRARY ENFORCEMENT.**

### A. A statute so vague that it invites arbitrary enforcement or fails to adequately warn the public of the prohibited conduct is unconstitutional in all its applications.

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." Due process entails fair notice and an opportunity to be heard. *Johnson v. United States*, 576 U.S. 591, 596 (2015). Fair notice requires that the public be adequately advised "of conduct that is forbidden or required." *Butcher v. Knudsen*, 38 F.4th 1163, 1168 (9th Cir. 2022). "Laws that are impermissibly vague offend due process because they contravene two bedrock constitutional norms." *Id*. "The first is that "regulated parties should know what is required of them so they may act accordingly." *Id*. The second is that laws must provide proper "precision and guidance" to ensure that "those enforcing the law do not act in an arbitrary or discriminatory way." *Id*., *citing Grayned*, 408 U.S. at 108–09; *Johnson*, *supra*, at 591 (due process violated by the deprivation of

4

liberty or property under a criminal law "so standardless that it invites arbitrary enforcement"); *United States v. Mincoff*, 574 F.3d 1186, 1201 (9th Cir. 2009) (a statute is impermissibly vague if it "is so indefinite as to allow arbitrary and discriminatory enforcement'").

A law invites arbitrary enforcement where it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned, supra,* , 408 U.S. at 108–09 (1972) (footnote omitted); *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) (statute is impermissibly vague where it permits "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.") While "man is free to steer between lawful and unlawful conduct . . . uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Id.* at 109 (internal citation and quotation marks omitted). Such a statute is at odds with "ordinary notions of fair play and the settled rules of law," *Johnson*, *supra*, 576 U.S. at 595, *citing Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).

### B. The statutory framework of the CPSA and the CPSC's interpretation of the law.

#### 1. The relevant statutes of CPSA in the United States Code.

Title 15, United States Code Section 2064(b)(4) provides: "Every manufacturer of a consumer product . . . distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product . . . creates an unreasonable risk of serious injury or death, shall immediately inform the Commission of such failure to comply, of such defect, or of such risk, unless such manufacturer, distributor, or

retailer has actual knowledge that the Commission has been adequately informed of such defect, failure to comply, or such risk."

Title 15, United States Code Section 2068(a)(1) and (4) make it "unlawful for any person to . . . sell, offer for sale, manufacture for sale, distribute in commerce, or import into the United States any consumer product, or other product [and] . . . fail to furnish information required by section 2064(b) of this title."

Title 15, United States Code Section 2070(a), in turn, makes a violation of section 2068 punishable by imprisonment of up to five years and provides for a fine. Section 2070(b) extends liability for such a violation to "[a]ny individual director, officer, or agent of a corporation who knowingly and willfully authorizes, orders, or performs any of the acts or practices constituting in whole or in part a violation of section 2068 of this title[.]"

## 2.  The Code of Federal Regulations interpreting the CPSA.

The Code of Federal Regulations attempts to provide definitions to certain terms used in the CPSA which are otherwise unclear. For example, although the CPSA does not define the term "immediately" as used in § 2064(b), it is defined at 16 C.F.R. § 1115.14(d) and (e) as follows:

(d) **Time for investigation and evaluation**. A subject firm may conduct a reasonably expeditious investigation in order to evaluate the reportability of a death or grievous bodily injury or other information. This investigation and evaluation should not exceed 10 days unless a firm can demonstrate that a longer period is reasonable. The Commission will deem that, at the end of 10 days, a subject firm has received and considered all information which would have been available to it had a reasonable, expeditious, and diligent investigation been undertaken.

(e) **Time to report**. Immediately, that is, within 24 hours, after a subject firm has obtained information which reasonably supports the conclusion that its consumer product fails to comply with an applicable consumer product safety rule or voluntary consumer product safety standard, contains a defect which could create a substantial risk of

injury to the public, or creates an unreasonable risk of serious injury or death, the firm should report. (See § 1115.13.) If a firm elects to conduct an investigation in order to evaluate the existence of reportable information, the 24-hour period begins when the firm has information which reasonably supports the conclusion that its consumer product fails to comply with an applicable consumer product safety rule or voluntary consumer product safety standard upon which the Commission has relied under section 9, contains a defect which could create a substantial product hazard, or creates an unreasonable risk of serious injury or death. Thus, a firm could report to the Commission before the conclusion of a reasonably expeditious investigation and evaluation if the reportable information becomes known during the course of the investigation. In lieu of the investigation, the firm may report the information immediately.

