E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOSEPH O. JOHNS (CA Bar 144524)
Senior Trial Attorney
Environmental Crimes and Consumer Protection Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4536/894-2484
    E-mail: Joseph.Johns@usdoj.gov
AMANDA N. LISKAMM
Director, Consumer Protection Branch
SPEARE I. HODGES
NATALIE N. SANDERS
STEPHEN J. GRIPKEY
Trial Attorneys
    450 5th Street NW, Suite 6400 South
    Washington, DC 20001
    Telephone: (202) 532-4176
    E-mail: Speare.I.Hodges@usdoj.gov
          Natalie.N.Sanders@usdoj.gov
          Stephen.Gripkey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>SIMON CHU and<br>CHARLEY LOH,<br><br>        Defendants. | No. CR 19-193-DSF<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS 1 AND 2 ON CONSTITUTIONAL GROUNDS**<br><br>Motion Hearing Date:<br>**July 24, 2023**<br><br>Hon. Dale S. Fischer |

1    Plaintiff, United States of America, by and through its counsel of record, Trial

2    Attorneys Speare I. Hodges, Natalie N. Sanders, and Stephen J. Gripkey of the U.S.

3    Department of Justice's Consumer Protection Branch, and Senior Trial Attorney Joseph

4    O. Johns, hereby files its opposition to Defendants' Motion to Dismiss Counts 1 and 2 on

5    Constitutional Grounds in the above-captioned matter. The Government's Opposition is

6    based upon the attached memorandum of points and authorities, the files and records in

7    this case, and such further evidence and argument as the Court may permit.

8

9    Dated: June 26, 2023                              Respectfully submitted,

10

11                                    _____/s/_____

12                                    SPEARE I. HODGES
                                      NATALIE N. SANDERS
13                                    STEPHEN J. GRIPKEY
                                      Trial Attorneys
14

15                                    _____/s/_____

16                                    JOSEPH O. JOHNS
                                      Senior Trial Attorney
17
                                      Attorneys for Plaintiff
18                                    UNITED STATES OF AMERICA

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ........................................................................................ 1

II. FACTUAL AND LEGAL BACKGROUND .......................................... 1

   A. LEGAL BACKGROUND ............................................................. 1

   B. BRIEF FACTUAL SUMMARY ................................................. 4

III. ARGUMENT ............................................................................................. 7

   A. The CPSA provides adequate notice of what it proscribes. .......... 8

      1. Defendants Chu and Loh plainly had notice their conduct was criminal. ......................................................... 8

      2. Defendants may not mount a facial attack, but even if they could, the statute is clear on its face. ................................ 12

   B. The CPSA provisions do not invite arbitrary enforcement. ........ 19

IV. CONCLUSION ........................................................................................ 22

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Anonymous Hosp. v. A.K.*, 920 N.E.2d 704 (Ind. Ct. App. 2010) ...................................17

4

*Becker v. Lockhart*, 971 F.2d 172 (8th Cir. 1992) ....................................................16

5

*Beckles v. United States*, 580 U.S. 256 (2017) ..........................................................15

6

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ..........................................................12

7

*Bryan v. United States*, 524 U.S. 184 (1998)......................................................11, 17

8

*C.S. v. State*, 8 N.E.3d 668 (Ind. 2014)....................................................................16

9

*California Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560 (9th Cir. 2018) ...........21

10

*Colautti v. Franklin*, 439 U.S. 379 (1979) ..............................................................13

11

*Dubin v. United States*, No. 22-10, 2023 WL 3872518 (U.S. June 8, 2023) .................13

12

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006)..........................................................19

13

*Garcia v. City of Los Angeles*, 611 F. Supp. 3d 918 (C.D. Cal. 2020).....................17, 21

14

*Gonzales v Carhart*, 550 U.S. 124,149 (2007) ........................................................18

15

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ....................................................13

16

*Hess v. Bd. of Parole & Post-Prison Supervision*, 514 F.3d 909 (9th Cir. 2008).....15, 21

17

*Hill v. Colorado,* 530 U.S. 703 (2000) ....................................................................19

18

*Johnson v. United States*, 576 U.S. 591 (2015) ........................................................15

19

*Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019) ....................................................12, 19

20

*Knox v. Brnovich*, 907 F.3d 1167 (9th Cir. 2018) ....................................................13

21

*Kolender v. Lawson*, 461 U.S. 352 (1983)................................................................19

22

*Lambert v. California*, 355 U.S. 225 (1957).............................................................7

23

*Maynard v. Cartwright*, 486 U.S. 356, (1988) ........................................................12

24
25

*MJC America Ltd., et al. v. Gree Electric Appliances Inc. of Zhuhai, et al.*, No. 2:13-cv-04264-SJO-CW (C.D. Cal. 2015) ..............................................................6

26

*Parker v. Levy*, 417 U.S. 733 (1974) ......................................................................7

27

*People v. Moore*, NO. E042674, 2008 WL 2691055 (Cal. Ct. App. July 10, 2008).......17

28

*Rider v. State*, 518 P.3d 108 (Nev. App. 2022) ........................................................17

*Rodriguez v. State*, 47 S.W.3d 86 (Tex. App. 2001) ........................................16

*S.E.C. v. Gemstar-TV Guide Int'l, Inc.*, 401 F.3d 1031 (9th Cir. 2005) ..........................19

*Schwartzmiller v. Gardner*, 752 F.2d 1341 (9th Cir. 1984) ................................7

*Skilling v. United States*, 561 U.S. 358 (2010) ..................................13

*State v. Sherman*, 653 P.2d 612 (Wash. 1982) ........................................16

*State v. White*, 545 N.W.2d 552 (Iowa 1996) ........................................16

*United States v. Adv. Mach. Co.*, 547 F. Supp. 1085 (D. Minn. 1982) ....................3, 16

*United States v. Awand*, 467 Fed. App'x 609 (9th Cir. 2012) ........................................20

*United States v. Broncheau*, 597 F.2d 1260 (9th Cir. 1979) ........................................12

*United States v. Chavez*, 29 F.4th 1223 (10th Cir. 2022) ..........................6

*United States v. Davis*, 583 F.2d 190 (5th Cir. 1978)........................................18

*United States v. Harris*, 705 F.3d 929 (9th Cir. 2013) ........................8

*United States v. Hudson*, 986 F.3d 1206 (9th Cir. 2021)........................................13, 19

*United States v. Jae Gab Kim*, 449 F.3d 933 (9th Cir. 2006)........................................20

*United States v. JDT*, 762 F.3d 984 (9th Cir. 2014) ........................................20

