# EXHIBIT B

From: CALLOH <CALLOH@aol.com>
To: dmz <dmz@gree.com.cn>
Cc: jimmyloh <jimmyloh@greeusa.com>
Subject: letter to GREE top management
Date: Mon, Sep 10, 2012 6:58 pm

尊敬的格力總部高層領導：

收到總部關於近期MJC除濕機質量問題的處理意見。格力總部要求我们按總部的指導思想為主導来處理此事件，也就是不向保險公司及美國產品安全局提及有可能部分除濕機生产中使用了非UL標準的阻燃材料，而非阻燃材料外洩加上过热零部件可能是造成部分格力除濕机明火燃烧的主要原因。

美國產品安全局歷来嚴格執法，嚴懲蓄意隱瞒可能造成产品安全隱患的公司或个人。如果隱瞒实情导致不安全产品得不到及时召回，乃至用户生命或財产遭受严重損害，涉及的公司和其主管人员会受到民事和刑事上的起訴。如果我们不按实情申报，一旦事發，首当其冲的將是美西公司，以及美西公司的主管们，包括我本人在内。其后果將不堪设想。

很高興得知总部將委派一位能够做決定的領导来负责处理美西公司以及其主管们的忧虑。根据总部所發的处理意见，我们已经明白总部將承担因产品質量問題而导致的相關經濟損失、和處理此質量問題而產生的各項費用。希望这位領导不但能够解答如果我们按总部的指示去做，万一事發后美西公司和美西的主管们遭到起訴，总部將怎么保护我们？以及如何补偿美西公司主管们在他们名誉和財产上的損失？如果美西公司應此破产，美西公司的主管们从此不能在美经营，总部又將承担怎么样的责任？同时，他/她的承诺是代表格力总部高層的意见，也將具有法律效应。

更具体一点来讲，如果美西公司因事發后被追破产，总部將如何补偿美西公司因此事故造成其損失美國十多年来建立起的北美销售网络，美西公司的品牌，和美西公司的其他无形资产？总部又將如何补偿美西公司在美國格力成立后，总部未能按承诺给予足够的让利/经营运作费用，导致美西公司所遭受的損失？

我们希望总部能够尽快派遣该領导到临商讨以上事項。从上周至至今我们已经耽搁了4天时间了，我们必须在美國产品安全局给我们的截止日期前有明確的指示(周末)。如果届时我们没有得到格力总部高層領导的明確答覆，我们將按美國的惯例，如实向美國产品安全局汇报我们已知的事实，并把样机送到独立實驗室做進一步的安全鉴定。

谢谢。

Charley

MJC 0015233

EXHIBIT 9-01

GREEDOJ_0039381
GOV-00058321

From: CALLOH <CALLOH@aol.com>
To: dmz <dmz@gree.com.cn>
Cc: jimmyloh <jimmyloh@greeusa.com>
Subject: letter to GREE top management
Date: Mon, Sep 10, 2012 6:58 pm

Dear managers of the top management of the headquarters of GREE,

I have received the opinion from the headquarters on the quality issue for MJC dehumidifiers. GREE headquarters requests that we should handle the case as instructed by the headquarters, that is, we should not tell the insurer and the US Product Security Bureau that non-UL-standard flameresistant materials may have been used for part of the dehumidifiers and the flame-resistant materials, plus overheated parts may be the main cause of the open fire of GREE dehumidifiers.

US Product Security Bureau has always enforced laws and severely punishing any company or individual that deliberately holds back possible hidden dangers in products. If hazardous products fail to be recalled due to the holding back of the fact, which may even cause substantial damages to life or properties of users, the company and its managers will be subject to civil and criminal prosecutions. If we do not report the factual situation, once the fact that is found out, MJC as well as its managers, including myself, would bear the brunt first. The consequences would be inconceivable.

I'm glad to know that the headquarters will appoint a leader who has the final say to deal with concerns of MJC and its managers. According to the opinion of the headquarters, now we understand that the headquarters will assume relevant economic losses caused by the quality problem of the products and various expenses arising from the solution of the quality problem. I hope this leader can give us answers to the following questions: If MJC and its managers are prosecuted when the fact is found out, how will the headquarters protect us? How will it compensate managers of MJC for their losses in reputation and properties? If MJC goes bankrupt because of this and managers of MJC are not allowed to conduct business in the United States,   what responsibilities will the headquarters assume? Meanwhile, his/her promises will represent opinions of the top management of the headquarters of GREE and will be legally valid.

To be specific, if MJC goes bankrupt after the fact is found out, how will the headquarters compensate MJC for the sales network in the United States, the brand of MJC and other intangible assets of MJC that have taken MJC over 10 years to establish due to this incident? How will the headquarters compensate MJC for its losses due to the headquarters' failure to provide sufficient discount/operating expenses as promised after the incorporation of GREE USA?

