Steven A. Brody (SBN 271616)
stevebrodylaw@gmail.com
**LAW OFFICES OF STEVEN BRODY**
155 North Lake Avenue, Suite 800
Pasadena, CA 91101
Telephone: (213) 290-5294
Facsimile: (213) 403-5323

Attorney for Simon Chu

Richard M. Steingard (SBN 106374)
rsteingard@SteingardLaw.com
**LAW OFFICES OF RICHARD M. STEINGARD**
724 South Spring Street, Ninth Floor
Los Angeles, California 90014
Telephone: (213) 260-9449
Facsimile: (213) 260-9450

Attorney for Charley Loh

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> vs. <br><br> **SIMON CHU** and **CHARLEY LOH**, <br><br> Defendants. | Case No. CR 19-193-DSF <br><br> **DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT AND FOR A NEW TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing date: Feb. 26, 2024 <br> Time: 8:30 AM |

Defendants Simon Chu and Charley Loh, by and through counsel, move the Court for a judgment of acquittal notwithstanding the verdict ("JNOV") on Count I, and move for a new trial on both Count I (should the JNOV motion be denied) and Count II. This motion is based on the attached memorandum of points and

i

authorities, the trial record, all files and records in this matter, and any evidence or argument as may be presented at a hearing on this motion.

Dated: January 11, 2024                          Respectfully submitted,

                                                 /s/
                                                 STEVEN BRODY
                                                 Attorney for Simon Chu

                                                 /s/
                                                 RICHARD M. STEINGARD
                                                 Attorney for Charley Loh

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## **INTRODUCTION**

Defendants Simon Chu and Charley Loh, by and through counsel, move the Court for a judgment of acquittal notwithstanding the verdict on the conspiracy count (Count I), and move for a new trial on Count I (should the JNOV motion be denied) and the failure to immediately report count (Count II). Fed. R. Crim. P. 29 & 33. As to the conspiracy conviction, even in the light most favorable to the government, the trial evidence failed to show that on September 19, 2012, the defendants entered into an agreement with Gree Zhuhai representatives Larry Lam and Engineer Ju to delay reporting the dehumidifiers to the CPSC for six to nine months. Simply, there was no evidence whatsoever that the defendants agreed to this plan on this date, or any other date. Indeed, the undisputed evidence proved that the defendants repeatedly and unambiguously *rejected* Gree Zhuhai's proposal to postpone reporting. Consequently, no rational juror could find a conspiracy between the defendants, Lam and Ju.

The defendants also move for a new trial based on the Court's exclusion of defense-proffered evidence and errors in the jury instructions. As to the former, the Court sustained the government's objection to Exhibit 1033, a report from Larry Lam on October 8, 2012, in which Lam explicitly acknowledged that the defendants refused the proposal to delay reporting to the CPSC for six to nine months. The exhibit fell within several exceptions to the hearsay rule, including the state of mind exception and the catch-all "residual exception" to the hearsay rule. The document showed not only the *defendants'* state of mind, but also Lam and Gree Zhuhai's *understanding* of the defendants' state of mind. Both were critical aspects of the conspiracy charge and the exclusion of this exhibit was error warranting a new trial.

As to the jury instructions, during pretrial proceedings, the government argued that the "failure to immediately report" statute was *constitutional* because the corresponding Code of Federal Regulations provisions provided clear guidance about the reporting obligations. Yet, the government *opposed* the defendants' proffered jury instruction that provided the same claimed clarity on this issue. The Court adopted the government's instruction, which paraphrased the timing regulations, but instructed that the jury need not apply these regulations. Thus, the jury was left with no clear understanding of what "immediately" meant, a muddled instruction on whether the defendants could lawfully rely on the CFRs' guidance, and an "instruction" that advised the jury they were free to ignore it. This, too, was a critical issue in the case and a new trial is therefore warranted "in the interest of justice." Fed. R. Crim. P. 33(a).

For the foregoing reasons, the defendants ask the Court to vacate the conspiracy count conviction and order a new trial on the failure to report count.

## II.
## **LEGAL STANDARD**

The Court should enter a judgment of acquittal whenever the government's evidence fails to establish the charged federal crimes. Fed. R. Crim. P. 29(a). The standard is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt the essential elements of a crime, as properly understood under the law. *See, e.g.*, *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010). The defense may move for such an order after a guilty verdict or after the court discharges the jury, whichever is later. Fed. R. Crim. P. 29(c).

Alternatively, a court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The court has broad discretion to order a new trial based on a misleading instruction, even where that

instruction did not amount to legal error. *See United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994).

