TRANSLATED COPY

U.S.D.C. CENTRAL DISTRICT OF CALIFORNIA
CASE NO. 2:19-cr-00193-DSF
UNITED STATES OF AMERICA
VS. SIMON CHU and CHARLEY LOH
PLAINTIFF'S EXHIBIT 049A
DATE _____ IDEN.
DATE _____ EVID.
BY _____
Deputy Clerk

Gov't Ex. 049A
Page 1 of 2

TRANSLATED COPY

```
From:    CALLOH<CALLOH@aol.com>
  To:    dmz <dmz@gree.com.cn>
  Cc:    jimmyloh <jimmyloh@greeusa.com>
Subject: letter to GREE top management
Date:    Mon, Sep 10, 2012 6:58 pm
```
---

Distinguished Senior Leaders of the Gree Headquarters:

[We] received the headquarters' opinion on handling MJC's recent quality problems of the dehumidifiers. The Gree headquarters requests us to use the headquarters' guidance to lead us in handling this incident. In other words, do not mention to the insurance company and U.S. Consumer Product Safety Commission that fire retardant materials that did not meet UL standards may have been used in the production of part of the dehumidifiers, and that the casing using non-fire-retardant materials combined with the overheating of parts may have been the major cause for the burning of live fire in part of the Gree dehumidifiers.

The U.S. Consumer Product Safety Commission always enforces laws strictly and severely punishes companies or individuals that intentionally conceal information that may result in potential hazards in product safety. Should concealing truthful information result in unsafe products not getting recalled promptly, to the extent of causing severe losses to customers life and properties, the company and its leaders will be sued in both civil and criminal actions. If we fail to report truthfully, and once it happens, the first in line to bear the brunt will be MJC, and MJC's leaders, me included. The consequences will be too dreadful to contemplate.

[I am] very glad to learn that the headquarters will appoint a leader capable of making decisions to come and address the concerns of MJC and its leaders.  Based on the headquarters' opinion on the solution, we already understand that the headquarters will bear relevant financial losses resulting from the product quality problems and various costs arising from handling these problems. [I] hope this leader not only can answer the questions of: what if MJC and its leaders follow the headquarters' instructions and are sued following the outbreak of this incident, how will the headquarters protect us? And how will MJC's leaders be compensated for their reputational and property damages? And what responsibilities is the headquarters going to take if MJC goes bankrupt because of this and leaders of MJC can no longer operate a business in the US? But at the same time, his/her promises, made on behalf of the opinion of the senior leadership of the Gree headquarters will also have legal force and effect.

More specifically, if news breaks through and MJC is forced into bankruptcy, how will the headquarters compensate MJC for causing it to lose its sales network established over the past ten plus years in the US, MJC's brand and its other intangible assets because of this accident? And again, how will the headquarters compensate MJC for the losses it has suffered, after Gree USA was established, as a result of the headquarters' failure to concede sufficient profit/operational capital as was promised?

We hope the headquarters can send this leader over here to discuss the above matters as soon as possible. There has already been a delay of four days since we reported last week. We must have clear instructions by the deadline set by the U.S. Consumer Product Safety Commission (this weekend).  If by then we have not received a clear answer from the Gree headquarters, we will follow the usual practice in the US and file a truthful report to the U.S. Consumer Product Safety Commission on all the facts known to us and send the sample unit to an independent lab for further safety assessment.

Thanks,

Charley