Section 2064(b)(4) is thus so ill-defined and unclear on its face, that it must rely on the Code of Federal Regulations to provide crucial meaning to one of its key terms— "immediately"—and to account for practical realities like the opportunity to conduct an investigation before being required to report a possible defect. As set forth below, the C.F.R.'s were not written to supplement or narrow the scope of the statute, but rather to "set forth the . . . Commission's *interpretation* of the reporting requirements imposed on manufacturers [and] distributors . . . by 15 U.S.C. § 2064(b)." 16 C.F.R. § 1115.1 (emphasis added); *see also Drake v. Honeywell, Inc.*, 797 F.2d 603, 607 (8th Cir. 1986) ("The Commission's reporting rules are plainly interpretive rules"). Indeed, the very existence of these interpretive regulations which drastically alter the ordinary meaning of "immediately" concede serious problems with the CPSA's clarity.

//
//
//
//
//
//

**C. The statute is unconstitutional in all applications because it invites arbitrary enforcement and fails to give proper notice to the public as to what conduct is prohibited.**

**1.    The language of the statute is unconstitutionally vague and invites arbitrary enforcement.**

The provisions of the CPSA at issue here invite arbitrary enforcement. This problem is both created and compounded by the vague language of the statutes.

The Supreme Court has long recognized that ambiguous meanings cause citizens to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964), quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958); *see Grayned*, *supra*, 408 U.S. at 109. Under the CPSA, manufacturers and distributors must do exactly that.

A manufacturer or distributor attempting to comply with the statute's facial meaning would be required, for all practical intents and purposes, to report almost any malfunctioning product, or face possible criminal and civil prosecutions depending solely on law enforcement's subjective assessment and impression of the conduct. Every malfunctioning product *could* have a manufacturing defect; every malfunctioning product *might* have a design flaw. Virtually any mechanical or electrical product *can* be dangerous under the right conditions, even if there is no actual defect. This uncertainty can necessitate an investigation, as the CPSC recognizes in its interpretive regulations. *See* 16 C.F.R. § 1115.14(d).  Indeed, the consumer product industry assumes a certain percentage of products will be defective and need to be returned in the ordinary course of business. In purchase order contracts, retailers specify such percentages as part of their agreements with distributors. It is thus essentially impossible to avoid the ambit of the statute if one is in the business of manufacturing and/or distributing anything from toasters to industrial machinery. The statute therefore allows law enforcement to prosecute on a whim and with no guiding principle.

Moreover, confusion created by the statute is not remedied by the interpretive regulations written by the CPSC, which specify that "immediately" means "within 24 hours," unless an investigation is necessary, in which case the investigation should ordinarily be completed in 10 days, unless the investigation requires more time, at which point there is no guidance. See 16 C.F.R. § 1115.14(d) and (e). In promulgating these interpretive guidelines, the CPSC acknowledges, in effect, the vague language of the statute. If the CPSC cannot clearly define the word "immediately," then neither can the public. Consequently, the public is threatened with arbitrary enforcement of the statute.

Only one court has analyzed the constitutionality of the CPSA's reporting requirements but did so in a *civil* context. In *United States v. Spectrum Brands, Inc.*, 218 F. Supp. 3d 794 (W.D. Wis. 2016), the government brought a civil action against a coffeemaker manufacturer, Spectrum, for violating the CPSA, alleging that it failed to report a defect in the coffee carafe's handles that could create a substantial product hazard. Spectrum argued that the code's requirement that a manufacturer report a product that "could" create a "substantial product hazard" was too vague to give fair notice to the defendants. *Id*. at 809. The district court rejected the argument, stating:

> [T]he CPSA and interpretive regulations establish an enforceable standard for a "substantial product hazard"—defined as a "substantial risk of injury to the public." See 15 U.S.C. § 2064(a); 16 C.F.R. § 1115.12(g) (both listing as considerations the pattern of defect, the number of defective products distributed in commerce, the severity of the risk and "other considerations").[1]

The court concluded:

---

[1]    As argued below in Section (C)(3), the court's reliance on the C.F.R.'s to render the statute sufficiently precise violates the non-delegation doctrine according to which only Congress may legislate.