*United States v. Kilbride*, 584 F.3d 1240 (9th Cir. 2009)........................................8, 10, 11

*United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921)........................................19

*United States v. Matus-Leva*, 311 F.3d 1214 (9th Cir. 2002)........................................7

*United States v. Melgar-Diaz*, 2 F.4th 1263 (9th Cir. 2021) ........................................19

*United States v. Mirama Enterprises, Inc.*, 185 F. Supp. 2d 1148 (S.D. Cal. 2002).........3

*United States v. Petrillo,* 332 U.S. 1 (1947) ........................................20

*United States v. Purdy*, 264 F.3d 809 (9th Cir. 2001). ........................................11, 12

*United States v. Singh*, 979 F.3d 697 (9th Cir. 2020)........................................17

*United States v. Spectrum Brands, Inc.,* 218 F. Supp. 3d 794 (W.D. Wis. 2016).....14, 15

*United States v. W.R. Grace*, 504 F.3d 745, 755 (9th Cir. 2007) ....................................15

*United States v. Williams*, 553 U.S. 285 (2008) ........................................13

*United States v. Zhi Yong Guo*, 634 F.3d 1119 (9th Cir. 2011) ........................................7, 21, 22

*Vill. Of Hoffman Ests. V. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982)....12, 18, 21

*Wayte v. United States*, 470 U.S. 598 (1985) ..................................................20

**STATUTES**

15 U.S.C. § 1611 ..................................................................................12

15 U.S.C. § 1681 ..................................................................................11

15 U.S.C. § 2051 ...............................................................................1, 2

15 U.S.C. § 2052 .....................................................................................2

15 U.S.C. § 2053 .....................................................................................2

15 U.S.C. § 2056 .....................................................................................2

15 U.S.C. § 2064 ............................................................................passim

15 U.S.C. § 2068 ............................................................................passim

15 U.S.C. § 2069 ..................................................................................17

15 U.S.C. § 2070 ............................................................................passim

15 U.S.C. § 2076 ...............................................................................2, 3

18 U.S.C. § 3571 .....................................................................................4

Pub. L. 110-314, 122 Stat. 3016 (2008)................................................4

Pub. L. 92-573, 86 Stat. 1207 (1972)...........................................1, 3, 4

**REGULATIONS**

16 C.F.R. § 1115 ...............................................................15, 18, 20, 21

16 C.F.R. § 1115.14 ..........................................................................4, 21

**SENATE REPORTS**

S. Rep. No. 110-265, 110th Cong, 2d Sess. 18 (2007)........................4

S. Rep. No. 94-251, 94th Cong., 2d Sess. 2 (1975)............................3

**FEDERAL REGISTER**

43 Fed. Reg. 34,988 (Aug. 7, 1978)...............................3, 15, 18, 22

**DICTIONARIES**

Webster's New World Dictionary of the American Language, College Edition
(1968)................................................................................................16

Webster's Third New International Dictionary (1976) ......................16

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Defendants Charley Loh and Simon Chu were indicted for, among other things, knowingly and willfully failing to furnish information about dehumidifiers they knew could overheat and spontaneously catch fire. Rather than report, Defendants continued their roles as corporate officers selling thousands of these dehumidifiers—even after they learned they could ignite. Now, Defendants seek to dismiss two indictment counts related to this conduct by attacking the vital consumer protection law at the center of the indictment, erroneously asking this Court to dismiss charges as unconstitutionally vague and inviting arbitrary enforcement. Specifically, Defendants seek the dismissal of Count 1, which alleges a conspiracy in violation of 18 U.S.C. § 371, and Count 2, which alleges violations of the Consumer Product Safety Act's reporting obligations, 15 U.S.C. §§ 2068(a)(4), 2070. Ultimately, the Consumer Product Safety Act itself, and not the Title 18 statutes, is the focus of Defendants' challenge.

Defendants' arguments are without merit. The evidence shows Defendants not only understood the law—they deliberately chose to ignore it. Further, Defendants' egregious conduct falls within the heartland of what is prohibited by that statute. Defendants' motion to dismiss should be denied.

## II.   FACTUAL AND LEGAL BACKGROUND

### A. LEGAL BACKGROUND

Congress enacted the Consumer Product Safety Act ("CPSA") in 1972, after finding that "an unacceptable number of consumer products which present unreasonable risks of injury are distributed in commerce." 15 U.S.C. § 2051(a)(1); *see* Pub. L. 92-573, 86 Stat. 1207 (1972), codified at 15 U.S.C § 2051 *et seq*. The public, Congress explained, cannot adequately safeguard itself against the "complexities of consumer products" and must be "protected against unreasonable risks of injury associated with consumer products." 15 U.S.C. § 2051 (a)(2)-(3). To that end, the CPSA created the Consumer Product Safety

1

Commission ("CPSC" or the "Commission") as an independent regulatory agency, that Congress tasked with developing uniform safety standards, rulemaking that would protect the public from dangerous consumer products, and promoting research and investigation into the causes of product-related deaths, illnesses and injuries. *See, e.g.*, *id.* §§ 2051, 2053, 2056, 2064, 2068, 2070, 2076.

As relevant here, the CPSA imposes an affirmative product safety reporting requirement on importers, distributors, and retailers of consumer products to immediately notify the Commission upon obtaining certain information. Specifically, the CPSA requires:

> Every manufacturer[1] of a consumer product . . . distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product— […]
>
> > (3) contains a defect which could create a substantial product hazard described in subsection (a)(2) [*i.e.*, "creates a substantial risk to the public"]; or
> >
> > (4) creates an unreasonable risk of serious injury or death,
>
> shall immediately inform the Commission of such failure . . . of such defect, or of such risk, unless such manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect . . . or such risk.

*Id.* § 2064(b)(3)-(4). Thus, as a statute, the CPSA requires those in Defendants' shoes to immediately report to the Commission any failure, defect, or risk that could create either (1) a substantial product hazard or (2) an unreasonable risk of serious injury or death.

---

[1] As relevant here, a "manufacturer" is defined to include "any person who manufactures *or imports* a consumer product." 15 U.S.C. § 2052(11) (emphasis added). A "distributor" means "a person to whom a consumer product is delivered or sold for purposes of distribution in commerce" and excludes "manufacturer or retailer." *Id.* § 2052(8).