We hope the headquarters can send the leader to come and discuss the foregoing issues as soon as possible. Four days have passed since we submitted the report last week. We must get a clear instruction by the deadline provided by US Product Security Bureau (weekend). If we do not have a clear reply from the top management of the headquarters of GREE, we will report the fact to the US Product Security Bureau and send a sample machine to an independent lab for further security identification according to the practice of the United States.

Thanks
Charley

EXHIBIT 9-02

GREEDOJ_0039382
GOV-00058322



*Making the World a Little Smaller*

# CERTIFICATION OF TRANSLATION
### AFFIDAVIT FOR TRANSLATION OF SAID DOCUMENTS

American Language Services, a company specializing in the translation of documents, certifies the following:

- American Language Services has retained a professional translator for the attached Chinese into

  English documents. The documents are referred to as:

"September 10, 2012 e-mail from Charley Loh to Dong Mingzhu re: Letter to Gree Top Management; October 25, 2012 Consent to Action Taken in Lieu of the Meeting of Board of the Directors of Gree USA, Inc.; Letter of Appointment of Director Gordon Zhang; April 27, 2013 e-mail from Charley Loh to Dong Mingzhu re: Operating Expenses of MJC; March 1, 2012 Consent to Action Taken in Lieu of the Meeting of Board of the Directors of Gree USA, Inc.; February 17, 2013 E-mail from Charley Loh to Wang Jingdong et. al re: Gree sales update/urgent; April 6, 2012 E-mail from Charley Loh to Dong Mingzhu re: RVissue -- urgent; October 28, 2011 Application for Appointment of Chen Jianyong as Gree USA, Inc. CFO"

- I affirm that such translations have been prepared by duly qualified translators, who have confirmed

  that such translations are, to the best of their knowledge and belief, true and accurate translations in

  English of the corresponding Chinese documents.

- I declare under the penalty of perjury that the foregoing is true and correct. Notwithstanding the

  foregoing affirmations, no liability is assumed for errors and omissions in the translation of the

  attached documents.

- Executed on this eighth day of October, 2014, at Los Angeles, California.

Dina Spevack

DINA SPEVACK, DIRECTOR
AMERICAN LANGUAGE SERVICES

1849 SAWTELLE BLVD. SUITE 600 LOS ANGELES, CALIFORNIA 90025
TEL (310) 829-0741 FAX (310) 829-3222
translation@alsglobal.net
www.alsglobal.net

EXHIBIT 9-03

**CALIFORNIA PROOF OF EXECUTION BY SUBSCRIBING WITNESS**
**CIVIL CODE § 1195**

State of California

County of _____Los Angeles_____ } ss.

On ____October 8, 2014____, before me, ____Stephen Demirgian - Notary Public____
       *Date*                                        *Name and Title of Officer*

personally appeared ____Alan Weiss____, proved to me to be the person
                               *Name of Subscribing Witness*

whose name is subscribed to the within instrument, as a witness thereto, on the oath of

____Jay Herzog____, a credible witness who is known to me and
*Name of Credible Witness Who Identifies Subscribing Witness*

provided a satisfactory identifying document. ____Alan Weiss____,
                                      *Name of Subscribing Witness*

being by me duly sworn, said that he/she was present and saw/heard

____Dina Spevack____

"September 10, 2012 e-mail from Charley Loh to Dong Mingzhu re: Letter to Gree Top Management; October 25, 2012 Consent to Action Taken in Lieu of the Meeting of Board of the Directors of Gree USA, Inc.; Letter of Appointment of Director Gordon Zhang; April 27, 2013 e-mail from Charley Loh to Dong Mingzhu re: Operating Expenses of MJC; March 1, 2012 Consent to Action Taken in Lieu of the Meeting of Board of the Directors of Gree USA, Inc.; February 17, 2013 E-mail from Charley Loh to Wang Jingdong et. al re: Gree sales update/ urgent; April 6, 2012 E-mail from Charley Loh to Dong Mingzhu re: RVissue – urgent; October 28, 2011 Application for Appointment of Chen Jianyong as Gree USA, Inc. CFO"

(1)_____(.)
       *Name of Absent Principal Signer*
       (and

(2)_____.)
       *Name of Absent Principal Signer*

the same person(s) described in and whose name(s) is/are subscribed to the within or attached instrument in his/her/their authorized capacity(ies) as (a) party(ies) thereto, execute or acknowledge executing the same, and that said affiant subscribed his/her name to the within or attached instrument as a witness at the request of

       Dina Spevack

(1)_____(.)
       *Name of Absent Principal Signer (Again)*
       (and

(2)_____.)
       *Name of Absent Principal Signer (Again)*

WITNESS my hand and official seal.

*Signature:* Stephen Demirgian

*Place Notary Seal and/or Stamp Above*                        *Signature of Notary Public*

──────────── **OPTIONAL** ────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: ____See above____      Document Date: ____See attached____

Number of Pages: __11__   Signer(s) Other Than Named Above: _____

© 2013 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item # 5908

EXHIBIT 9-04

GREEDOJ_0039384
GOV-00058324