### III.

### ARGUMENT

**A. The conspiracy conviction should be vacated.**

"Conspiracy means an agreement to commit a crime, not commission of the crime. Though that might sound less serious to a layman, lawyers know that the conspiracy charge affects much about trial and sentencing, all to the advantage of the prosecution. A conspiracy charge imposes one substantial disadvantage to the prosecution: the prosecution must prove the existence of the agreement beyond a reasonable doubt. The agreement can be explicit or tacit, and can be proved by direct or circumstantial evidence, including inferences from circumstantial evidence, but it still has to be proved." *United States v. Loveland*, 826 F.3d 555, 557 (9th Cir. 2016) (citations and footnotes omitted).

From opening statement through closing argument, the government contended that on September 19, 2012, the defendants reached an agreement with Larry Lam and Engineer Ju to delay a recall of the dehumidifiers for six to nine months. The government based its position on a single sentence that Charley Loh uttered on September 19, 2012, during an almost two-hour meeting. (Exhibit 52, Transcript of Sept. 19, 2012 meeting).[1] As we show below, the statement of Loh that the government relies upon concerned a *recall* of the dehumidifiers, and not whether to submit a *defective product report* with the CPSC. At no time did Loh, Chu, Lam, and Ju (or any other alleged co-conspirators) reach an agreement to postpone filing a report with the CPSC. Further, the government takes Loh's utterance out of context and ignores his many other statements, both on September

---

[1] Unless otherwise noted, all page citations are to Exhibit 52.

3

19 and after, which made clear that he and Chu refused to go along with Lam's proposal.

The parties stipulated to the accuracy of the September 19 transcript, which was introduced into evidence in full, even though only select portions of the meeting were testified to. Towards the beginning of the meeting, Lam spoke – virtually uninterrupted – for almost 25 minutes. During his oration, Lam stated, among other things, that Gree Zhuhai's engineers had concluded that the dehumidifiers were not defective; the dehumidifiers would only catch on fire under the most extreme and isolated circumstances; and there was no need for a recall. Lam reviewed several other dehumidifier manufacturers who ostensibly faced similar situations, and then suggested that they follow an approach used by General Electric to delay a recall for six to nine months, thereby minimizing its economic impact. (*Id*. at pp. 9-19.)  After Lam finished, Engineer Ju reiterated much of what Lam had said, but from a purportedly neutral engineer's perspective. (*Id*. at pp. 19-21.)

When Lam and Ju finished, Loh and Chu asked whether the dehumidifiers lacked a fire-retardant coating. Lam and Ju responded that all the dehumidifiers had fire-retardant coatings but also that an unknown number of units had a grade of the coating that fell under the UL standard. (*Id*. at pp. 21-28.)

In response, Jimmy Loh gave a brief primer on how product recalls occur under U.S. law and proposed sending a dehumidifier to a third-party testing facility. Jimmy Loh stated, "We, in the US, manage to do whatever we should do." (*Id*. at pp. 28-30.)  Charley Loh spoke next, agreeing with his brother's position:

> CL: That is right, because you now, the Headquarters is, um, um, *apparently* the message you are here to convey this time around is asking us, to delay it.
> LL: Correct.
> CL: *The delay you are referring to is fine temporarily*. Um, um, regarding delaying it, I think, it is just like what Jimmy just…

4

> LL: I said it, handle it cold…
> CL: Uh huh, either handle it cold or delay it, to delay it, speaking from another perspective, as I understand it, in case of a misunderstanding, simply means, temporarily not to report things we know or things we feel suspicious about. But, as us, I think, this matter is also extremely important. We need to, must think about it, exactly, when time comes for us to decide, we would be, or what. Maybe we will have to wait until after we send it off for inspection by a third party, before we ourselves, um, um, based on our situation, make a decision.

(*Id*. at pp. 30-31; emphasis added.) During closing argument, the government focused on the above italicized portion of Charley Loh's statement – "The delay you are referring to is fine temporarily"— asserting that his remark established the defendants' agreement with Lam and Ju under the charged conspiracy. Indeed, this was the only evidence on which the government could base such an argument. There are, however, several fatal errors here.

      First, Lam's proposed "six-to-nine-month delay" concerned a *recall* of the dehumidifiers, not a *report to the CPSC* about a defective product. The Indictment does not charge the defendants with delaying a *recall* of the dehumidifiers –in fact, delaying a recall is not a crime – but only concerns their obligation to timely report a possibly defective product to the CPSC. Thus, even if the record could somehow be understood to mean that Charley Loh *agreed* to a six-to-nine-month delay for a recall, which he did not, it would not establish the *charged* conspiracy.