1
2

> A ready response to defendant's complaint that this guidance leaves it
> uncertain as to the scope of its reporting obligation is obvious: when in
> doubt, report.

3
4

*Id.* at 809-10.

This analysis is deeply flawed, in part because it fails to deal with exactly

5
6

the danger presented by an unacceptably vague statute—it forces the public to

7

"when in doubt: report" or, in the words of the Supreme Court, "'steer far wider of

8

the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly

9

marked." *Baggett*, *supra*, 377 U.S. at 372. "When in doubt, report" is not an

10

acceptable interpretation of the statute, any more than "when in doubt, pay more

taxes" would be an acceptable interpretation of the tax code.[2]

11
12

With no guiding principle, the statute is thus both vague and invites arbitrary

13

enforcement. As such it is unconstitutional on its face.

14
15

> ## 2. For the purposes of criminal enforcement, the statutes require even greater precision to give notice than does a civil statute.

16

"[W]here a statute imposes criminal penalties, the standard of certainty is

17

higher." *Kolender*, 461 U.S. at 358, fn. 8. In other words, in a criminal context,

18

statutory precision is even more crucial than in a civil context. In a criminal

19

prosecution of sections 2064(b)(4) and 2068(a), a defendant must not only violate

20

the statutes, he must do so *knowingly and willfully*. *See* 15 U.S.C. § 2070. In the

21

comparably complex tax laws, this requirement has been expressed in Ninth

22

Circuit Model Jury Instruction 9.42 as follows:

23
24
25

> In order to prove that the defendant acted "willfully," the government
> must prove beyond a reasonable doubt that the defendant knew federal
> tax law imposed a duty on [him] [her], and the defendant intentionally
> and voluntarily violated that duty.

26

---

27

[2]   It should also be noted that Spectrum did not argue that these CPSA

28

provisions threaten arbitrary enforcement—a claim the defendants make here.

The instruction derives from the Supreme Court's opinion in *Cheek v. United States*, 498 U.S. 192, 205 (1991), in which the Court stated that the high standard in tax cases is "because in 'our complex tax system, uncertainty often arises even among taxpayers who earnestly wish to follow the law,' and '[i]t is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care.' " *Id. citing United States v. Bishop*, 412 U.S. 346, 360-361 (1973).

The instruction is particularly apt in this case, where the CPSA is, we submit, unconstitutionally vague, and where the undisputed facts clearly show repeated and earnest attempts by the defendants to comply with the law. The total absence of any prior guidance in criminal enforcements renders the statute even more difficult to decipher and gives no notice to the public of conduct that will be *criminally prosecuted*. In an article published by The NYU School of Law Program on Corporate Compliance and Enforcement, the authors specifically commented on the criminal allegations against the Gree entities, writing:

> [B]ecause this is the first example of corporate criminal penalties under the CPSA for failure to report under Section 15, it remains unclear exactly where CPSC and DOJ would draw the line between seeking civil penalties for a knowing failure (i.e., under a "knew or should have known" standard) and seeking criminal penalties and asset forfeiture for a knowing and willful failure to report.[3]

Thus, not only does the statute provide inadequate notice to the public regarding a possible *civil* violation of the law, it gives no notice at all of what an intentional *criminal* violation of that law would entail.

---

[3]    *See* A Historic First in Consumer Product Safety Act Enforcement: Corporate Criminal Penalties for Late Reporting Under Section 15, available at https://wp.nyu.edu/compliance_enforcement/2021/11/17/a-historic-first-in-consumer-product-safety-act-enforcement-corporate-criminal-penalties-for-late-reporting-under-section-15/ (last visited January 27, 2023.)

### 3. The Code of Federal Regulations cannot be used to narrow the scope of the statute and render it sufficiently precise to survive a constitutional challenge.