As another district court in this circuit has explained, "[t]his reporting requirement was imposed upon consumer product manufacturers to protect the public health and safety—the sooner the Commission knows of a potential problem, the sooner it can investigate and take necessary action." *United States v. Mirama Enterprises, Inc*., 185 F. Supp. 2d 1148, 1158 (S.D. Cal. 2002). By "enacting 15 U.S.C. § 2064(b), Congress[] intended to increase the likelihood that a substantial product hazard will come to the attention of the Commission in a timely fashion so that it could act swiftly to protect the consuming public." *United States v. Adv. Mach. Co*., 547 F. Supp. 1085, 1090 (D. Minn. 1982) (citing S. Rep. No. 94-251, 94th Cong., 2d Sess. 2 (1975)).

As enacted in 1972, the CPSA originally imposed only civil penalties for knowing violations of the reporting requirement, and it imposed criminal penalties for knowing and willful violations that occurred only after the manufacturer had already "received notice of noncompliance from the Commission." *See* Pub. L. 92-573, §§ 20, 21.

Six years after the CPSA became law—and after public hearings affording the public an opportunity to comment on its proposed interpretation—the Commission issued an interpretive regulation, promulgated through formal notice and comment procedures, that set forth its interpretation of the CPSA's reporting requirement. *See* 43 Fed. Reg. 34,988 (Aug. 7, 1978). That regulation was intended to "clarify subject firms' reporting obligations under section 15(b) of the CPSA and to inform members of the public of the possible remedies and sanctions available." *Id.* at 34,988.[2] The regulation[3] instructs that an importer or distributor's obligation to report arises upon receipt of "first information" that "reasonably supports" a product contains a defect that "could create a substantial risk of injury to the public, or creates an unreasonable risk of serious injury or death." 16 C.F.R.

---

[2] The interpretive rule was issued in part pursuant to the CPSC's authority to "by rule require any manufacturer of consumer products to provide to the Commission such performance and technical data related to performance and safety as may be required to carry out the purposes of this chapter." 15 U.S.C. § 2076(e); *see also* 43 Fed. Reg. at 34,998.

[3] The general reporting obligation is known as Section 15(b) of the CPSA, which ultimately codified as 15 U.S.C. § 2064(b).

§ 1115.14(c), (e). A manufacturer is required to report "immediately," meaning "within 24 hours." *Id.* § 1115.14(e). Manufacturers are advised that they "should not await complete or accurate risk estimates before reporting." *Id.* § 1115.14(c). And, while a manufacturer may investigate to determine whether the information is reportable, the investigation should not take more than 10 days unless it can demonstrate that additional time is reasonable. *Id.* § 1115.14(d).

In 2008, almost forty years later, Congress amended the CPSA in a push to "reauthorize and modernize" the Commission. *See* Pub. L. 110-314, 122 Stat. 3016 (2008). As relevant here, Congress *intentionally* provided the Commission with significant new regulatory and enforcement tools, including amending the CPSA's criminal penalty authority to remove the "notice of noncompliance" requirement. *Compare* Pub. L. 92-573 § 21 *with* 15 U.S.C. § 2070(b). It further increased the criminal penalty to five years and a fine of up to $250,000 or more for knowing *and willful* violations. *See* 15 U.S.C. § 2070; 18 U.S.C. § 3571. This amendment to the CPSA and the legislative history makes clear that the "notice of noncompliance" requirement "pose[d] a substantial hurdle" that rendered the Commission's criminal penalty authority "virtually unusable," allowing "bad actor[s] [to] intentionally violate the CPSA without fear of criminal prosecution." S. Rep. No. 110-265, 110th Cong., 2d Sess. 18 (2007). Under the new criminal framework, Congress envisioned that the Commission could bring criminal enforcement actions when it could show "that a company both had knowledge of the facts that constitute the violation of the CPSA (knowing) and acted with the knowledge that its conduct was unlawful (willful)." *Id.*

## B. BRIEF FACTUAL SUMMARY

On March 28, 2019, Defendants Chu and Loh were indicted for their roles as corporate officers who knowingly and willfully failed to immediately report information about defective and dangerous dehumidifiers made by a Chinese manufacturer ("Gree

4

China" [4]). ECF 1. Defendants Chu and Loh effectively controlled the companies that distributed these dehumidifiers across the United States. *Id.* ¶ 4. As alleged, Defendants first viewed a video taken by a consumer showing a burning dehumidifier on or about July 2012. *Id.* ¶ 14. From July 2012 through April 2013, reports of these dehumidifiers catching fire did not stop; Defendants received continuous complaints from consumers and insurance companies about the dehumidifiers overheating or catching fire. *Id.* ¶ 15. In or about August 2012, Defendant Chu performed his own test on Gree dehumidifier plastic and learned that the plastic would burn. *Id.* ¶ 16. On or about September 4, 2012, Defendant Loh emailed a Gree China manager and told him that they tested the dehumidifiers, that the dehumidifiers caught fire, and that the material used in the dehumidifiers apparently did not meet UL safety standards for dehumidifiers, *id.* ¶ 17, even though the dehumidifiers were each certified as meeting UL safety standards, *id.* ¶ 6. Just a few weeks later, in September 2012, a Gree China manager and engineer met with Defendants Chu and Loh (and others) and explained how the dehumidifiers could overheat and catch fire and that the plastic used in the dehumidifiers did not meet the required UL safety standard for fire-retardance. *Id.* ¶ 18. The manager also explained that improved dehumidifiers could not be made before the end of 2012 or early 2013, and the manager recommended that any recall be delayed for six to nine months to avoid losing sales and to minimize the costs of any recall. *Id.*

In the days immediately after the September meeting, Defendants consistently and openly acknowledged the defective nature of the dehumidifiers and their potential to catch fire and cause consumers "personal, life and property damages," and they raised these risks to Gree China's CEO. *See id.* ¶ 20. On or about November 5, 2012, Defendants obtained an independent test report that corroborated what they already had been told: The

---

[4] "Gree China" refers collectively to Gree Electric Appliances, Inc. of Zhuhai and Hong Kong Gree Electric Appliances Sales Co., Ltd, which are the China and Hong Kong-based companies that manufactured the dehumidifiers at issue and exported them to the United States.

dehumidifiers could catch fire because they were "not able to sense overload temperature properly" and would "continuously run in extreme high temperature." Ex. A at 1.[5]

The evidence also shows that Chu and Loh knew they had to report this information to the CPSC. Indeed, as early as September 10, 2012, Defendant Loh wrote to his Gree China counterpart explaining that the company and its managers could be subject to civil and criminal prosecutions if they knowingly held back product information. Ex. B at 1. By mid-September 2012, Defendant Loh circulated to Gree China and to Defendant Chu the CPSC Recall Handbook, which plainly and explicitly detailed the CPSC's reporting requirements. Ex. C at 1, 2. Among other things, this handbook cites 15 U.S.C. § 2064, which explains the obligation to report potential defects that could cause substantial product hazards or products creating an unreasonable risk of serious injury and death, and it sets forth the CPSC's view that "immediately" means within 24 hours. Ex. D at 6, 8.