      Second, the government's selective excerpting of Loh's words ignores the balance of his many other statements on the exact same issue. In the passages quoted above, Loh (1) stated that he agreed with Jimmy Loh that they first needed to send the dehumidifiers to a testing lab, (2) added that "[w]e need to, must think about it, exactly, *when time comes for us to decide*," and (3) opined that "[m]aybe we will have to wait until after we send it off for inspection by a third party, *before we ourselves, um, um, based on our situation, make a decision*." (*Id*.) None of these clarifying statements suggest that he had agreed to a six-to-nine-month delay

5

for a recall, much less to submit a defective product report to the CPSC. In subsequent statements during the same meeting, Loh and Chu consistently stated that they needed to discuss the matter further; they would provide their decision directly to Gree Zhuhai's management; and that they would adhere to the laws and rules of the United States. (*Id*. at 32, 36, 43, 44, 46-7, 53, 54, 56, 59.)

Loh's follow-up email to Hui Huang on September 21 made the defendants' position crystal clear: the defendants explicitly *rejected* Lam's proposal to delay reporting and advised that they would promptly report the defective dehumidifiers to the CPSC. (Exhibit 53A.) Hui Huang responded by stating that he understood the defendants were rejecting the proposed delay; he added that he did not have the authority to agree to anything else and asked that Loh convey his position to Madam Dong. (*Id*.) Loh did exactly that, writing to Madam Dong, again, to unambiguously state his refusal to delay reporting. (Exhibit 56A.)[2]

Based on the above undisputed facts, the evidence failed to establish that the defendants had "an intention and agreement to accomplish a specific illegal objective." *United States v. Lennick*, 18 F.3d 814, 818 (9th Cir. 1994) ("Although an agreement may be inferred from the defendant's acts or from other circumstantial evidence, 'simple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient.'") (citation omitted) (quoting *United States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir. 1980)). In the most fundamental of ways, there was no meeting of the minds on the object of the conspiracy: delaying the filing of a defective product report to the CPSC. Accordingly, the defendants' conspiracy conviction should be vacated.

---

[2] Larry Lam fully understood that Loh had rejected his proposal to delay the recall, as he wrote in his October 8, 2012 report. (Exhibit 1033.) As discussed *infra*, the Court did not allow the admission of this exhibit.

6

**B. At minimum, both counts of conviction should be vacated and a new trial granted because the jury instructions on the defendants' reporting obligation were confusing and misleading.**

The defense moved, pretrial, to dismiss Counts I and II on the ground that 15 U.S.C. §§ 2064(b)(4) and 2068(a)(1), (4)—provisions of the Consumer Product Safety Act (CPSA)—were unconstitutionally vague. (ECF 81.) In particular, the defense took issue with the term "immediately" which is not defined in the statute, but which the CPSC defines in the Code of Federal Regulations (CFR), in a variety of different ways. The defense argued that the CFRs could not be used to rescue the statute because they were merely interpretive. In opposition, the government argued that these provisions were not merely interpretive, but in fact that this Court could "look to limiting constructions given to the statute by the enforcement agency" in determining the scope and meaning of the statute and its terms. (ECF 89, internal citations and quotation marks omitted.)

At trial, in the absence of any statutory definition of "immediately", the defense argued in its proposed jury instructions that "the jury must have some practical definition of its meaning" and that "[t]he only reasonable source for such a definition is the Code of Federal Regulations and the CPSC Recall Handbook available to the defendants at the time of the alleged offense." (ECF 106 at 61-62.) The government's response to this was a complete reversal from its earlier position, arguing that the CPSC regulations should *not* be used to fashion a jury instruction that would clarify the meaning of the word and that the jury should not be required to consider the CFR regulations.

Ultimately, the Court adopted the government's proposed instruction, providing the CPSC's interpretation of the word "immediately", but instructing the jurors that they did not need to follow that interpretation:

> To "immediately" inform the CPSC means to report the required information promptly, without unnecessary delay. The CPSC's

7

> regulations, which you are not required to follow, define "immediately" as within 24 hours and provide that if the defendant is uncertain whether information is reportable, the defendant may spend a reasonable amount of time investigating the matter, which should not exceed ten working days unless defendant can demonstrate that a longer time is reasonable in the circumstances

(ECF 146 at 26.)