Importantly, the *Spectrum* court failed to acknowledge that 16 C.F.R. § 1115.1 *et seq* are not regulations enacted by the CPSC as laws that can be enforced in a civil or criminal case. They are merely *interpretations* of the law. 16 C.F.R. § 1115.1 ("The purpose of this part 1115 is to set forth the . . . Commission's interpretation of the reporting requirements imposed on manufacturers [and] distributors . . . by 15 U.S.C. § 2064(b)"); *Drake*, *supra*, 797 F.2d at 607 ("An action based on a violation of an interpretive rule does not state a legal claim. Being in nature hortatory, rather than mandatory, interpretive rules never can be violated.") Thus, *Spectrum*'s conclusion that "[t]he CPSA and interpretive regulations establish [] enforceable standard[s]" condemns its own reasoning. While *Drake* stated that "a court should give great weight to an agency's interpretation . . . to determine the scope of the statute and whether it has been violated", in a criminal setting, this logic does not permit agency interpretations of a statute to render constitutional a statute that is unconstitutionally vague. Indeed, "[t]he idea that an agency can cure an unconstitutionally standardless delegation of power by declining to exercise some of that power seems [] internally contradictory. The very choice of which portion of the power to exercise—that is to say, the prescription of the standard that Congress had omitted—would itself be an exercise of the forbidden legislative authority." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 473 (2001). *Spectrum* thus essentially concedes that without the supplemental and interpretative federal regulations, the law—that is to say the United States Code provisions at issue—is too vague to survive scrutiny.

Using the C.F.R.s as they were by the *Spectrum* court, to narrow, expand, or otherwise modify the CPSA, violates the non-delegation doctrine according to which only Congress may legislate.

12

The non-delegation doctrine provides that Congress cannot delegate its legislative powers to other entities. *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935) ("Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested.") Government actions are "legislative" if they have "the purpose and effect of altering the legal rights, duties and relations of persons ... outside the legislative branch." *INS v. Chadha*, 462 U.S. 919, 952 (1983). Congress may grant regulatory power to another entity only if it provides an "intelligible principle" by which the recipient of the power can exercise it. *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 461 (5th Cir. 2022), quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989).

At issue in *Jarkesy*, *supra*, was the delegation by Congress to the SEC of the power, in the SEC's sole discretion, to determine whether to bring enforcement actions in Article III courts or within the agency. 34 F.4th at 459. The Fifth Circuit ruled that this power was not properly delegated to the agency because (1) a decision to assign certain actions to agency adjudication is a power that Congress uniquely possesses; and (2) Congress did not provide the SEC with an intelligible principle by which to exercise that power. *Id*. at 462.

A similar problem is presented here. First, the agency's interpretive regulations in 16 C.F.R § 1115 *et seq* are plainly an attempt by the agency to do more than merely interpret the statute. They seek to alter and define the statute's scope and meanings. As noted above, the requirement under 15 U.S.C. § 2064(b)(4) to "immediately inform the Commission" is vague and so draconian as to sweep in legal conduct—for it would be impossible not to violate the statute if "immediately" were to be interpreted literally,[4] and no manufacturer or distributor

---

[4]     Webster's Dictionary defines "immediately" as "without interval of time." https://www.merriam-webster.com/dictionary/immediately (last visited January 27, 2023).

could do business without being in violation of the law. In apparent recognition of this, the CPSC attempted to cure the statute's vagueness by "interpreting" the word "immediately" to mean multiple—also confusing—things, such as permitting a maximum 10-day investigatory period, except where a lengthier investigation is necessary. *See* 16 C.F.R. § 1115.14(d) and (e). Thus, the agency has effectively re-written the statute, a legislative action reserved exclusively to Congress.

But as one Court recently warned, if administrative agencies "are permitted gradually to extend their powers by encroachments—even petty encroachments—upon the fundamental right, privileges and immunities of the people, we shall in the end, while avoiding the fatal consequences of a supreme autocracy, become submerged by a multitude of minor invasions of personal rights, less destructive but no less violative of constitutional guaranties." *Cochran v. U.S. Sec. & Exch. C'mm'n*, 20 F.4th 194, 222 (5th Cir. 2021).