Though Defendants repeatedly threatened to report the defective dehumidifiers to the CPSC with or without assistance of Gree China, they did not do so. *See* ECF 1 ¶ 20. Defendant Loh even threatened to report to the CPSC himself and stated the issue of the defect was "super urgent and important." *Id*.

It was not until on or about March 14, 2013, that Defendants finally reported the dehumidifiers to the CPSC. ECF 1 ¶ 25. Even then, material information about the defects was withheld—the report did not mention the known defects or hazards. In a subsequent report made to the CPSC on or about April 30, 2013, important information was again withheld, including information that the dehumidifier plastic was not fire-retardant, and

---

[5] The Government cites several documents admitted as trial exhibits in Defendants' 2015 lawsuit against Gree China. *See MJC America Ltd., et al. v. Gree Electric Appliances Inc. of Zhuhai, et al.*, No. 2:13-cv-04264-SJO-CW (C.D. Cal. 2015). The Government is relying on the translation utilized by the Defendants in this litigation for purposes of this motion.

Moreover, while the Court need only rely on the facts in the indictment to deny Defendants' motion, these facts further support the Government's response. *See United States v. Chavez*, 29 F.4th 1223, 1226 (10th Cir. 2022) (noting that a district court may consider "operative facts outside the indictment" when deciding a motion to dismiss the indictment where the outside facts are undisputed, no party objects to the district court's consideration of those facts, and the district court can decide the motion as a matter of law).

Defendants misleadingly stated "the Chinese dehumidifiers were 'safe for use as intended.'" *Id.* ¶ 26. Defendants further sold the dehumidifiers as UL-certified despite knowing they did not meet the UL standards. *Id.* ¶ 30.b. Ultimately, it was not until September 12, 2013—at least a year after Chu and Loh obtained information about their products' defects and dangerousness—that the CPSC issued a recall of approximately 2.2 million dehumidifiers sold in the United States. *Id.* ¶ 27.

## III.   ARGUMENT

Defendants contend that the reporting provisions of the CPSA are unconstitutionally vague and invite arbitrary enforcement. The void-for-vagueness doctrine is rooted in the Due Process Clause, which requires that laws give people fair warning of the conduct they outlaw. *See Lambert v. California*, 355 U.S. 225, 228 (1957). To decide if a law passes the test for vagueness, a court begins with the "strong presumptive validity that attaches to an Act of Congress." *Parker v. Levy*, 417 U.S. 733, 757 (1974). It must then ask if the text of the criminal statute either: (A) "give[s] ordinary citizens <u>fair notice</u> with respect to what the statute and regulations forbid," or (B) whether it "adequately provide[s] for <u>principled enforcement</u> by making clear what conduct of the defendant violates the statutory scheme." *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1122-1123 (9th Cir. 2011) (citing *City of Chicago v. Morales,* 527 U.S. 41, 56 (1999)) (emphasis added); *see also United States v. Matus-Leva*, 311 F.3d 1214, 1218 (9th Cir. 2002).

There are two ways to mount a vagueness challenge involving either fair notice or arbitrary enforcement: a "facial" challenge or an "as applied" challenge. These two challenges are "mutually exclusive," and "[t]he threshold question in any vagueness challenge is whether to scrutinize the statute for intolerable vagueness on its face or whether to do so only as the statute is applied in the particular case." *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1346 (9th Cir. 1984).

Here, Defendants argue that the CPSA's reporting requirements violate fair notice and invite arbitrary enforcement, and they make both facial and as-applied challenges

under each prong. Specifically, Defendants take issue with *what* the statute says must be reported to the Commission—"information which reasonably supports the conclusion" that a consumer product "contains a defect which could create a substantial product hazard" or "creates a reasonable risk of serious injury or death"—and *when* the Commission must be informed—"immediately". *See* 15 U.S.C. § 2064(b). In Defendants' view, this statutory language is too vague to provide adequate notice of what conduct is prohibited, and it fails to provide sufficient standards for principled enforcement.

In fact, Defendants plainly understood what conduct violates the CPSA's reporting requirement—just as any ordinary citizen would—and their conduct falls so completely within the statute's core proscription that their prosecution is not the result of arbitrary enforcement. Further, while Defendants devote much of their time to attacking the CPSC's interpretive regulations, the Government is seeking to enforce a federal statute—not a regulation. This Court should therefore reject Defendants' motion in its entirety.

**A. The CPSA provides adequate notice of what it proscribes.**

1. <u>Defendants Chu and Loh plainly had notice their conduct was criminal.</u>

When, as here, a defendant raises a vagueness challenge that does not involve the First Amendment, courts ask only whether the statute is vague as applied to the defendant. *United States v. Kilbride*, 584 F.3d 1240, 1257-58 (9th Cir. 2009). "[O]rdinarily a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* at 1258. Thus, as applied here, Chu's and Loh's as-applied fair-notice vagueness challenge "turns on whether the statute provided adequate notice to [them] that [their] particular conduct was proscribed." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013).

As discussed, under Sections 2064(b) and 2068(b), a manufacturer, importer or distributor breaks the law when it fails to immediately inform the CPSC of information obtained that reasonably supports the conclusion its product either contains a defect that could create a substantial product hazard or creates an unreasonable risk of serious injury or death. 15 U.S.C. §§ 2064(b), 2068(a). Under Section 2070(a), the failure to furnish this

information to the CPSC is subject to criminal prosecution when that failure is knowing and willful. *Id.* § 2070(a). Section 2070(b) further makes clear that such prosecution applies to "[a]ny individual director, officer, or agent of a corporation who knowingly and willfully authorizes, orders, or performs any of the acts or practices constituting in whole or in part a violation" of the reporting requirement. The facts here establish that Chu and Loh had more than adequate notice their conduct was proscribed.

First, consider the conduct. Defendants Chu and Loh received the first of many reports that Gree dehumidifiers were spontaneously catching fire beginning in July 2012. In or about August, Chu and Loh conducted their own testing and found that the plastic used in the dehumidifiers would indeed burn when set alight. ECF 1 ¶ 16-17. In September, Chu and Loh met with a manager and engineer from Gree China, who confirmed the dehumidifiers could overheat and catch fire, and that the plastic did not meet the required UL safety standards for fire retardance. *Id.* ¶ 17. As alleged in the indictment, they did not report any of this information to the Commission. By November, Chu and Loh received results from a third-party forensic lab that showed the product could overheat. Ex. A. But they didn't report then either. As explained previously, this conduct—which undeniably put consumers at risk—is a *textbook* example of what Congress sought both to prevent and penalize.