A district court has an obligation to instruct the jury in a manner that is not "misleading or confusing, inadequately guid[ing] the jury's deliberations, or improperly intrud[ing] on the fact-finding process." *United States v. Nelms*, 653 Fed.Appx. 524, 526 (9th Cir. 2016), citing *United States v. Warren*, 25 F.3d 890, 898 (9th Cir. 1994). Whether an instruction is confusing or misleading is analyzed by "examin[ing] the instructions as a whole" and in the "context of the entire trial." *See Nelms*, 653 Fed.Appx. at 526.

Rule 33 offers the district court tremendous discretion to grant a new trial on the basis of a confusing instruction*, even where that instruction was not legal error*. *Vicaria*, *supra*, 12 F.3d at 198. The court may simply determine that in the context of the entire trial, the instruction given could have confused the jury while another instruction would not have done so. *Id*. This is particularly true where the case is a close one as to a given count. *Id*. As the First Circuit explained in *United States v. Baptiste*, 8 F.4th 30 (1st Cir. 2021):

> The "interest of justice" catchphrase is undefined. But according to a leading treatise on criminal procedure, Rule 33's words vest a judge with "broad powers to grant a new trial" if she "concludes for any reason that the trial resulted in a miscarriage of justice" (with the caveat that a new-trial motion is "to be granted with caution"). 3 Sarah N. Welling, Federal Practice and Procedure § 581 (4th ed. 2021) . . . . We ourselves have stressed the "broad discretion" Rule 33 gives a judge — contrasting (in a way that provides some insight into what this means) the spacious "interest[ ] of justice" lingo in Rule 33 with a federal habeas statute that lets a judge grant post-conviction relief if (for

8

example) she "finds ... that there has been ... a denial ... of constitutional rights." *Trenkler v. United States*, 268 F.3d 16, 24 (1st Cir. 2001).

*Id*. at 40–41.

Here, the instruction was confusing, as it failed to give any meaningful definition of the problematic term "immediately", instead providing a definition of sorts but telling the jury that it could ignore that definition. To instruct the jury on one possible meaning of the term indicates that the term requires explanation. But then to tell the jury they can ignore that explanation can only create further confusion.

Taken in the context of the entire trial, this instruction must, in fact, have confused the jury. As noted above, less than two days after the September 19 meeting in which the government argued the conspiracy began, Mr. Loh sent an email to Larry Lam expressly rejecting the proposed six-to-nine-month delay, (Ex. 53A.) Moreover, the correspondence between Mr. Loh and Gree Zhuhai after the September meeting demonstrated that the defendants were in fact conducting an "investigation" in the only ways possible—by demanding answers from Gree Zhuhai and sending dehumidifiers to an independent forensic lab. Even if this Court disagrees that there is no substantial evidence to support the conspiracy, it is clear that this case was a close one. Had the jury been given a clear and unambiguous explanation of the time in which the officers of MJC had to conduct an investigation, it is probable that the defendants would have obtained a better outcome on the charge of failing to timely report a possible defect. At minimum, the instruction confused the jury and the defendants were thus denied their right to a fair trial.

That the jury was confused by the instructions can also be inferred from the contradictory verdicts. On the one hand, the jury acquitted the defendants of a conspiracy to fail to immediately report to the CPSC. (ECF 158 at 2, 5.) On the other hand, the defendants were convicted of a conspiracy to obstruct the CPSC,

9

and of the substantive offense of failing to immediately report. (*Id*, at 2-3, 5-6.) But how could the defendants have conspired to obstruct the lawful functions of the CPSC *and* have failed to timely report, but not have *conspired* to fail to timely report? This presupposes that while the defendants conspired to obstruct the lawful functions of the CPSC, failing to report was not part of that conspiracy, but rather some independent act by each defendant. Put another way, the defendants conspired to obstruct the CPSC, but not by their failure to timely report a suspected defect. These outcomes make no sense under the facts of the case.

      The only reasonable inference is that the jury simply did not understand the instruction on the requirement to immediately report. Therefore, looking at the "context of the entire trial", it appears that the instruction on timely reporting to the CPSC "inadequately guided the jury's deliberations." *Warren*, 25 F.3d at 898. It is therefore within the interests of justice that a new trial be granted on Count II (and on Count I, if the Court were to deny the defendants' Rule 29 motion to dismiss that count).

Dated: January 11, 2024

Respectfully submitted,

      /s/
STEVEN BRODY
Attorney for Simon Chu

      /s/
RICHARD M. STEINGARD
Attorney for Charley Loh

10