Even if the regulations at issue here could help narrow or modify the CPSA, Congress has not provided the CPSC with any "intelligible principle" allowing it to do so. *Jarkesy, supra,* 34 F.4th at 461. There simply is nothing in the CPSA or elsewhere to which the Commission could turn that allows it to modify and cure the vagueness of the provisions at issue here.

Thus, 16 C.F.R. § 1115.14(d) and (e) are either merely guiding principles with no binding legal significance, an illegal exercise of legislative power, or an exercise of power absent any intelligible principle from Congress. In any case, they cannot be used to rescue an unconstitutionally vague statute such as the CPSA provisions at issue here. *See Whitman*, *supra*, 531 U.S. at 473 (Agency cannot cure unlawful delegation of legislative power by adopting in its discretion a limiting construction of the statute).

For the reasons set forth above, the statute is thus both vague and invites arbitrary enforcement. As such it is unconstitutional on its face. Count 2, charging

14

a violation of the statute, and Count 1, charging conspiracy to violate the statute, must therefore be dismissed.

### D. The reporting statute is unconstitutional as applied to defendants.

Even if this Court finds the reporting statute is constitutional in all its applications, it is unconstitutional as applied to these defendants because it is being arbitrarily enforced against them and because it failed to give them notice that their conduct was proscribed.

### 1. The statute is being arbitrarily enforced against the defendants.

This case has all the hallmarks of arbitrary criminal enforcement of sections 2064(b)(4) and 2068(a). Indeed, it represents the first criminal prosecution for a violation of these provisions of the CPSA since the Act's promulgation in the 1970's.[5] While this is the first criminal prosecution of a failure to timely report, the defendants' case does not involve the longest delay in failing to file a report to the CPSC, the most egregious injuries, a repeat offender, or any other distinguishing fact.

Defendants' "Motion for Order for Authorizing Foreign Depositions" (ECF 56), referenced numerous cases in which delays in reporting were far longer than the instant matter, defective products caused more significant damages and injuries, or involved repeat offenders--but none of these matters were criminally prosecuted. Defendants have prepared a chart showing the names of statutory offenders after the defendants' alleged commission of the offense (i.e., after March

---

[5] *See* "Two Corporate Executives Indicted in First-Ever Criminal Prosecution for Failure to Report under Consumer Product Safety Act," U.S. DOJ Press Release, March 29, 2019, https://www.justice.gov/usao-cdca/pr/two-corporate-executives-indicted-first-ever-criminal-prosecution-failure-report-under. (last visited January 27, 2023).

2013), the nature of those matters and how they were resolved. (Ex. A.)[6] A review of the facts and circumstances of those prior cases provides an "apples to apples" comparison to the instant case.

■ *Length of Delay in Reporting*

Per the indictment, the defendants allegedly failed to report the defective dehumidifiers to the CPSC for roughly six months, from September 2012 to March 2013.[7] In contrast, there have been several civil enforcement actions in which companies delayed reporting for a far greater period:

| | | |
|---|---|---|
| 4/8/14 | Forman Mills | Delayed reporting defective children's wear for 2 ½ years |
| 6/6/14 | Cinmar | Delayed reporting defective ladders for 5 years |
| 7/3/14 | HMI Industries | Delayed reporting defective floor cleaners for over 2 years |
| 10/28/14 | Baja | delayed reporting defective minibikes and go-carts for 6 years |
| 4/29/15 | Black & Decker | Delayed reporting defective electric lawnmowers for several years |
| 9/8/16 | Goodman | Delayed reporting defective air conditioners and heaters for 2 years |

---

[6]   All of the information on Exhibit A has been drawn from publicly disclosed materials on CPSC's website, cpsc.gov.