Second, consider the notice. Chu and Loh were both aware the CPSA imposes a duty to report immediately, and that the Commission's interpretive regulations help explain that duty. Defendant Loh even wrote to his Gree China counterpart explaining that the company and its managers would be subject to civil and *criminal prosecutions* which could result from a failure to report that, in simple terms, the dehumidifiers had defects that could cause them to catch fire. *See* Ex. B at 1. And, prior to the September 2012 meeting, Chu, Loh, and senior executives at Gree China exchanged emails that attached a copy of the CPSC's Recall Handbook, which clearly explained that the CPSA imposed a duty to "immediately" inform the CPSC of information obtained that reasonably supports the conclusion a product either "contains a defect that could create a substantial product

hazard" or "creates an unreasonable risk of serious injury or death." Ex. D at 6. The Handbook further explained what constitutes "an unreasonable risk of injury" and specifies that the Commission interprets "immediately" to mean "within 24 hours." Ex. D at 8. Defendant Loh recognized the urgency—he even threatened to report to the CPSC himself and stated the issue of the defect was "super urgent and important." ECF 1 ¶ 20. And in yet another email to Gree China executives, sent on or about September 28, 2012, Loh stated that the millions of defective dehumidifiers sold to consumers might cause "personal, life and property damages," and they therefore needed to report. *Id.*

Nevertheless, neither Chu nor Loh reported any information to the CPSC until March 14, 2013—months after they first obtained information the dehumidifiers were catching fire. Far from "repeated and earnest attempts to comply" as Defendants characterize it, ECF 81 at 16, the evidence demonstrates Chu and Loh delayed reporting to the CPSC to protect their own financial interests.

There is no credible argument that Chu and Loh were not "on notice that [their] conduct was criminal." *Kilbride*, 584 F.3d at 1257. Defendants' claim that the CPSA provisions "do not offer sufficient clarity to protect distributors situated as were defendants in this case" (ECF 81 at 26) is belied by their own contemporaneous statements, in company emails authenticated under oath and penalty of perjury, and in their own sworn testimony in a 2015 federal civil trial against Gree China:

> Q: And you understood that you and your company had a legal duty under United States law to report to the Consumer Product Safety Commission if you thought one of these products presented a danger to U.S. consumers, correct?
>
> [DEFENDANT LOH]: Correct."

Ex. E, Loh Trial Tr. at 316.

> THE COURT: Just for my clarification, just so I'm clear, in September of 2012, you personally believed that there should be a recall?
>
> [DEFENDANT CHU]: Yes.

Ex. F. Chu Trial Tr. 473 (472-75 provided); *see also* Section II.B, *infra.* Chu and Loh knew they were required to report these risks "immediately." Ex. D at 8. But they still delayed reporting for months.

Unable to credibly argue otherwise, Defendants (ECF 81 at 27-28) fall back on the purported absence of prior case law dealing with Sections 2064(b) and 2068(a). But Defendants misunderstand an as-applied fair-notice challenge. Prior case law is one means of putting a defendant on notice that certain conduct is unlawful, but the key question is whether the *statute* provided adequate notice to *these* Defendants that their conduct was unlawful. *See Kilbride*, 584 F.3d at 1257; *United States v. Purdy*, 264 F.3d 809, 811-12 (9th Cir. 2001). The evidence plainly shows it did.

In any case, Defendants' prior case law argument fails even on its own terms. Defendants' brief takes great pains to enumerate past civil violations of these very CPSA provisions—all of which served to put Chu and Loh on notice their conduct was unlawful. *See* ECF 81 at 21-24, Exhibit A. The lack of prior case law dealing with a criminal violation of these provisions is not surprising, nor does it suggest a lack of relevant precedent; Congress had only recently amended Section 2070(b) to make criminal prosecution procedurally simpler, and the underlying statutory proscriptions do not vary between civil and criminal actions. Rather, as explained further below, *see infra* pp.17-18, Section 2070(b)'s "willful" mens rea requirement is what elevates a civil reporting violation to a criminal one—and this requirement is a timeworn feature of criminal jurisprudence. *See, e.g.*, *Bryan v. United States*, 524 U.S. 184, 191 (1998) ("[W]hen used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'"). Indeed, once again, Defendants' own brief highlights their understanding of this heightened mens rea requirement. *See* ECF 81 at 15. What's more, the law is replete with statutes that impose civil penalties for knowing violations but criminal penalties for knowing and willful violations. *Compare, e.g.*, 15 U.S.C. § 1681n (imposing civil liability for knowing

violations) *with id.* § 1611 (imposing criminal penalties for knowing and willful violations).

    2. <u>Defendants may not mount a facial attack, but even if they could, the statute is clear on its face.</u>

Defendants' primary challenge is a facial attack on the CPSA provisions and the Commission's accompanying interpretive regulation. But, again, Chu and Loh misunderstand basic void-for-vagueness principles. As an initial matter, Chu and Loh may not challenge the statute as facially invalid because their conduct falls within its "hard core." *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973). But even if they could bring such a challenge, the claim would fail because the law is facially valid.

**a.** When "a statute is challenged as unconstitutionally vague in a cause of action not involving the First Amendment," courts do not ask "whether the statute is unconstitutional on its face." *Purdy*, 264 F.3d at 811. Instead, "the statute is judged on an as-applied basis." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (collecting cases). "Thus, the test is not whether the statute is vague in the abstract but whether it is vague as applied in the particular circumstances of the case." *United States v. Broncheau*, 597 F.2d 1260, 1263 (9th Cir. 1979). This is because vagueness claims "rest on the lack of notice," and so they "may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard,* 486 U.S. at 361. Put simply, a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. Of Hoffman Ests. V. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 & n.7 (1982) (collecting cases).

The Ninth Circuit recently reaffirmed this general rule: A defendant "whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge." *Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019). Absent First Amendment concerns or other "exceptional circumstances"—and Defendants here claim neither, nor could they— "a defendant who cannot sustain an as-applied vagueness challenge to a statute cannot be

the one to make a facial vagueness challenge to the statute." *United States v. Hudson*, 986 F.3d 1206, 1214 n.3 (9th Cir. 2021).