[7]   In fact, based on the correspondence between the defendants and Gree Zhuhai, Gree Zhuhai agreed to jointly file a report with the CPSC in January 2013, but it took the retained attorneys several more weeks to actually file a notice with the CPSC. Thus, the period before the defendants and Gree Zhuhai actually agreed to report to the CPSC is only two months.

| 9/14/22 | Clawfoot Supply | Delayed reporting defective shower seat for 7 years |

(Ex. A.)  The government pursued all of these matters civilly.[8]

■ *Injuries and Damages Caused by a Defective Product*

We understand that Gree USA's sales of defective dehumidifiers caused primarily property damage.[9] In contrast, there are numerous prior failures to report matters in which defective products caused major property damage, death and/or serious bodily injuries:

| 1/30/13 | Whalen Manufacturing | Defective children's bed caused 22-month-old child's death |
| 3/11/13 | Kolecraft | Defective play yards caused 350 reports of incidents and 21 injuries to young children, including a concussion |
| 5/6/13 | Williams-Sonoma | Defective hammock caused 45 incidents and 12 injuries requiring medical attention for |

---

[8]    In *Spectrum*, 218 F. Supp. 3d 794, the defendant waited four years before filing a report with the CPSC but only faced civil prosecution.

[9]    Based on the discovery, it appears that Gree Zhuhai manufactured a defective dehumidifier that caused one fatality, but it is unclear whether the defendants are connected to that particular unit.  The defense has not been able to determine from the discovery whether the subject dehumidifier was a *Soleus* brand dehumidifier (distributed by Gree USA) or one of the other dehumidifiers that was subject to the recall. The CPSC's 2013 recall included sales of dehumidifiers under the brand names Danby, De'Longhi, Fedders, Fellini, Frigidaire, Gree, Kenmore, Norpole, Premiere, Seabreeze, SoleusAir—Gree USA only sold SoleusAir and Kenmore dehumidifiers and not the other named brands. See https://www.cpsc.gov/Recalls/2013/gree-recalls-12-brands-of-dehumidifiers. Besides Gree USA, numerous other distributors sold recalled dehumidifiers, including Airwell, CAN, Danby, De'Longhi, Frigidaire, IRP, and Sunrise. *Id*. Thus, the defense has been unable to ascertain whether Gree USA or some other distributor sold the defective dehumidifier that caused the fire and the attendant fatality.

17

| | | | |
|---|---|---|---|
| | | | lacerations, bruising, neck and back pain, including a fractured rib |
| 5/18/14 | Electrolux | | Defective ovens caused burns and fire hazards |
| 6/6/14 | Cinmar | | Defective ladders caused unknown number of injuries, including one requiring surgery and another requiring hospitalization |
| 7/3/14 | HMI Industries | | Defective floor cleaners caused 120 reports of overheating and property damage, and 2 injuries |
| 10/28/14 | Baja | | Defective minibikes and go-carts caused 4 fires and burn injuries, including a serious burn injury to a child |
| 1/5/15 | Gerber Legendary Blades | | Defective axe caused unknown number of lacerations, including some requiring surgery |
| 9/10/15 | phile&teds | | Defective highchairs caused children to fall or get fingers crushed between mechanisms, including 2 incidents where child's fingers were amputated |
| 12/26/15 | Philips Lighting | | defective fluorescent lamps caused 10 lacerations and 7 reports of property damage |
| 6/1/16 | Teavana | | 6 reports of shattering teacups caused cuts to fingers or legs, and burns from hot liquid |
| 6/7/16 | Sunbeam | | Defective coffeemakers caused 32 burn injuries |
| 9/8/16 | Goodman | | Defective PTACs caused unknown number of fires, including 3 hotel fires |
| 11/14/16 | PetSmart | | Defective fishbowls caused serious injuries, including deep lacerations requiring stitches and severed tendons requiring surgery |
| 2/21/17 | Keurig Green Mountain | | Defective coffeemakers caused 100 burn-related injuries to faces, hands, and bodies, including second and third degree burns |
| 2/11/21 | Cybex | | Defective exercise equipment caused 112 incidents of serious injuries, including vision loss, paralysis, and spinal fractures |
| 7/7/22 | Vornado Air | | Defective space heaters causing multiple fires, including one that caused the death of a 90 year old man |

| 1/5/23 | Peloton | Defective treadmill causing people, pets and/or objects being pulled under the treadmills, including the death of a child and 13 injuries, including broken bones, laceration, abrasions and friction burns |
|--------|---------|---|

(Ex. A.)  Again, the government handled all of these matters civilly.