**b.** But even if it were proper, Defendants' facial challenge would fail. A statute is not facially vague because it is unclear at the margins, or because "close cases can be envisioned." *United States v. Williams*, 553 U.S. 285, 306 (2008). Nor is it vague because reasonable jurists might disagree on where to draw the line in some circumstances. *See Skilling v. United States*, 561 U.S. 358, 407 (2010); *cf. Dubin v. United States*, No. 22-10, 2023 WL 3872518, at *12 n.10 (U.S. June 8, 2023) ("There will be close cases, certainly, but that is commonplace in criminal law. . . . Hastily resorting to vagueness doctrine, in contrast, would hobble legislatures' ability to draw nuanced lines to address a complex world."). Rather, a criminal law is void for vagueness when it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Knox v. Brnovich*, 907 F.3d 1167, 1182 (9th Cir. 2018) (quoting *Colautti v. Franklin*, 439 U.S. 379, 390 (1979)). But statutes need not achieve "meticulous specificity," which would come at the cost of "flexibility and reasonable breadth." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).

Here, Chu and Loh appear to take issue with language from Section 2064(b), which requires reporting to the CPSC when a manufacturer "obtains information which reasonably supports the conclusion that such product . . . contains a defect which could create a substantial product hazard." 15 U.S.C. § 2064(b); *see* ECF 81 at 13. In Defendants' view, "[e]very malfunctioning product *could* have a manufacturing defect; every malfunctioning product *might* have a design flaw," and "[v]irtually any mechanical and electrical product *can* be dangerous under the right conditions." *Id.*

Defendants' argument does everything *except* consider the plain language of the statute, which defines "substantial product hazard" as a product defect that "creates a substantial risk of injury to the public." 15 U.S.C. § 2064(a)(2). A person of ordinary intelligence can readily discern the difference between a product that *could* be dangerous, maybe, *under the right conditions*, and a product defect that creates a substantial risk of

1   injury to the public. And in this case, a person of ordinary intelligence would certainly be
2   able to determine that dehumidifiers that spontaneously catch fire could create "a
3   substantial risk of injury to the public." Indeed, that was exactly Defendants' own
4   conclusion.

5       The district court in *United States v. Spectrum Brands, Inc.*—apparently the only
6   court to consider a fair-notice challenge to this CPSA provision—reached this same
7   conclusion as well: That the statute does not define every possible instance of "what
8   constitutes a 'substantial' or 'unreasonable' risk of injury" does not render it vague. 218
9   F. Supp. 3d 794, 810 (W.D. Wis. 2016) (collecting cases). While Defendants repeatedly
10  attempt to undermine *Spectrum* (ECF 81 at 14-15, 17), the court's reasoning is eminently
11  sound. There, as here, the manufacturer argued that the statute's reporting requirement for
12  products that "could" create a "substantial product hazard" is unconstitutionally vague.
13  *Spectrum*, 218 F. Supp. 3d at 809. The court rejected this argument as not just "absurd"
14  but potentially sanctionable. *Id.* at 809 & n.11. Congress, the court explained, intentionally
15  worded the CPSA's reporting provision to include a "more general standard" because it
16  wanted manufacturers to "err[] on the side of overreporting." *Id.* at 809–10. Reporting a
17  potentially hazardous defect to the Commission is not arduous, and it certainly is not akin
18  to paying more taxes, as Defendants contend. Reporting does not make a costly recall
19  inevitable, and indeed, as *Spectrum* itself noted, only a minority of reports result in even
20  a finding that a substantial product hazard actually exists. *Spectrum*, 218 F. Supp. 3d at
21  812.[6]

22      Congress's decision to "shift the burden [of deciding whether a product could create
23  a hazard] to the party with the most information"—the manufacturers and distributors—
24  was well within Congress's power to make. *Id.* at 810. And, as the *Spectrum* court pointed

---

[6] Defendants were well aware of this—it was clearly explained in bold lettering in the
CPSC recall handbook they sent. Ex. D at 7 ("Reporting a product to the Commission under
section 15 does not automatically mean that the Commission will conclude that the product
creates a substantial product hazard or that corrective action is necessary.")

out, Congress has used similarly general standards in criminal statutes as well as civil ones. As the Supreme Court itself has explained, "we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; the law is full of instances where a man's fate depends on his estimating rightly some matter of degree." *Johnson v. United States*, 576 U.S. 591, 603–04 (2015) (holding that the Residual Clause of the Armed Career Criminal Act was unconstitutionally vague) (cleaned up).

Nor did *Spectrum* err in citing to "interpretive" regulations as well as the CPSA. *See Spectrum*, 218 F. Supp. 3d. at 809–10. As explained further below, *see infra* p. 21, courts regularly look to "limiting constructions given to the statute" by the "enforcement agency." *Hess v. Bd. of Parole & Post-Prison Supervision*, 514 F.3d 909, 914–15 (9th Cir. 2008). The CPSC interpretive regulations "do not regulate the public by prohibiting any conduct," but instead provide guidance in the exercise of discretion "within the bounds established by Congress." *Cf. Beckles v. United States*, 580 U.S. 256, 266 (2017) (holding that the advisory, non-binding Sentencing Guidelines cannot be subject to a void-for-vagueness attack). Here, Congress defined "substantial product hazard," and the CPSC properly exercised its discretion within the bounds of that statutory language to provide additional guidance about its views of that language, consistent with the desire of many members of the regulated community that "agreed that the Commission should inform the public of its interpretation of the law it administers." 43 Fed. Reg. at 34,988; *see* 15 U.S.C. § 2064(a); 16 C.F.R. § 1115.12(g).

Defendants fare no better in arguing that Section 2064(b)'s requirement that manufacturers "immediately" inform the CPSC is vague on its face. Because "immediately" is not defined in the statute, the term must be construed according to "its ordinary, contemporary, common meaning." *United States v. W.R. Grace*, 504 F.3d 745, 755 (9th Cir. 2007) (cleaned up). When the CPSA was enacted in 1972, "immediately" was defined as "in an immediate manner; specifically, a) without intervening agency or cause; directly; b) without delay; at once; instantly." *C.S. v. State*, 8 N.E.3d 668, 677 (Ind.

2014) (citing Webster's New World Dictionary of the American Language, College Edition (1968)). Other contemporaneous editions note that "immediately" means without any intermediate intervention or appreciable delay. *See id.* (citing Webster's Third New International Dictionary 1129 (1976) (defining immediately as "without intermediary," "in direct connection or relation," "without interval of time," and "without delay")). When considered within the context of the CPSA—which imposed this reporting duty so that the Commission "could act swiftly to protect the consuming public," *Advance Mach. Co.*, 547 F. Supp at 1090—the term "immediately" conveys a "strong sense of urgency and primacy of purpose in fulfilling the duty to report," *C.S. v. State*, 8 N.E.3d at 677 (holding that "immediately" as used in an Indiana reporting statute was not unconstitutionally vague). This common-sense meaning is well within the understanding of a person of ordinary intelligence, and certainly does not contemplate the months-long delay by Defendants here.