■ *Repeat Offenders*

This case constitutes defendants' first instance of a failure to report violation. In contrast, there are several prior civil enforcement cases involving repeat offenders:

| 6/21/14 | Ross Stores | New Failure to report case while under investigation for prior failure to report case |
|---------|-------------|---|
| 5/6/13 & 10/30/14 | Williams Sonoma | Two failure to report cases in 17 months |
| 4/29/15 | Black & Decker | Five prior failure to report cases |
| 7/7/22 | Vornado Air | Prior failure to report case |

(Ex. A.)  All these matters were handled civilly.

■ *Prior Failure to Report Cases Involving Dehumidifiers*

In 2015, LG Electronics ("LG") was civilly charged with failing to report its defective dehumidifier. In that case, LG's dehumidifiers caused over 100 fires and resulted in great property damage. LG knew about the defective product but waited approximately 9 years before reporting the defects to the CPSC. According to CPSC's news release, LG's dehumidifiers "overheated, smoked, melted or caught fire, posing fire and burn hazards to consumers… Starting in 2003, LG received dozens of reports of the dehumidifiers catching fire and causing extensive property damage to consumers' homes. By the time the dehumidifiers were recalled in 2012, LG was aware of 107 reports

of incidents, with more than $7 million in property damage and three reports of smoke inhalation." [10] The LG Electronics matter was also handled civilly.

In 2010, LG recalled a different defective dehumidifier. [11] In other words, at the same time LG was recalling one model of defective dehumidifiers, it was also selling—and failing to report—a different model of defective dehumidifiers.

In yet another matter with a connection to the instant case, in 2016, Best Buy agreed to pay a civil fine of $3.8 million for knowingly distributing and selling 16 items (about 600 units) that had already been recalled, including defective dehumidifiers manufactured by Gree Zhuhai, over a five-year period. [12] It too was handled civilly.

Comparing the conduct above to the conduct alleged against defendants, and bearing in mind that *not one of those cases was criminally prosecuted*, there is only one conclusion: The criminal prosecution of sections 2064(b)(4) and 2068(a) against the defendants in this case is arbitrary.

The CPSA's lack of "precision and guidance" to ensure that prosecutors "do not act in an arbitrary or discriminatory way" has permitted the government to charge this case on a whim. *See Butcher*, *supra*, 38 F.4th at 1168. This is not mere "speculative danger of arbitrary enforcement" (*see Vill. of Hoffman Ests. v.*

---

[10] *See* https://www.cpsc.gov/Newsroom/News-Releases/2015/Appliance-Manufacturer-LG-Agrees-to-Pay-Maximum-1825-Million-Civil-Penalty-for-Failure-to-Report-Defective-Dehumidifiers (last visited January 27, 2023).

[11] *See* https://www.cpsc.gov/Recalls/2010/additional-reports-of-fires-and-low-consumer-response-rate-prompt-reannouncement-of (last visited January 27, 2023).

[12] *See* https://www.cpsc.gov/Best-Buy-Agrees-to-Pay-38-million-civil-penalty (last visited January 27, 2023).

*Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 503 (1982)), it is arbitrary enforcement of the most obvious kind.

In sum, sections 2064(b)(4) and 2068(a) not only invite arbitrary enforcement, but they are also indeed being arbitrarily enforced in this case. These provisions of the CPSA are therefore unconstitutional as applied to the defendants. *See Butcher*, *supra*, 38 F.4th at 1168.

Count 2, charging a violation of the statute, and Count 1, charging conspiracy to violate the statute, must therefore be dismissed.

### 2. The CPSA is indecipherably vague as applied to the defendants and their conduct does not fall within its core prohibition.

"A [party] making an as-applied [vagueness] challenge must show that the statute in question provided insufficient notice that his or her behavior at issue was prohibited." *Dickerson v. Napolitano*, 604 F.3d 732, 745–46 (2d Cir. 2010). "The standard is an objective one. Courts ask whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed, not whether a particular [party] actually received a warning that alerted him or her to the danger of being held to account for the behavior in question" *Id*. (Internal citations and quotation marks omitted.)