Numerous civil and criminal statutes that use the term "immediately" have been upheld against void-for-vagueness challenges by both federal and state courts. *See, e.g.*, *Becker v. Lockhart*, 971 F.2d 172, 174 (8th Cir. 1992) (holding that Arkansas robbery statute, which uses the term "resisting apprehension immediately thereafter," is not unconstitutionally vague in failing to define "immediately"); *C.S. v. State*, 8 N.E.3d at 677 (rejecting the view that a child reporting statute is rendered vague because it does not define "immediately" with "some explicit time limitation or boundary"); *Rodriguez v. State*, 47 S.W.3d 86, 89 (Tex. App. 2001) (statute requiring persons to "immediately" report child abuse was not unconstitutionally vague); *State v. White*, 545 N.W.2d 552, 557 (Iowa 1996) (holding that the term "immediately" in a tax statute is not vague because "a person of ordinary intelligence would understand the word 'immediately' in its common meaning—without delay"); *State v. Sherman*, 653 P.2d 612, 615 (Wash. 1982) (en banc)

(holding that the term "immediately" in a felony flight statute provided reasonable notice of what the statute required).[7]

Indeed, this Court has had occasion to consider a vagueness challenge to the related term "immediate," and it rightly found no issue with that term. In *Garcia v. City of Los Angeles*, the Court considered whether a city ordinance that permitted the summary destruction of seized items that posed "an immediate threat to the health and safety of the public" was void for vagueness. 611 F. Supp. 3d 918, 932 & n.16 (C.D. Cal. 2020). There, the Court did not hesitate to hold the term "is not vague on its face." *Id.* at 934.[8] The outcome should be no different here.

Any lingering doubt as to the constitutionality of the CPSA provisions is mitigated by the statute's mens rea requirement. Section 2070(b) states the Government must show that a violation of the duty to report immediately was committed "knowingly and willfully" before a court can impose criminal liability. 15 U.S.C. § 2070(b); *cf. id.* § 2069(a) (imposing civil penalties for "knowing[]" violations). As the Ninth Circuit has explained, "[W]hen used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *United States v. Singh*, 979 F.3d 697, 727 (9th Cir. 2020) (citing *Bryan*, 524 U.S. at 191–92). Thus, this scienter requirement means the statute does not "impose

---

[7] *See also Rider v. State*, 518 P.3d 108, 108 (Nev. App. 2022) (rejecting the argument that the word "immediately" "fail[s] to provide a person of ordinary intelligence fair notice of what is prohibited"); *Anonymous Hosp. v. A.K.*, 920 N.E.2d 704, 707 (Ind. Ct. App. 2010) (phrase "shall immediately" in reporting statute "makes clear that time is of the essence in such a situation"); *People v. Moore*, NO. E042674, 2008 WL 2691055, at *3 (Cal. Ct. App. July 10, 2008) (upholding the constitutionality of a robbery statute using the phrase "immediately after").

[8] Plaintiffs in *Garcia* further argued that the city's Standard Operating Protocols introduced confusion about the meaning of the ordinance. 611 F. Supp. 3d at 934. As discussed below, the Court held that while the Protocols introduced some confusion, an additional Field Checklist provided sufficient clarity to defeat the vagueness challenge. *Id.* Here, the Government submits that the CPSA provisions, like the *Garcia* ordinance, are clear on their face. But, unlike the Protocols in *Garcia*, the CPSC regulations here only add greater clarity to the statute.

criminal penalties on innocent or negligent conduct," *United States v. Davis*, 583 F.2d 190, 193 (5th Cir. 1978), thereby "alleviat[ing] vagueness concerns," *Gonzales v Carhart*, 550 U.S. 124, 149 (2007); *see also Vill. of Hoffman Estates*, 455 U.S. at 499 ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

**c.** Chu and Loh spill much ink on whether the Commission's regulation interpreting Section 2064(b) can be used to "alter the meaning" of the statute, and whether the regulation's very existence represents an impermissible delegation of power. *See* ECF 81 at 9, 12-15. But a government agency's issuance of guidance is not somehow prima facie evidence of vagueness. *See Vill. of Hoffman Estates*, 455 U.S. at 495. And here, the Government is seeking to enforce a facially clear statute—not a regulation—against Defendants.

First, it is the CPSA, a statute duly enacted by Congress—not regulations promulgated by the CPSC—that criminalizes certain conduct. Namely, the CPSA criminalizes a manufacturer's and distributor's knowing and willful failure to report immediately that its product contains a defect that could create a substantial product hazard or creates an unreasonable risk of serious injury or death. 15 U.S.C. §§ 2064, 2068, 2070. That is what the Government seeks to enforce and what a jury will be tasked with deciding.

Second, the mere existence of an interpretive regulation does not somehow render the CPSA provisions unconstitutionally vague, as Defendants repeatedly contend (ECF 81 at 12, 14, 17, 28). The regulation—which has stood for more than forty-five years since it was promulgated through formal notice-and-comment procedures—offers "guidance as to what [the CPSA] means" by interpreting the "provisions and obligations" of the statute. 43 Fed. Reg. at 34,990. Far from being improper, this is a bread-and-butter feature of administrative law. Contrary to Defendants' view, an agency's desire to inform the regulated public of its interpretations of the law is hardly evidence that the public is without any means of determining how to conform their conduct to the statue's requirements.

In sum, while Chu and Loh have offered no reason for this Court to entertain a facial fair notice challenge to these CPSA provisions, even if the Court were to do so, the statute is not vague on its face.

**B. The CPSA provisions do not invite arbitrary enforcement.**

A statute may be void for vagueness if "it authorizes or even encourages arbitrary and discriminatory enforcement." *S.E.C. v. Gemstar-TV Guide Int'l, Inc.*, 401 F.3d 1031, 1048 (9th Cir. 2005) (citing *Hill v. Colorado,* 530 U.S. 703, 732 (2000)). The key question when considering an arbitrary enforcement challenge is whether the statute is so indeterminate as to have no "ascertainable standard." *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921). The statute must provide "constitutionally sufficient standards" that "govern the actions of police officers, prosecutors, juries, and judges." *Kashem*, 941 F.3d at 374 (cleaned up). The CPSA does so here.