The terms of the CPSA provisions analyzed here do not offer sufficient clarity to product distributors situated as were the defendants in this case. Moreover, to the extent these provisions have "core" prohibition, the defendants' conduct does not fall within it, as demonstrated by the absence of any prior criminal prosecutions in more egregious cases. *See Skilling v. United States*, 561 U.S. 358, (2010) (prior enforcements are appropriate sources of guidance for contours of statute). In *Skilling*, the Supreme Court found that 18 U.S.C § 1346, which codifies the offense of honest-services fraud, is unconstitutionally vague when applied to fraud schemes other than bribery and kickbacks. In its analysis,

21

the Court considered "case law [and] federal statutes proscribing—and defining—similar crimes." *Id*. at 412. *Skilling* thus illustrates the contours of what material outside of the statute itself—existing case law, similar statutory prohibitions—provide notice to the public.

As the *Skilling* Court indicated, a reasonable person would look to prior enforcements to make a determination about what amounts to a reasonable "investigation" (16 C.F.R. § 1115.14(d)), give precise meaning to the "time to report" (*id*.) and, even more fundamentally, to determine what constitutes "information which reasonably supports the conclusion" that a product is defective and/or creates "an unreasonable risk of serious injury or death." (18 U.S.C. § 2064(b)(4)). Yet there is a stark absence of prior case law dealing with the statutory prohibitions of section sections 2064(b)(4) and 2068(a), and a total lack of any prior case law dealing with a criminal violation of these provisions. Consequently, any distributor in the position of either Mr. Chu or Mr. Loh who was to examine the history of enforcement of the statute would find it virtually impossible to give full meaning to the statutory prohibitions. Precisely at issue in this case is the alleged length of delay in reporting a defective product to the CPSC, and the knowledge required to trigger the reporting obligation. As the government asserted in its opposition to defendants' motion for foreign depositions:

> [T]he indictment alleges that Defendants Loh and Chu participated in a wide-ranging conspiracy with themselves, Jimmy Loh, and others from the Gree Companies to delay reporting and recalling their defective and dangerous dehumidifiers.

(Doc. 66 at 25:15-18.)[13] Thus, one of the issues in this case rests on the clarity of the CPSA's prohibitions. Specifically, determinations must be made about whether

---

[13] One of the exhibits to the government's opposition brief contained a transcript of a meeting between the defendants and Gree Zhuhai executives

(1) the scope and length of the delay could properly be attributed to an investigation; (2) the threat to consumers represented an unreasonable risk of serious injury or death; and (3) defendants had sufficient knowledge of a defect to reasonably support that conclusion.

These questions were essentially impossible for the defendants to answer in the absence of any prior criminal prosecutions to clarify the contours of the CPSA, and because of the vague language of the statutes themselves—so vague in fact that the *Spectrum* court had had to rely on "interpretive" regulations promulgated by the CPSC to give the actual legislation itself any semblance of coherence (violating, as described above, the non-delegation doctrine). That flawed analysis is even less compelling in the criminal context, where "the [required] standard of certainty is higher" than in a civil context. *See Kolender*, 461 U.S. at 358, fn. 8 (1983). Indeed, not only did the statute provide inadequate notice to defendants regarding a possible civil violation of the law, it has no notice at all of what an intentional violation of that law would entail.

In sum, the vague terms of sections 2064(b)(4) and 2068(a) result in a statutory framework that "simply has no core" (*see Smith v. Goguen*, 415 U.S. 566, 578 (1974)) and is therefore facially invalid; but even if such a core exists, the defendants' alleged conduct does not fall within it. The statute is therefore unconstitutional as applied to defendants.

//

//

//

//

//

//

---

and engineers in September 2013. (ECF 66-4.) During this meeting, the defendants pressed to file a joint report with the CPSC. *Id*. at 9-11.

23

# IV.

# CONCLUSION

For the foregoing reasons, 15 U.S.C. § 2064(b)(4) is unconstitutional on its face or, at minimum, as applied to the defendants. In either case, this Court should dismiss Counts One and Two of the indictment.

Dated: January 30, 2023                    Respectfully submitted,


/s/
STEVEN BRODY
Attorney for Simon Chu


/s/
RICHARD M. STEINGARD
Attorney for Charley Loh