**a.** Once again, Chu and Loh may only mount an as-applied attack on the statute. *See id.* at 375–77; *Hudson*, 986 F.3d at 1214 n.3. That attack readily fails. As applied to Defendants, the CPSA provisions are "governed by constitutionally sufficient standards." *Kashem*, 941 F.3d at 374. Defendants cannot claim that defective humidifiers that spontaneously catch fire fall so far outside the statutory scheme of reporting products that "create an unreasonable risk of serious injury or death" to the public, that their prosecution is the result of prosecutors "pursu[ing] their personal predilections." *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983). Nor can they claim that a prosecution for a months-long reporting delay is arbitrary when the statutory standard requires reporting "immediately." 15 U.S.C. § 2064(b). Put simply, "Defendants cannot claim that an impermissibly vague statute has resulted in arbitrary enforcement when their conduct falls well within the provision's prohibited conduct." *United States v. Melgar-Diaz*, 2 F.4th 1263, 1270 (9th Cir. 2021) (cleaned up); *see also Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) (Sotomayor, J.) (noting that an as-applied arbitrary enforcement challenge fails if "the conduct at issue falls within the core of the statute's prohibition, so that the enforcement

before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute").

Defendants' sole argument that the statute is being enforced arbitrarily against them amounts to a complaint that even though they broke the law, so did others, and these others were not criminally prosecuted. *See* ECF 81 at 20-26. But the "lack of prosecution of some cases that could be covered by a statute 'is no sufficient reason to hold the language too ambiguous to define a criminal offense.'" *United States v. Jae Gab Kim*, 449 F.3d 933, 943 (9th Cir. 2006) (quoting *United States v. Petrillo,* 332 U.S. 1, 7 (1947)). It is axiomatic that "[t]he Government retains broad discretion as to whom to prosecute." *United States v. JDT*, 762 F.3d 984, 996 (9th Cir. 2014) (cleaned up). Courts have long recognized the decision to prosecute "is particularly ill-suited to judicial review," because prosecutorial discretion weighs factors "not readily accessible to the kind of analysis the courts are competent to undertake"—including "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States*, 470 U.S. 598, 607–08 (1985). The Government's decision to prosecute Chu and Loh but not others is simply "not evidence of arbitrary enforcement," especially "in light of the length and magnitude of [Defendants'] violations." *United States v. Awand*, 467 Fed. App'x 609, 610 (9th Cir. 2012).

**b.** Chu and Loh's improper arbitrary enforcement facial challenge fares no better than their other legal claims. As already explained, the statute's plain terms provide sufficient, ascertainable standards to guide law enforcement. And while the Government's charges are dependent on the statute and not the regulations, the Commission's interpretive regulations offer a counterweight against the arbitrary enforcement that concerns Defendants. *See* 16 C.F.R. §1115.1–1115.16.

Courts regularly look to administrative regulations for evidence of standards that govern law enforcement discretion and mitigate against a statute's perceived vagueness. As the Ninth Circuit has explained, "exactness can be achieved not just on the face of the

statute, but also through limiting constructions given to the statute by the state court or enforcement agency." *Hess*, 514 F.3d at 914; *see also Guo*, 634 F.3d at 1122–23 (explaining that the test for arbitrary enforcement is "whether the statute and regulations read together adequately provide for principled enforcement by making clear what conduct of the defendant violates the statutory scheme"). "In economic regulation especially," the Supreme Court has explained, "administrative regulation will often suffice to clarify a standard with an otherwise uncertain scope." *Vill of Hoffman Estates*, 455 U.S. at 504; *see also California Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 571-72 (9th Cir. 2018) (rejecting a vagueness challenge to the Bank Secrecy Act and noting "an agency-issued instruction manual, even if lacking the force of law itself, can clarify what conduct is expected of a person subject to a particular regulation and thus mitigate against vagueness.") (collecting cases).

This very Court engaged in precisely this kind of analysis in *Garcia v. City of Los Angeles*. There, the Court considered an arbitrary enforcement vagueness challenge to the term "immediate threat to health and public safety" in a city ordinance, and it rightly looked to a Field Checklist used by city employees to guide their enforcement of the statute. 611 F. Supp. 3d at 934. In upholding the ordinance against the arbitrary enforcement challenge, the Court noted the city's consistent practice of complying with the Checklist—an indication that city employees were not exercising unfettered discretion. *See id.* & n.19; *see also California Pac. Bank*, 885 F.3d at 571-72.

Here, 16 C.F.R. § 1115.14, which defines "immediately," provides the same guiding standards to limit law enforcement discretion. To the extent "immediately" could be subject to dispute in other hypothetical contexts not at issue in this case, the regulation explains that manufacturers should report "within 24 hours." 16 C.F.R. § 1115.14(e). As explained above, this is an even more generous standard than contemporary dictionary definitions. It also explains that in the event a manufacturer chooses to perform an investigation, it should not exceed 10 days unless the manufacturer can demonstrate a longer period is reasonable. *Id.* at § 1115.14(d); *see also id.* §§ 1115.4-7 (further

explaining other terms, including "defect" and "unreasonable risk of serious injury or death"). Though Defendants try to cast these provisions as somehow confusing, they are readily understood by persons of ordinary intelligence. And while these provisions are not dispositive, they are longstanding, having provided notice to industry for the past forty-five years as to when and in what circumstances the agency considered reporting adequate. *See* 43 Fed. Reg. 34,998. Even apart from the CPSA's plain language, this regulation is more than sufficient to "provide for principled enforcement by making clear what conduct of the defendant violates the statutory scheme." *Guo*, 634. F.3d at 1123.

## IV.   CONCLUSION

Because the CPSA is not vague either as applied to Defendants or on its face, the Court should deny Defendants' Motion to Dismiss Counts 1 and 2 on Constitutional Grounds.

1

**CERTIFICATE OF SERVICE**

2

3

I hereby certify that on this 26th day of June 2023, I electronically filed a true and correct

4

copy of the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION

5

TO DISMISS ON CONSTITUTIONAL GROUNDS through the Court's CM/ECF

6

system, which will send a notice of electronic filing to the following counsel of record

7

listed below:

8

Steven Brody – Counsel for Defendant Simon Chu

9

Richard Steingard – Counsel for Defendant Charley Loh

10

11

12

_____/s/_____

13

Speare I. Hodges

14

Trial Attorney

Consumer Protection Branch

15

U.S. Department of Justice

16

17

18

19

20

21

22

23

24

25

26

27

28